**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SHURE INCORPORATED and | ) |
| SHURE ACQUISITION HOLDINGS, INC., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   Civil Action No. 19-1343-RGA-CJB |
| | ) |
| CLEARONE, INC., | ) |
| | ) |
| Defendant. | ) |

<u>**REPORT AND RECOMMENDATION**</u>

Presently pending before the Court in this case are Defendant ClearOne, Inc.'s

("Defendant" or "ClearOne"):  (1) "Motion to Dismiss Plaintiffs' First Amended Complaint

['FAC,']" (D.I. 21); and (2) "Motion to Dismiss Plaintiffs' Design Patent Infringement Claim

and Renewed Motion to Dismiss Plaintiffs' Other Claims[,]" (D.I. 75), which were filed pursuant

to Federal Rule of Civil Procedure 12(b)(6) (the "Motions").[1]  Plaintiffs Shure, Inc. and Shure

Acquisition Holdings, Inc. (collectively, "Plaintiffs" or "Shure") oppose the Motions.  For the

reasons set forth below, the Court recommends that ClearOne's Motions be DENIED.

**I.     BACKGROUND**

**A.     Factual Background**

Shure and ClearOne are competitors in the installed audio-conferencing market.  (D.I. 64

at ¶¶ 14-15; D.I. 22 at 1; D.I. 40 at 1)  The parties have a history of litigation, some of which is

_____

[1]          Plaintiffs added the design patent infringement claim to their now operative
Second Amended Complaint ("SAC").  (D.I. 64)  This additional claim was the SAC's only
change from the content of the FAC, and the parties therefore stipulated to:  (1) rely on their
existing briefing relating to ClearOne's pending motion to dismiss the FAC with respect to the
other claims; and (2) permit ClearOne to file a second motion to dismiss to address the newly-
asserted design patent infringement claim.  (D.I. 68)

relevant to ClearOne's Motions.  (*See* D.I. 22 at 2-3; D.I. 76 at 1-3)  The Court will therefore summarize the parties' relevant litigation history, beginning with litigation between the parties in the United States District Court for the Northern District of Illinois ("Northern District of Illinois") that pre-dated the instant action.

### 1.       The Northern District of Illinois Actions

In April 2017, Shure filed a lawsuit against ClearOne in the Northern District of Illinois seeking, *inter alia*, a declaratory judgment of non-infringement of ClearOne's United States Patent No. 9,635,186 (the "'186 patent").  (*Shure Inc. v. ClearOne, Inc*., Civil Action Number 17-3078 ("2017 IL Case"), D.I. 1 (N.D. Ill. Apr. 24, 2017))  ClearOne counterclaimed and ultimately accused Shure's MXA910 product of infringing its '186 patent[2] and its United States Patent No. 9,813,806 (the "'806 patent").  (2017 IL Case, D.I. 430 (Oct. 30, 2018))

In the early part of the 2017 IL Case, ClearOne filed motions for a preliminary injunction as to its respective patent claims, seeking to prevent Shure from selling Shure's allegedly-infringing MXA910 product.  (D.I. 30 at 3)  With respect to ClearOne's preliminary injunction motion regarding the '186 patent, the Northern District of Illinois Court ultimately denied the motion, finding that Shure had raised a substantial question as to the validity of that patent. (2017 IL Case, D.I. 278 (Mar. 16, 2018); *see also id.*, D.I. 612 (Aug. 25, 2019))  As to the preliminary injunction motion regarding the '806 patent, the Northern District of Illinois Court ruled in ClearOne's favor, and enjoined Shure from manufacturing, selling and marketing its

---

[2]       In July 2017, Shure filed a petition for *inter partes* review ("IPR") of ClearOne's United States Patent No. 9,264,553 (the "'553 patent"), which is related to the '186 patent.  (*See ClearOne, Inc. v. Shure, Inc*., Civil Action Number 19-2421 ("2019 IL Case"), D.I. 1 at ¶ 49 (N.D. Ill. Apr. 10, 2019))  The United States Patent and Trademark Office's Patent Trial and Appeal Board ("PTAB") instituted IPR on the patent, but ultimately issued a Final Written Decision upholding the claims of the '553 patent.  (*Id.* at ¶ 51)

MXA910 product to be used "in its drop-ceiling mounting configuration[.]"  (2017 IL Case, D.I. 551 at 63-64 (Aug. 5, 2019))

In April 2019, ClearOne filed a separate action in the Northern District of Illinois against Shure, alleging that Shure's MXA910 product infringed ClearOne's '553 patent and that Shure misappropriated ClearOne's trade secrets.  (*ClearOne, Inc. v. Shure, Inc*., Civil Action Number 19-2421 ("2019 IL Case"), D.I. 1 (N.D. Ill. Apr. 10, 2019))

### 2. The Instant Lawsuit and ClearOne's Declaratory Judgment Action

On July 18, 2019, Shure filed the instant action against ClearOne in this Court.  (D.I. 1) The Court has been referred this case for all purposes, up through the case dispositive motions deadline, by United States District Judge Richard G. Andrews.  (D.I. 9)

In the instant action, Shure asserted infringement of its United States Patent No. 9,565,493 (the "'493 patent"), entitled "Array Microphone System and Method of Assembling the Same[,]" by ClearOne's BMA CT product, as well as federal and state law claims based on ClearOne's alleged marketplace misconduct.  (D.I. 1)[3]  On October 22, 2019, Shure filed a motion seeking leave to amend its complaint (the "motion to amend") to assert infringement by ClearOne's BMA CT product of U.S. Design Patent No. D865723 (the "'723 patent"), entitled "Array Microphone Assembly[,]" which was then scheduled to issue on November 5, 2019. (D.I. 48; D.I. 49 at 1)[4]  (The '723 patent in fact did issue as scheduled on November 5, 2019.). (D.I. 64 at ¶ 16)  On November 4, 2019, the Court set a hearing on the motion to amend for November 18, 2019, (D.I. 56); one day after that hearing, on November 19, 2019, the Court

---

[3]      In October 2019, ClearOne filed a motion to transfer this action to the Northern District of Illinois, (D.I. 29), which the Court has denied, (D.I. 155).

[4]      The '723 patent claims priority to the '493 patent.  (D.I. 64 at ¶ 16)

granted Shure's motion to amend, (D.I. 63).  Shure filed the SAC on November 19, 2019.  (D.I. 64)

In the SAC, the First Cause of Action is a claim for patent infringement of the '493 patent and the Sixth Cause of Action is a claim for design patent infringement of the '723 patent.  (D.I. 64 at ¶¶ 26-41, 71-81)[5]  ClearOne is accused of infringing these patents-in-suit by making, using, offering to sell and selling beamforming microphone arrays, specifically its BMA CT product. (*Id.*)

In addition to patent infringement, Shure further alleges that ClearOne made various false or misleading statements (including statements made by its Regional Sales Manager John Schnibbe (the "ClearOne Statements"), and its Senior Vice President of Finance Narsi Narayanan in an August 29, 2019 letter (the "Narayanan Letter")) to customers, installers and integrators regarding the status or impact of litigations between the two parties, including as to the impact of the preliminary injunction that was entered by the Northern District of Illinois Court in the 2017 IL Case.  (*Id.* at ¶¶ 20-25)  These statements will be discussed in further detail below, as they provide the basis for Shure's claim of false advertising under the Lanham Act (the Second Cause of Action), (*id.* at ¶¶ 42-49), and its various Delaware state law claims, including claims for a violation of the Delaware Deceptive Trade Practices Act ("DTPA") (the Third Cause of Action), (*id.* at ¶¶ 50–56), tortious interference with business relations (the Fourth Cause of Action), (*id.* at ¶¶ 57–63), and unfair competition (the Fifth Cause of Action), (*id.* at ¶¶ 64–70).

---

[5]       On February 15, 2019, ClearOne filed a petition for IPR of all claims of the '493 patent.  (D.I. 64 at ¶ 18)  On August 16, 2019, the PTAB instituted IPR on all claims of the '493 patent.  (*See* D.I. 13 at 2)  And on November 1, 2019, the Court granted ClearOne's motion to stay the case as to the First Cause of Action (i.e., Shure's claim of infringement of the '493 patent), in light of that IPR proceeding.  (D.I. 53)

Meanwhile, on the same date that the '723 patent issued (November 5, 2019)—and while Shure's motion to amend was filed and was then pending a hearing in this Court—ClearOne filed a declaratory judgment action ("DJ Action") in the Northern District of Illinois seeking a declaration of non-infringement of the '723 patent.  (D.I. 76 at 1; D.I. 80 at 1)[6]

### B.      Procedural Background

The instant Motions were filed on September 23, 2019 and December 10, 2019, respectively.  (D.I. 21; D.I. 75)  Briefing was completed on the Motions by December 26, 2019. (D.I. 86)

## II.      STANDARD OF REVIEW

When presented with a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court conducts a two-part analysis.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  First, the court separates the factual and legal elements of a claim, accepting all of the complaint's well-pleaded facts as true, but disregarding any legal conclusions.  *Id.* at 210-11. Second, the court determines whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'"  *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  In assessing the plausibility of a claim, the court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff

---

[6]      On December 4, 2019, United States District Judge Edmond E. Chang, who is presiding over the 2017 IL Case and the 2019 IL Case, granted ClearOne's motion to reassign the DJ Action to Judge Chang.  (2017 IL Case, D.I. 684 (N.D. Ill. Dec. 4, 2019))

may be entitled to relief.'"  *Fowler*, 578 F.3d at 210 (quoting *Phillips v. Cnty. of Allegheny*, 515

F.3d 224, 233 (3d Cir. 2008)).

## III.    DISCUSSION

ClearOne's Motions seeks dismissal of all of the causes of action in Shure's SAC on

various grounds.  The Court will address these arguments in turn.

### A.    Whether Shure's Claims Are Compulsory Counterclaims

ClearOne first argues that "virtually all" of the claims in Shure's FAC (the operative

complaint at the time ClearOne filed its briefing on the issue), except for those relating to the

Narayanan Letter, should be dismissed because they are compulsory counterclaims that Shure

wrongfully failed to assert in the 2019 IL Case.  (D.I. 22 at 6-9 & n.3; D.I. 43 at 1-4)[7]  A

counterclaim is compulsory pursuant to Federal Rule of Civil Procedure 13(a) if it exists at the

time of the pleading's service and "arises out of the transaction or occurrence that is the subject

matter of the opposing party's claim[.]"  Fed. R. Civ. P. 13(a).  If not raised in the first action, a

compulsory counterclaim is barred in subsequent litigation.  *Morgan v. Scott*, 83 F. Supp. 3d

616, 624 (D. Del. 2015).  The "operative question" in determining if a claim is a compulsory

counterclaim is whether the counterclaim "bears a logical relationship to an opposing party's

claim."  *Id.* (internal quotation marks and citations omitted).  "Such a logical relationship exists

where separate trials on each of the claims would involve a substantial duplication of effort and

time by the parties and the courts."  *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 836 n.9 (3d

---

[7]    Shure's latest pleading in the 2017 IL Case was filed on November 26, 2018, and
there is no dispute that Shure could not have asserted infringement of the '493 patent by
ClearOne's BMA CT product or its non-patent claims at that time in that case.  (D.I. 40 at 3; D.I.
43 at 2)

Cir. 2011) (internal quotation marks and citation omitted); *see also M.R. v. Ridley Sch. Dist.*, 744 F.3d 112, 121 (3d Cir. 2014).

The Court starts first with Shure's non-patent claims.  According to ClearOne, the ClearOne Statements at issue in these non-patent claims relate to "ClearOne's beliefs about the merits of its patent infringement claims and ongoing litigation pending in Illinois."  (D.I. 22 at 7) And ClearOne contends that these claims "bear a logical relationship" to ClearOne's claims in the 2019 IL Case "because they involve many of the same factual issues and are offshoots of the same basic controversy between the parties[,]" and because they concern Shure's MXA910 product, which is a "central product at issue in the 2019 IL Case."  (*Id.* at 7-8)

The Court does not agree with ClearOne here.  Shure's non-patent claims allege that ClearOne engaged in a campaign of making false and misleading statements to Shure's customers regarding the "availability, legitimacy, and viability of Shure's MXA910 product based on the ongoing litigation between the parties."  (D.I. 64 at ¶¶ 1, 20)[8]  But the allegedly false and misleading statements that Shure calls out in the SAC pertain to rulings made in the *2017 IL Case* and in *a separate IPR proceeding* regarding ClearOne's '553 patent.  (*Id.* at ¶ 20; *see also* D.I. 22 at 7; D.I. 40 at 3, 9)  Thus, it is clear that these statements do not arise from the same transaction or occurrence as the subject matter of the 2019 IL Case at the time of its filing. (D.I. 40 at 3-4)  And as Shure points out, even if Shure is ultimately found to have infringed ClearOne's '553 patent (the patent at issue in the 2019 IL Case), that will not affect whether the ClearOne Statements relating to *different* litigations were misleading and/or harmed Shure at the time that they were made.  (*Id.* at 9)  For these reasons, the Court concludes that:  (1) separate

---

[8]      The Court cites herein to the SAC since it is the currently-operative complaint and the content of the relevant claims is the same as it was in the FAC.

trials on Shure's non-patent claims in this case (on the one hand) and ClearOne's claims at the time of the filing in the 2019 IL Case (on the other hand) would not involve substantial duplication of effort and time by the parties and the judicial system; and (2) Shure's non-patent claims are thus not compulsory counterclaims under Rule 13(a). It therefore recommends that ClearOne's Motion be denied on that basis.

Next, the Court addresses Shure's claim of infringement of the '493 patent by ClearOne's BMA CT product. In arguing that this claim would have been a compulsory counterclaim in the 2019 IL Case, ClearOne points out that the '493 patent (at issue here) and ClearOne's '553 patent (at issue in the 2019 IL Case): (1) involve similar conferencing and array microphone technologies and (2) implicate the same products, in the sense that ClearOne's BMA CT product (the accused product here) practices the '553 patent, and because here Shure is asserting damages tied to sales of its MXA910 product, which is the accused product in the 2019 IL Case. (D.I. 22 at 8; D.I. 43 at 4)

Here again though, the Court disagrees with ClearOne. In denying ClearOne's motion to transfer this action to the Northern District of Illinois, the Court noted that while there would be some areas of factual overlap between this case and the Northern District of Illinois cases, "the specific patents-in-suit in this case are not at issue in the Northern District of Illinois cases, and the accused product here is not accused there"; thus, here "there will be different claim terms to construe, different nuances to explore regarding infringement and invalidity, and different issues at play regarding damages." (D.I. 155 at 17-18 & n.9; *see also* D.I. 40 at 5-6) For just those same reasons, this Court and other courts have rejected the position that a party sued for patent infringement must counter-assert its own patent as a compulsory counterclaim, finding that claims involving different patents asserted against different products do not arise out of the

transaction or occurrence that is the subject matter of the opposing party's claim.[9]  And

ClearOne did not cite to any cases holding otherwise.  (*See* D.I. 40 at 6-7)[10]  For all of these

reasons, the Court finds that Shure's claim of infringement of the '493 patent was also not a

compulsory counterclaim in the 2019 IL Case, and recommends that ClearOne's Motion also be

denied on that basis.

### B.    False Advertising Claim Under the Lanham Act (Second Cause of Action)

---

[9]      *See Metallgesellschaft AG v. Foster Wheeler Energy Corp.*, 143 F.R.D. 553, 558 (D. Del. 1992) (concluding that while the plaintiff's claim of patent infringement and the defendant's counterclaim of patent infringement involved common issues of fact and law and some overlapping evidence, defendant's counterclaim was not compulsory, as the patents asserted by the respective parties "are not related *per se* and [] the facilities at issue" as between the parties' claims are different, such that defendant's counterclaim was an independent claim "that would not be barred by the doctrine of *res judicata* in a subsequent suit"); *see also, e.g.*, *Measurements Corp. v. Ferris Instrument Corp.*, 159 F.2d 590, 594 (3d Cir. 1947) (rejecting the notion that a patent infringement counterclaim asserted in a declaratory judgment action seeking a declaration of invalidity and non-infringement of a different patent was compulsory, where "[a]ppellee's claim put in issue the validity of the Ferris patent and appellant's charge of infringement thereof" and the "VanBeuren patent [asserted in the counterclaim], while affecting signal generators, is wholly different from the Ferris patent"); *Med. Components, Inc. v. C.R. Bard, Inc.*, Case No. 2:17-cv-01047, 2018 WL 1470572, at *2 (D. Utah Mar. 23, 2018) (rejecting defendant's argument that the plaintiff's infringement claim was a compulsory counterclaim to an earlier litigation brought in a different court, where that litigation concerned different patents and thus different issues, as was underscored by the recent denial of the defendant's motion to transfer plaintiff's infringement claim to that court); *Int'l Controls & Measurements Corp. v. Honeywell Int'l, Inc.*, No. 5:12-CV-1766 (LEK/ATB), 2013 WL 4805801, at *5-12 (N.D.N.Y. Sept. 9, 2013) (concluding that the test for finding a counterclaim to be compulsory will not normally be met when "the claim and purported counterclaim would require a court to determine whether different products infringe different patents" even when the patents "relate to the same general subject of invention").

[10]     Indeed, the few cases that ClearOne did cite in support of its argument that "Shure's patent infringement claims [were compulsory counterclaims because they] relate to the same products and similar technology at issue in the 2019 IL Case" are distinguishable.  (D.I. 22 at 8)  For example, *Koufakis v. Carvel*, 425 F.2d 892, 899-900 (2d Cir. 1970), did not involve patent infringement claims.  And in *Rohm & Haas Co. v. Brotech Corp.*, 770 F. Supp. 928, 934 (D. Del. 1991), the claims that this Court found should have been brought as compulsory counterclaims were not patent infringement counterclaims, but instead claims that the plaintiff engaged in fraudulent activity regarding its own patents, four of which were the subject of the previous litigation.  *See Int'l Controls*, 2013 WL 4805801, at *12 (explaining *Rohm & Haas* in just this way).

The Second Cause of Action in the SAC alleges false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a), based on "false and misleading statements" made by ClearOne.  (D.I. 64 at ¶¶ 42-49)  ClearOne asserts that this claim must be dismissed based on "several independent reasons[,]" which the Court will take up in turn.  (D.I. 22 at 10)

### 1.      Whether Shure's Allegations Meet Federal Pleading Standards

A plaintiff alleging false advertising pursuant to the Lanham Act must plead facts plausibly asserting:  (1) that the defendant has made false or misleading statements in commercial advertising or promotion as to the defendant's own product or another's; (2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) that the deception is material in that it is likely to influence purchasing decisions; (4) that the advertised goods traveled in interstate commerce; and (5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.  *See Reybold Grp. of Cos., Inc. v. Does 1-20*, 323 F.R.D. 205, 209-210 (D. Del. 2017) (citing cases); *Accenture Global Servs. GmbH v. Guidewire Software Inc.*, 581 F. Supp. 2d 654, 666 (D. Del. 2008).  ClearOne's first argument for dismissal is that Shure's allegations fail to meet federal pleading standards because the SAC "does not include *any detail about the specifics* of the [purportedly false and misleading statements,] including, but not limited to, when the alleged statements were made, who the statements were made to, and the context in which each statement was made."  (D.I. 22 at 10 (emphasis added))

In making this argument, ClearOne does not argue that Shure's Lanham Act false advertising claim is subject to the pleading standards set out in Federal Rule of Civil Procedure

9(b).[11]  (D.I. 22 at 10-12)  Thus, the Court will analyze the claim pursuant to Federal Rule of

Civil Procedure 8(a), in the manner set out in Section II of this Report and Recommendation.[12]

Shure's allegations easily clear that hurdle.  Shure alleges that "[s]ince at least March

2019" Mr. Schnibbe made false and misleading statements regarding the availability, legitimacy

and viability of Shure's MXA910 product in connection with the ongoing litigation between the

parties to "more than a dozen installers and integrators" of Shure's conferencing equipment.

(D.I. 64 at ¶ 20)[13]  And in addition to setting out who made the statements, the timeframe in

---

[11]    While some federal courts have concluded that Rule 9(b) applies to claims for false advertising under the Lanham Act, the United States Court of Appeals for the Third Circuit has never so held.  (D.I. 22 at 11 n.5)

[12]    ClearOne does, at times, suggest that an "intermediate" level of scrutiny—falling somewhere between what is required by Rule 8(a) and Rule 9(b)—applies to review of the sufficiency of Lanham Act false advertising claims like this one.  (D.I. 22 at 10-11)  For support, it cites to a few district courts in this Circuit that have said the same; those courts in turn usually cite for support to a 35-year-old, pre-*Twombly/Iqbal* decision from the United States District Court for the Eastern District of Pennsylvania:  *Max Daetwyler Corp. v. Input Graphics, Inc.*, 608 F. Supp. 1549, 1556 (E.D. Pa. 1985).  The Court respectfully disagrees with these other courts and cannot conclude that an "intermediate" standard of review applies to this Lanham Act claim.  Federal pleading requirements are set out in the Federal Rules of Civil Procedure (as those rules are interpreted by the Supreme Court of the United States); they are not created or crafted by federal district courts.  *See UHS of Del., Inc. v. United Health Servs., Inc.*, Civil Action No. 1:12-CV-00485, 2013 WL 1308303, at *3 (M.D. Pa. Mar. 28, 2013) (declining to "craft a[n intermediate] pleading standard which differs from that articulated by the Supreme Court in *Twombly* and *Iqbal*" for trademark infringement or unfair competition claims under the Lanham Act); *cf. Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 113 S. Ct. 1160, 1163 (1993) (noting that how and whether certain claims are subject to either the pleading requirements of Rule 8 or Rule 9(b) "is a result which must be obtained by the process of amending the Federal Rules, and not by judicial interpretation").  And nowhere in Rules 8 or 9 (or elsewhere in the Federal Rules) does the Court see reference to such an "intermediate" pleading standard.  Nor has the Supreme Court or the Third Circuit ever concluded that such a standard should apply to this type of claim.

[13]    Shure's false advertising claim refers specifically to the statements made by Mr. Schnibbe, but not to those in the Narayanan Letter.  (D.I. 64 at ¶ 43; *see also* D.I. 22 at 9 n.4; D.I. 43 at 5 n.5)  Thus, in assessing Shure's false advertising claim, the Court will focus on the statements alleged to have been made by Mr. Schnibbe.

which they were made and the types of persons to whom they were made, Shure's allegations go on to provide descriptions of these false statements[14] and state that they were "intentionally misleading and were made in bad faith, and with the intent to induce customers to refrain from purchasing MXA910 products." (*Id.*) Shure's allegations are surely sufficient to put ClearOne on notice of the nature of Shure's false advertising claim pursuant to Rule 8(a).[15]

### 2.   Whether the Alleged Statements are Actionable

ClearOne next argues that other aspects of Shure's allegations regarding the purported false or misleading statements are wanting. ClearOne's challenge here is made on three grounds that the Court will consider in turn.

### a.   Whether The Alleged Statements Constitute Commercial Advertising or Promotion

---

[14]   They include "that Shure's MXA910 has been found to infringe ClearOne's patents, that two separate court rulings found that the MXA910 infringed ClearOne's patents, that such rulings were 'unanimous,' that ClearOne had 'won' its lawsuit against Shure, that the MXA910 will soon be unavailable, that Shure will soon have to stop selling the MXA910, that Shure was then unable to sell MXA910 products, and that integrators, installers, and/or end users will need to tear or rip out existing installations of the MXA910." (D.I. 64 at ¶ 20)

[15]   To the extent that ClearOne argues that Shure's failure to name a *specific* customer to whom the statements were made is "fatal" to Shure's SAC, (D.I. 43 at 5), the Court is not persuaded that such information is required for a false advertising claim to be sufficiently pleaded under Rule 8(a). *See, e.g.*, *Priority Int'l Animal Concepts, Inc. v. Bryk*, No. 12-C-0150, 2012 WL 6020044, at *6 (E.D. Wis. Dec. 3, 2012). ClearOne also complains that Shure did not explain *why* the statements were false and misleading. (D.I. 43 at 5) While it is true that Shure did not provide such an explanation in the same paragraph in which it set out Mr. Schnibbe's statements, it did provide a detailed explanation about why certain similar statements made in the Narayanan Letter are false and misleading (e.g., because they wrongly suggest that, in light of the state of the legal proceedings at issue, there is no permissible non-infringing use of the MXA910 product or that the MXA910 will no longer be available in any form). (D.I. 64 at ¶¶ 22-25) And as to other of the ClearOne Statements (i.e., that the MXA910 had been "found to infringe" ClearOne's patents or had "won" its lawsuit or that such rulings were "unanimous"), it is pretty easy to figure out why such statements are said to be false or misleading (i.e., that the rulings in the relevant courts were either not final decisions on the question of infringement, or that they had nothing to do with a finding of infringement). This all should have been sufficient to put ClearOne on notice of Shure's position in that regard.

First, ClearOne argues that Shure has failed to allege that the ClearOne Statements constitute the required form of "commercial advertising or promotion," *Accenture Global Servs.*, 581 F. Supp. 2d at 666; *see also* 15 U.S.C. § 1125(a)(1)(B), since Shure points only to isolated statements by a salesperson (Mr. Schnibbe) to a number of unnamed customers.  (D.I. 22 at 12-13; D.I. 43 at 6)  The "touchstone" of whether a defendant's statements amount to the requisite commercial advertising or promotion is "that the contested representations are part of an organized campaign to penetrate the relevant market."  *Progressive Sterilization, LLC v. Turbett Surgical, LLC*, Civil Action No. 19-627-CFC, 2020 WL 1849709, at *10 (D. Del. Apr. 13, 2020) (internal quotation marks and citations omitted).  While "advertising" is generally understood by courts to consist of widespread communication through print or broadcast media, "promotion" may take other forms of publicity used in the industry at issue, such as sales presentations to buyers.  *See Premier Comp Solutions, LLC v. Penn Nat'l Ins. Co.*, Civil Action No. 07-1764, 2012 WL 1038818, at *8 (W.D. Pa. Mar. 28, 2012); *see also, e.g., Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 299 F. Supp. 2d 565, 574 (E.D. Va. 2004) (["T]he determination [of] whether particular communications constitute advertising or promotion is depend[e]nt upon the industry in question.").

Here, Shure has alleged that ClearOne "began a campaign of false and misleading statements" by at least Mr. Schnibbe to "more than a dozen" customers such as "installers and integrators of conferencing equipment" since at least March 2019.  (D.I. 64 at ¶¶ 1, 20, 43)  The import of these statements, at least in significant part, was to convey that these many customers should "refrain from purchasing MXA910 products."  (*Id*. at ¶ 20)  Viewing these allegations in a light most favorable to Shure, as it must at this stage of the case, the Court concludes that they are sufficient to plausibly allege that the statements were part of an organized campaign to

penetrate the relevant market.  *See Gen. Sec., Inc. v. Commercial Fire & Sec., Inc.*, 17-CV-1194

(DRH) (AYS), 2018 WL 3118274, at *8 (E.D.N.Y. June 25, 2018) (finding that plaintiffs

sufficiently pleaded this element where they alleged that defendants took affirmative steps to

contact "several of [p]laintiffs' customers," which suggested a systematic effort to solicit such

customers); *see also Mimedx Grp., Inc. v. Osiris Therapeutics, Inc.*, 16 Civ. 3645 (KPF), 2017

WL 3129799, at *8 (S.D.N.Y. July 21, 2017).

> **b.**     **Whether the Statements Were Sufficiently Alleged to be Made
> in Bad Faith**

ClearOne's next challenge relates to the fact that the allegedly false or misleading

statements at issue amount to allegations by ClearOne that Shure was infringing its patents.  For

a patentee to be held liable under Section 43(a) of the Lanham Act for marketplace activity in

support of its patent, and thus be deprived of the right to make statements about potential

infringement of its patent, the marketplace activity must have been undertaken in bad faith.  *See*

*PhishMe, Inc. v. Wombat Sec. Techs., Inc.*, Civil Action No. 16-403-LPS-CJB, 2017 WL

3821107, at *10 (D. Del. Aug. 31, 2017) (citing *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d

1340, 1353 (Fed. Cir. 1999)).  Generally, a threshold showing of incorrectness or falsity, or

disregard for either, is required in order to find bad faith with respect to communication of

information regarding the pendency of patent rights.  *Id.*

Here, ClearOne contends that Shure failed to plead facts establishing that ClearOne made

the ClearOne Statements in bad faith; instead, it asserts that Shure's pleading merely relies on a

*conclusory allegation* to establish this element.  (D.I. 22 at 13-15; D.I. 43 at 7)  However, Shure

not only stated that the ClearOne Statements are "factually false" and "intentionally misleading"

and made in "bad faith . . . with the intent to induce customers to refrain from purchasing

MXA910 products[,]" (D.I. 64 at ¶¶ 20, 43), but it went on to explain *why* such statements were

14

false (to the extent such an explanation is needed).  *See supra* n. 15.  This is sufficient to

demonstrate the bad faith element at this stage of the proceedings.  (D.I. 40 at 14); *Infinity*

*Headwear & Apparel, LLC v. Jay Franco & Sons, Inc.*, 15-CV-1259 (JPO), 2016 WL 5372843,

at \*4-5, \*7 (S.D.N.Y. Sept. 26, 2016).

### c.      Whether the Statements Are Opinions

"Only statements of fact capable of being proven false are actionable under the Lanham

Act because, when personal opinions on nonverifiable matters are given, the recipient is likely to

assume only that the communicator believes the statement, not that the statement is true."

*Parker v. Learn Skills Corp.*, 530 F. Supp. 2d 661, 679 (D. Del. 2008) (citing cases).  ClearOne

lastly asserts that the ClearOne Statements are nonactionable because they represent ClearOne's

opinions regarding the status and effects of ClearOne's efforts to enforce its patent rights.  (D.I.

22 at 15-16; D.I. 43 at 7-8)

Accepting the allegations of the SAC as true, and drawing all reasonable inferences in

favor of Shure, the Court concludes that the ClearOne statements constitute "verifiably false

statements of fact"—as opposed to mere opinion or puffery.  (D.I. 40 at 15-16)  It is not opinion

to state that:  (1) Shure's MXA910 has been "found to infringe" ClearOne's patents; (2) that two

court rulings came to that conclusion and were "unanimous"; (3) that ClearOne had "won" its

lawsuit against Shure; and (4) that the MXA910 would soon be "unavailable" or that Shure could

not sell MXA910 products or that Shure's customers would need to rip out existing MXA910

installations.  (D.I. 64 at ¶ 20)  Those are all purported statements of fact that are said to be

clearly untrue, in light of the then-current state of the 2017 IL Case and the IPR proceeding

involving the '553 patent (in which there was then no final determination by a factfinder that the

MXA910 product had infringed a ClearOne patent, nor any order to the effect that the MXA910

15

product could not be sold or used in any form).  Thus, ClearOne's argument on this ground does not compel dismissal of Shure's claim.  *Cf. GeigTech East Bay LLC v. Lutron Elecs. Co., Inc.*, No. 18 Civ. 5290 (CM), 2019 WL 1768965, at *8-9 (S.D.N.Y. Apr. 4, 2019) (finding that a party sufficiently pleaded that statements at issue were more than mere opinions, where the statements were susceptible to proof by way of objectively verifiable facts); *Global Tech. LED, LLC v. Hilumz Int'l Corp.*, Case No. 2:15-cv-553-FtM-29CM, 2017 WL 588669, at *6 (M.D. Fla. Feb. 14, 2017) (concluding that statements asserting that defendants' products infringe plaintiff's patents and that defendants are no longer allowed to sell those products are properly treated as statements of fact rather than opinion).

### 3.    Whether Shure Has Properly Pled Actual Deception

ClearOne's final challenge to Shure's false advertising claim is that Shure has failed to adequately plead the "actual deception" requirement, because the SAC contains no facts demonstrating that customers were actually misled.  (D.I. 22 at 16; D.I. 43 at 8)  As was noted above, in order to establish a false advertising claim under the Lanham Act, a plaintiff must plead that the statements actually deceived, or had at least a tendency to deceive, a substantial portion of the intended audience.  *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc*., 653 F.3d 241, 248 (3d Cir. 2011).

However, where a plaintiff has alleged that the relevant statements are literally false, it is entitled to a presumption of actual deception.  *See CareDx, Inc. v. Natera, Inc.*, Civil Action No. 19-662-CFC-CJB, 2019 WL 7037799, at *10 (D. Del. Dec. 20, 2019) (citing cases), *report and recommendation adopted by* 2020 WL 401773, at *2 (D. Del. Jan. 24, 2020).  Shure's SAC alleges that ClearOne made "factually false" statements regarding the ongoing litigation between the parties and the availability of Shure's MXA910 product, and it explains why (to the extent

such an explanation is needed) these statements are false.  (D.I. 64 at ¶¶ 20, 22-25); *supra* n. 15. Shure has sufficiently pled literal falsity and thus, has sufficiently alleged actual deception.  (D.I. 40 at 16); *see also, e.g.*, *Kimberly-Clark Worldwide, Inc. v. Cardinal Health 200, LLC*, Civil Action No. 11-1228-RGA, 2012 WL 3063974, at *3 (D. Del. July 27, 2012).

### 4. Conclusion

In sum, none of ClearOne's bases for dismissal of Shure's false advertising claim under the Lanham Act have merit.  The Court thus recommends that ClearOne's Motion be denied with respect to the Second Cause of Action.

### C. Violation of Delaware Deceptive Trade Practices Act (Third Cause of Action)

The Third Cause of Action in Shure's SAC alleges that ClearOne violated the DTPA, Del. C. tit. 6, §§ 2532(a)(2), (5), (8) & (12), pursuant to Mr. Schnibbe's statements and the statements in the Narayanan Letter.  (D.I. 64 at ¶¶ 50-56)  The DTPA actually has a "lower burden of proof than the Lanham Act" because "a complainant need not prove competition between the parties or actual confusion or misunderstanding" to prevail in an action under the DTPA.  *10x Genomics, Inc. v. Celsee, Inc.*, Civil Action No. 19-862-CFC-SRF, 2019 WL 5595666, at *7 (D. Del. Oct. 30, 2019) (internal quotation marks and citation omitted).

Ultimately, the Court concludes that because at least the allegations regarding the Narayanan Letter satisfy the pleading requirements for a DTPA claim, this cause of action should survive.[16]  In this regard, Shure alleges, *inter alia*, that:  (1) the Narayanan Letter is

---

[16]     ClearOne also argues that the cause of action should be dismissed to the extent it is reliant on Mr. Schnibbe's statements.  In that regard, ClearOne first asserts that federal courts apply the Rule 9(b) heightened pleading standard to DTPA claims, and that as to the allegations regarding Mr. Schnibbe's statements, the claim fails for the same reasons that Shure's Lanham Act false advertising claim fails.  (D.I. 22 at 17; D.I. 43 at 9)  The Court need not reach the issue of whether Rule 9(b) applies to this claim, and if so, whether the allegations regarding Mr.

misleading when it states that third party installers and integrators are likely infringing ClearOne's patent by installing Shure's MXA910 product "in a drop-ceiling mounting configuration[,]" because the Northern District of Illinois Court's grant of a preliminary injunction in the 2017 IL Case would still permit such a person to mount the MXA910 "to a drop-ceiling tile or other structure, such that the microphones of the MXA910 are not in the drop space"; (2) the letter's references to third parties "infringing" ClearOne's patents misleadingly suggests that these Shure customers could be held personally liable via the 2017 IL Case, when that could not happen; (3) the letter misleadingly omits reference to the fact that even in light of the preliminary injunction in the 2017 IL Case, there are permissible non-infringing uses/configurations of the MXA910 product; and (4) the letter misleadingly suggests that customers who have already installed the MXA910 product in an infringing configuration will not be permitted to continue to use the product, when in fact the preliminary injunction order permits such use for already-installed products.  (D.I. 64 at ¶¶ 21-25, 51; *see also* 2017 IL Case, D.I. 551 at 64)  While ClearOne has a contrary argument for why these statements were not in fact misleading, (D.I. 22 at 18-19), and while that argument might ultimately prevail before a factfinder, we are at the pleading stage here.  And the Court can see how the content of the letter can be perceived as misleading in these ways, such that the allegations are sufficiently plausible to pass muster.  (D.I. 40 at 19)

For these reasons, the Court recommends denial of the Motion with regard to the Third Cause of Action.

### D. Tortious Interference With Business Relations (Fourth Cause of Action) and Unfair Competition (Fifth Cause of Action)

---

Schnibbe's statements satisfy that Rule's requirements, since the claim is at least plausibly pleaded with regard to the contents of the Narayanan Letter.

The Fourth Cause of Action in Shure's SAC alleges tortious interference with business relations, (D.I. 64 at ¶¶ 57-63), and the Fifth Cause of Action alleges unfair competition under Delaware common law, (*id.* at ¶¶ 64-70).  ClearOne challenges these claims on the grounds that: (1) patent law preempts these claims because Shure failed to properly plead bad faith; (2) the claims do not comply with Rule 8; (3) there is no requisite "wrongful act[;]" and (4) Shure failed to plead the existence of a valid business relationship.  (D.I. 22 at 19-20; D.I. 43 at 10)  The first three arguments were raised and rejected in connection with ClearOne's motion to dismiss Shure's Lanham Act false advertising claim.  (*See* D.I. 22 at 20; D.I. 40 at 20 (relying on previous arguments with respect to these grounds))

With respect to ClearOne's fourth argument, while Shure's allegations could have been more factually robust, they sufficiently establish that:  (1) it had reasonable probabilities of entering into business relationships with its customers, particularly certain of its installers and integrators; (2) these relationships were deterred and interfered with by ClearOne's allegedly false and misleading statements to such parties; and (3) ClearOne's conduct has caused these Shure customers to withhold trade with Shure regarding the MXA910 product.  (D.I. 40 at 19 (citing D.I. 64 at ¶ 59); *see also* D.I. 64 at ¶¶ 20, 53); *cf. GPNE Corp. v. Fleetmatics USA, LLC*, Civil Action No. 13-2049-SLR-SRF, 2015 WL 730046, at *9 (D. Del. Feb. 20, 2015) (denying the defendant's motion to dismiss plaintiff's common law claim for unfair competition where "Fleetmatics has pleaded that it had a reasonable expectancy of entering and continuing its valid business relationships with its customers, that GPNE interfered with those business relationships by wrongfully sending letters to Fleetmatics' customers, and that GPNE's actions defeated Fleetmatics' expectancy and caused harm by preventing Fleetmatics from earning revenue"); *see also CareDx, Inc.*, 2019 WL 7037799, at *13; *Deston Therapeutics LLC v. Trigen Labs. Inc.*,

723 F. Supp. 2d 665, 676 (D. Del. 2010).  The Court thus recommends that the Motion be denied with respect to the Fourth and Fifth Causes of Action.

### E.      Design Patent Infringement Claim (Sixth Cause of Action)

The Sixth Cause of Action in Shure's SAC asserts infringement of the '723 design patent. (D.I. 64 at ¶¶ 71-81)  ClearOne moves to dismiss this claim on two grounds.  (D.I. 76 at 1)  First, ClearOne argues that the claim is a later-filed claim than ClearOne's DJ Action filed in the Northern District of Illinois, and must therefore be dismissed.[17]  (*Id.* at 4-10)  Second, ClearOne argues that Shure has not plausibly pleaded that ClearOne's BMA CT product infringes the design claimed in the '723 patent.  (*Id.* at 10-15)  The Court will take up these arguments in turn.

### 1.      Whether Shure's Design Patent Infringement Claim Must be Dismissed Under the "First-Filed" Rule

There is no dispute that, in a literal, chronological sense, ClearOne's DJ Action was filed before the filing of Shure's SAC (which added the '723 patent to this case).  (D.I. 86 at 1)  When a court is determining whether an earlier-filed declaratory judgment action should yield to a later-filed infringement lawsuit, the court's discretion is guided by the first-to-file rule. *Commc'ns Test Design, Inc. v. Contec, LLC*, 952 F.3d 1356, 1362 (Fed. Cir. 2020).[18]  The first-to-file rule "is a doctrine of federal comity, intended to avoid conflicting decisions and promote judicial efficiency[.]" *Id.* (internal quotation marks and citation omitted).  Generally, the forum of the first-filed action is favored, even if that action is declaratory, "unless considerations of

---

[17]      The parties agreed that this "first-to-file" issue would be resolved by this Court (as opposed to the Northern District of Illinois Court).  (D.I. 68)

[18]      When considering the first-to-file rule in patent cases where an action for infringement and a declaratory judgment action for non-infringement are pending in different districts, the United States Court of Appeals for the Federal Circuit applies its own law to the question. *Futurewei Techs., Inc. v. Acacia Research Corp.*, 737 F.3d 704, 708 (Fed. Cir. 2013).

judicial and litigant economy, and the just and effective disposition of disputes, require otherwise." *Id.* (internal quotation marks and citation omitted).

Shure has two different arguments as to why, although the DJ Action was filed first in a chronological sense (as compared to the filing of the Sixth Cause of Action here), the former should give way to the latter. And they are both good arguments.

First, Shure argues that its design patent cause of action "relates back" to the original Complaint filed in this case; in that sense, it asserts that its design patent claim (and not the DJ Action) is in fact the first-filed case. (D.I. 80 at 4-8) A claim is considered to have been first-filed, even if it was not chronologically filed first, if it relates back to a claim in an original complaint that *was* chronologically filed first. *See, e.g.*, *Activision Blizzard Inc. v. Acceleration Bay LLC*, Case No. 16-cv-03375-RS, 16-cv-3377-RS, 16-cv-3378-RS, 2016 WL 4548985, at *4 (N.D. Cal. Sept. 1, 2016); *Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980, 988 (N.D. Cal. 2011); *Intel Corp. v. Amberwave Sys. Corp.*, 233 F.R.D. 416, 418 (D. Del. 2005). "An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading[.]" Fed. R. Civ. P. 15(c)(1)(B). In *Anza Tech., Inc. v. Mushkin, Inc.*, 934 F.3d 1359 (Fed. Cir. 2019), the United States Court of Appeals for the Federal Circuit explained that in determining "whether newly alleged claims, based on separate patents, relate back to the date of the original complaint[,]" a court should consider "the overlap of parties, the overlap in the accused products, the underlying science and technology, time periods, and any additional factors that might suggest a commonality or lack of commonality between the two sets of claims." 934 F.3d at 1369.

The Court agrees with Shure that the design patent cause of action asserted in the SAC relates back to its original Complaint here, thus making this instant action the actual first-filed case.  (D.I. 80 at 4-8)  Each of the considerations set out in *Anza Tech.* are met here:  (1) just as with its claim of infringement as to the '493 utility patent in the original Complaint, Shure's design patent claim is brought against the same defendant (ClearOne); (2) the same accused product is at issue as to both claims (the BMA CT product), as is the same allegedly infringing activity (making, using and selling that BMA CT product); (3) both claims implicate the same microphone technology (with the ornamental features of that technology at issue as to the design patent); and (4) the design patent relies on the disclosure of the '493 patent and claims its earlier filing date.  (*Id.* at 4-5 (citing D.I. 1 at ¶¶ 28-31; D.I. 64 at ¶¶ 73-75 & ex. G))

ClearOne argues that the relation-back doctrine cannot apply where the patent had not yet issued "at the time that the party sought to add the patent claim to its case[.]"  (D.I. 86 at 3; *see also* D.I. 76 at 6-7 ("Shure filed its motion for leave to amend two weeks before any rights in the '723 patent had matured."))  It is true, as was noted above, that when Shure filed its motion to amend seeking to add the '723 patent claim, that patent had not yet issued (though the patent did issue by the time Shure filed its SAC).  But several courts (including this one) have permitted relation-back of a claim involving a newly-issued patent to a date before the patent's issuance, where the newly-issued patent involved closely-related subject matter to that in the previously-asserted patent.  *PerfectVision Mfg., Inc. v. PPC Broadband, Inc.*, 951 F. Supp. 2d 1083, 1087, 1093-94 (E.D. Ark. 2013) (finding that a newly-issued patent asserted in second amended complaint was part and parcel of the controversy regarding the patents in the original complaint, and that the second amended complaint would thus relate back to the filing of the original complaint); *Intel Corp.*, 233 F.R.D. at 418-19 (explaining that in a case in which subject matter

22

jurisdiction already existed as to a claim of infringement of one patent, it was appropriate to

consider an infringement claim regarding a later-issued patent to relate back to the filing date of

that first patent claim, where there was a "substantial overlap of core issues" with regard to the

respective claims of infringement)[19]  Thus, Shure has established that the design patent

infringement claim relates back to the original Complaint here, and that this action is thus

properly considered the first-filed case.

Second, Shure argues that the DJ Action was an anticipatory action, and that this fact,

when considered together with other pertinent factors, weighs against application of the first-

filed rule.  (D.I. 80 at 9-11)  There are exceptions to the first-filed rule, including where the first-

filed action constitutes an anticipatory filing.  *Flintkote Co. v. Aviva P.L.C.*, C.A. No. 13-103-

LPS, 2015 WL 1405922, at *2 (D. Del. Mar. 25, 2015); *see also Commc'ns Test Design*, 952

F.3d at 1362 ("[T]rial courts have discretion to make exceptions to this general rule in the

interest of justice or expediency, and we have recognized that such exceptions are not rare.")

(internal quotation marks and citation omitted).  A suit is anticipatory for the purposes of being

an exception to the first-filed rule "if the plaintiff in the first-filed action filed suit on receipt of

---

[19]     *See also Hooker Chems. & Plastics Corp. v. Diamond Shamrock Corp.*, 87 F.R.D.
398, 403 (W.D.N.Y. 1980) (concluding that a second amended complaint that asserted a newly-
issued patent was part and parcel of the same controversy as the original complaint, where the
two patents concerned the same technology, arose from a common application and contained
similar claims); *Cosden Oil & Chem. Co. v. Foster Grant Co., Inc.*, 432 F. Supp. 956, 958, 960
(D. Del. 1977) (finding that a plaintiff's amended complaint, which sought a declaration that
defendant's patent (which issued after the filing of the original complaint) was invalid and not
infringed by the plaintiff, related back to the original complaint, in that it was part and parcel of
the controversy surrounding the patent asserted in the original complaint); *Telephonics Corp. v.
Lindly & Co.*, 192 F. Supp. 407, 411 (E.D.N.Y. 1960) (finding that the amended complaint,
which added a declaratory judgment claim regarding a second newly-issued patent, related back
to the first complaint, where the declaratory judgment allegations in the first complaint regarding
a related patent "laid a sufficient foundation" to include the second patent "as an essential part of
the subject matter of the justiciable controversy between the parties").

specific, concrete indications that a suit by the defendant was imminent." *Woodbolt Distrib.,*

*LLC v. Natural Alts. Int'l, Inc.*, Civil Action No. 11-1266-GMS, 2013 WL 247041, at *4 (D. Del.

Jan. 23, 2013) (internal quotation marks and citations omitted).  However, whether the DJ Action

was anticipatory is merely one factor in the analysis that must be considered.  *Elecs. For*

*Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347-48 (Fed. Cir. 2005); *see also TSMC Tech., Inc. v.*

*Zond, LLC*, Civil Action No. 14-721-LPS-CJB, 2014 WL 7251188, at *5 (D. Del. Dec. 19,

2014).  Other relevant factors include the convenience and availability of witnesses, the absence

of jurisdiction over all necessary or desirable parties, and the possibility of consolidation with

related litigation.  *Commc'ns Test Design*, 952 F.3d at 1362; *Genentech, Inc. v. Amgen Inc.*, Civ.

No. 17-1407-GMS, Civ. No. 17-1471-GMS, 2018 WL 503253, at *7 (D. Del. Jan. 22, 2018)

("An anticipatory lawsuit does not lose its priority under the first-to-file rule, unless there are

additional convenience factors that do not favor a transfer.").

       Even if the relation-back doctrine did not render this action the first-filed suit as to the

'723 patent, then the anticipatory suit exception would surely apply here.  Shure filed its motion

to amend to add the '723 patent to this suit on October 22, 2019; that is what prompted ClearOne

to file the DJ Action on November 5, 2019, the day that the '723 patent issued.  (D.I. 57, ex. 2 at

¶ 16)  Thus, ClearOne's filing was anticipatory.  *See Commc'ns Test Design*, 952 F.3d at 1364.

       Indeed, the circumstances of this anticipatory suit are such that it seems particularly

wrong to credit the "firstness" of that anticipatory filing in a manner that disadvantages Shure.

That is because it was the Court's procedures—not any failure to act on Shure's part—that

ensured that Shure *could not* be the first to file as to the design patent claim.  Once Shure had

filed its motion to amend, the Court set a date for argument on that motion for November 18,

2019.  In light of this order, when the '723 patent actually issued on November 5, 2019, Shure

could not have beaten ClearOne to the courthouse to file its claim first, even if it had wanted

to—because the Court had already ordered that any decision on Shure's motion to amend would

not occur until at least two weeks later.[20]

As for the other relevant convenience factors, referenced above, the Court has already

considered them in denying ClearOne's motion to transfer this case to the Northern District of

Illinois.  (D.I. 155)  As the Court noted in ruling on that motion, the convenience factors were

not one-sided, and both Shure and ClearOne had articulable reasons to want to litigate this case

(including as to the '723 patent) in the respective jurisdictions.  But in the end, the balance of

these factors did not sufficiently favor transfer.  (*Id.* at 21-22)  Moreover, in examining these

convenience factors *as they relate most directly to the '723 patent*, in some ways the analysis is

even more favorable to Shure (as compared to the overall assessment of the motion to transfer).

That is because, as noted above, Shure brought a claim as to the '493 utility patent in this Court

first, and the '723 patent is related to and claims priority to the same application as does the '493

patent.  So in that sense, the most "convenient" home for litigation regarding the '723 patent

would arguably be the place where Shure was already litigating the related '493 patent.  *See*

*Commc'ns Test Design*, 952 F.3d at 1363-65 (affirming district court's grant of motion to

dismiss a declaratory judgment action ("DJ action") in favor of later-filed suit in another

---

[20]     The Court is not suggesting that in filing the DJ Action when it did, ClearOne
engaged in anything like "affirmative misconduct."  (D.I. 86 at 6)  These parties are clearly
engaged in a fierce battle over intellectual property rights, and their respective counsel are
simply doing all that they can within the bounds of the law to obtain any perceived advantage.
The Court's point here is just that normally, if one party files suit as to a patent before its
adversary does, that "firstness" is credited, at least in part because that side was more swift and
nimble (and arguably more invested) than its adversary in bringing the matter to a court's
attention.  But here, Shure had both of its legs tied before that race to the courthouse even
started, due to the Court's order that set oral argument on the motion to amend for two weeks
after the design patent was to issue.  It just seems strange to credit ClearOne for winning this
race to the courthouse, when Shure could not even have participated in the race.

jurisdiction, where the DJ action was clearly anticipatory and the convenience factors also weighed in favor of the forum of the later-filed suit).

For these reasons, the Court recommends that ClearOne's Motion be denied with respect to invocation of the first-to-file rule.

### 2.    Whether Shure Has Plausibly Alleged Infringement of the '723 Patent

ClearOne next argues that Shure's design patent infringement claim is implausible (and that dismissal is thus appropriate) because the BMA CT product and the '723 patent's design are plainly dissimilar.  (D.I. 76 at 11-15)  Shure, for its part, asserts that the SAC sufficiently pleads design patent infringement and that ClearOne's position requires a premature adjudication of factual issues.  (D.I. 80 at 3, 11-15)  The Court agrees with Shure.

Design patent infringement is a question of fact that must be proven by the patentee by a preponderance of the evidence.  *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 942 F.3d 1119, 1129 (Fed. Cir. 2019).  Determining whether a design patent has been infringed is a two-part test; first, the court construes the claim to determine its meaning and scope and second, the fact finder then compares the properly construed claim to the accused design.  *Lanard Toys Ltd. v. Dolgencorp LLC*, No. 2019-1781, 2020 WL 2478876, at *2 (Fed. Cir. May 14, 2020).  The "ordinary observer" test is the sole test for determining whether a design patent has been infringed.  *Id.* (citing *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008)).  Under that test, infringement is found "'[i]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the

same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other.'" *Id.* (quoting *Egyptian Goddess*, 543 F.3d at 670).[21]

The Federal Circuit has, in the past, identified five elements that must be pleaded with respect to design patent infringement; it has said the complaint must:  (1) allege ownership of the asserted patent; (2) name each defendant; (3) cite the patent that is allegedly infringed; (4) describe the means by which the defendant allegedly infringes; and (5) point to the specific sections of the patent law invoked.  *Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1362 (Fed. Cir. 2013); *see also, e.g.*, *Five Star Gourmet Foods, Inc. v. Fresh Express, Inc.*, No. 19-cv-05611-PJH, 2020 WL 513287, at *2 (N.D. Cal. Jan. 31, 2020); *Puma SE v. Forever 21, Inc.*, Case No. CV17-2523 PSG Ex, 2017 WL 4771004, at *2 (C.D. Cal. June 29, 2017).  And in general, the Court's inquiry here, as with any Rule 12(b)(6) inquiry, is whether Shure has simply made out a plausible claim of design patent infringement.  *simplehuman, LLC v. iTouchless Housewares & Prod., Inc.*, No. 19-cv-02701-HSG, 2019 WL 5963245, at *1 n.1 (N.D. Cal. Nov. 13, 2019).[22]

---

[21]    The Federal Circuit has explained that in some cases, "the claimed design and the accused design will be sufficiently distinct that it will be clear without more that the patentee has not met its burden of proving the two designs would appear 'substantially the same' to the ordinary observer[.]"  *Egyptian Goddess*, 543 F.3d at 678.  In other cases, "when the claimed and accused designs are not plainly dissimilar, resolution of the question whether the ordinary observer would consider the two designs to be substantially the same will benefit from a comparison of the claimed and accused designs with the prior art"; here, differences between the claimed and accused designs that might not be noticeable in the abstract can become significant when a hypothetical ordinary observer is conversant with the prior art.  *Id.*

[22]    The five elements set out for pleading design patent infringement claims in *Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357 (Fed. Cir. 2013) were articulated prior to the abrogation of Form 18 of the Federal Rules of Civil Procedure (which simplified the rules for pleading patent infringement claims).  And those five elements do read a lot like the bare-bones pleading requirements that were associated with Form 18.  The Court need not decide whether the Federal Circuit would today require more from a plaintiff at the pleading stage in a design patent case, because above, in addition to assessing whether these five elements have been pleaded, the Court will assess the Sixth Cause of Action pursuant to a *Twombly*/*Iqbal* plausibility analysis.

Shure's SAC pleads the above-referenced five required elements for design patent infringement.  (D.I. 64 at ¶¶ 5, 17, 71-81)  And beyond that, it reproduces six figures from the '723 patent depicting the claimed design, (*id.* at ¶ 73), and also provides six representative images of the BMA CT product from various perspectives, (*id.* at ¶ 74).  A comparison of the claimed design with the BMA CT product demonstrates sufficient visual similarity to render infringement plausible at this stage of the case.  Both the claimed design and the BMA CT product appear to have a thin-profile, flat-square shape with an even distribution of compact holes.[23]  *See, e.g.*, *simplehuman, LLC*, 2019 WL 5963245, at *3-5 (denying a motion to dismiss a design patent infringement claim, where the plaintiff's complaint included enough views to plausibly allege the overall similarity of the designs); *Puma SE*, 2017 WL 4771004, at *3 (concluding that the plaintiff sufficiently alleged that its Creeper Sneaker and defendant's Yoki Sneaker bear a substantial degree of similarity when considering the overall design "'such that an ordinary observer would be deceived by the resemblance[,]'" and that dismissal of plaintiff's design patent claim was thus not warranted) (internal citation omitted).

ClearOne's primary argument is that (1) much of the '723 patent's design is functional in nature, (2) such functional aspects must be ignored in the infringement analysis, and (3) what is left is "substantially different from the BMA CT."  (D.I. 76 at 11-12)  Specifically, ClearOne points to the grille and the flat face of the claimed design in the '723 patent as functional and not protectable.  (*Id.*)

---

[23]     The Court has recently investigated Shure's argument regarding infringement of the '723 patent in some depth, as part of the process of resolving Shure's motion for a temporary restraining order.  (D.I. 176)  Having done so, the Court can comfortably say that while the ultimate infringement question here will be a nuanced and challenging one, Shure has certainly made out at least a plausible case for infringement.  (*Id*. at 9-10 n.8)

A claimed design can contain both functional and ornamental elements, but the scope of a design patent "must be limited to the ornamental aspects of the design." *Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316, 1320 (Fed. Cir. 2016) (internal quotation marks and citation omitted).  The Federal Circuit has explained that at the claim construction stage, it can be helpful for district courts to "distinguish[ ] between those features of the claimed design that are ornamental and those that are purely functional."  *Lanard Toys Ltd.*, 2020 WL 2478876, at *2 (quoting *Egyptian Goddess*, 543 F.3d at 679-80); *see also Sport Dimension*, 820 F.3d at 1320 (explaining that "[w]here a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent").

As even ClearOne acknowledges, (D.I. 86 at 9), assessing its non-infringement argument would require claim construction.  We are not yet at the claim construction phase of this case, however, and it is at least plausible that the allegedly functional elements of the design-at-issue are instead ornamental.  Thus, ClearOne's argument is premature, (D.I. 80 at 13), and the Court recommends that ClearOne's Motion be denied with respect to its argument that Shure does not allege a plausible infringement claim of the '723 patent.  *Cf. Five Star Gourmet Foods, Inc.*, 2020 WL 513287, at *9 (declining to resolve the "inherently factual question" of whether an ordinary observer would find the designs to appear substantially the same on a motion to dismiss); *simplehuman, LLC*, 2019 WL 5963245, at *4-5 (denying a motion to dismiss a design patent infringement claim, where several of defendant's alleged differences between the design patent and accused product were disputed, as such questions "are properly considered at claim construction" which the Court declined to engage in "at this preliminary stage"); *Five Star Gourmet Foods, Inc. v. Ready Pac Foods, Inc.*, No. 5:18-cv-2436 DDP (KKx), 2019 WL

1260634, at *3 (C.D. Cal. Mar. 18, 2019) (denying defendant's motion to dismiss a design patent infringement claim, where the patent's design and the accused design were sufficiently similar to plausibly allege infringement, even to the extent that there were some notable dissimilarities between the claimed design and the accused design, as such differences do not amount to a finding of "plain dissimilarity" and "[u]ltimately, determining infringement, and an ordinary observer comparison, are matters for the trier of fact").[24]

## IV.    CONCLUSION

For the foregoing reasons, the Court recommends that ClearOne's Motions be DENIED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2).  The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court.  *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated:  June 1, 2020

*Christopher J. Burke*
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

---

[24]    ClearOne also comes to various conclusions as to what the ordinary observer would conclude about the similarity between the BMA CT product and certain prior art not referenced in the SAC.  (D.I. 76 at 14)  But as Shure notes, (D.I. 80 at 13), fact questions regarding (1) who is the ordinary observer here or (2) a comparison of prior art and the accused design, are not well suited for resolution on a motion to dismiss.

30