IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SHURE INCORPORATED and | ) | |
| SHURE ACQUISITION HOLDINGS, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-1343-RGA-CJB |
| | ) | |
| CLEARONE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

In this action filed by Plaintiffs Shure, Inc. and Shure Acquisition Holdings, Inc.
(collectively "Plaintiffs" or "Shure") against Defendant ClearOne, Inc. ("Defendant" or
"ClearOne"), presently before the Court is the matter of claim construction.  The Court
recommends that the District Court adopt the construction set forth below.

## I.      BACKGROUND

Shure and ClearOne are competitors in the installed audio-conferencing market.  (D.I. 64
at ¶¶ 14-15; *see also* D.I. 22 at 1; D.I. 40 at 1)  On July 18, 2019, Shure filed the instant action
against ClearOne in this Court.  (D.I. 1)[1]  On November 19, 2019, Shure filed the operative
Second Amended Complaint ("SAC"), in which it first asserted the patent at issue in this Report
and Recommendation, United States Design Patent No. D865,723 (the "'723 patent").  (D.I. 64)

The '723 patent is entitled "Array Microphone Assembly" and it issued on November 5,
2019.  (D.I. 239, ex. 1 (hereinafter, "'723 patent"))  It is a continuation of a parent application
filed on April 30, 2015, which matured into U.S. Patent No. 9,565,493 (the "'493 patent").  (*Id.*

---

[1]      The parties have also been involved in litigation against each other in the United
States District Court for the Northern District of Illinois since April 2017.  (*See* D.I. 155 at 2-3)

at 1-2; *id.*, ex. 4 at 1 (hereinafter, "'493 patent"))[2]  Further details concerning the '723 patent will be addressed below in Section III.

On June 24, 2020, the parties filed their joint claim construction brief for the '723 patent. (D.I. 238)[3]  The Court conducted a *Markman* hearing by video conference on July 28, 2020. (D.I. 327 (hereinafter, "Tr."))

## II.    STANDARD OF REVIEW

Generally, a "'utility patent' protects the way an article is used and works (35 U.S.C. [§] 101), while a 'design patent' protects the way an article looks (35 U.S.C. [§] 171)."  MPEP § 1502.01 (9th ed. Rev. Jan. 2018); *see also L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993).  A design patent may be obtained for "any new, original and ornamental design for an article of manufacture[.]"  35 U.S.C. § 171; *Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 103 (Fed. Cir. 1996).  Only the novel, ornamental features of the patented design are protected by a design patent.  *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997).  The scope of a design patent does not extend to any functional elements.  *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293-94 (Fed. Cir. 2010) ("[A] design patent, unlike a utility patent, limits protection to the ornamental design of the article.").  A design feature is functional, *inter alia*, "if it is essential to the use or purpose of the article[.]"

---

[2]    The '493 patent, a utility patent, is entitled "Array Microphone System and Method of Assembling the Same."  ('493 patent)  Shure asserts infringement of the '493 patent in this action.  (D.I. 64 at ¶¶ 26-41)  However, the case as to the '493 patent is currently stayed, pending completion of an *inter partes* review proceeding involving that patent.  (D.I. 53; D.I. 326)

[3]    The Court has been referred the instant case for all purposes, up through the case dispositive motions deadline, by United States District Judge Richard G. Andrews.  (D.I. 9)

*Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d 1365, 1371 (Fed. Cir. 2006); *see also L.A. Gear, Inc.*, 988 F.2d at 1123.

Just as with utility patents, determining whether a design patent claim has been infringed first requires that the claim be properly construed, in order to determine its meaning and scope. *Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1341 (Fed. Cir. 2020). Claim construction is a question of law. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995).

Because it is difficult to describe ornamental designs with words, a design patent's claim is typically better represented by illustrations instead of a written claim construction. *Sport Dimension, Inc. v. Coleman Co., Inc.*, 820 F.3d 1316, 1320 (Fed. Cir. 2016); *see also Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1302 (Fed. Cir. 2010) ("Depictions of the claimed design in words can easily distract from the proper infringement analysis of the ornamental patterns and drawings."). However, a district court may utilize claim construction to provide guidance to the finder of fact with respect to issues that bear on claim scope. *Sport Dimension, Inc.*, 820 F.3d at 1320; *see also Richardson*, 597 F.3d at 1293. For example, while design patents "'typically are claimed as shown in drawings'" the United States Court of Appeals for the Federal Circuit has instructed that "it can be helpful to 'distinguish[] between those features of the claimed design that are ornamental and those that are purely functional.'" *Lanard*, 958 F.3d at 1342 (quoting *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679-80 (Fed. Cir. 2008)). Indeed, if a design patent contains both functional and non-functional elements, the scope of the claim must be construed to identify the non-functional aspects of the design as shown in the patent. *Id.* The Federal Circuit has also explained that it can be helpful to point out "various features of the claimed design as they relate to the accused design and the prior art." *Id.* (internal quotation marks and citation omitted).

Additional principles of design patent claim construction will be addressed below in Section III, to the extent they are relevant to the Court's decision herein.

## III.     DISCUSSION

The parties' competing proposed claim constructions present three different disputes for the Court to resolve.  In addition to those claim construction-related disputes, ClearOne also argues that the '723 patent is indefinite and not enabled under 35 U.S.C. § 112.  The Court will first take up the claim construction-related disputes, and will then turn to definiteness- and enablement-related issues.

### A.     Claim Construction

The '723 patent recites one claim:  "[t]he ornamental design for an array microphone assembly, as shown and described" in six figures.  ('723 patent at 1, 9-13)  Figure 1 is a "front, top, right perspective view of an array microphone assembly, showing the new design;" Figure 2 is a "rear, bottom, left perspective thereof;" Figure 3 is a "top plan view thereof;" Figure 4 is a "bottom plan view thereof;" Figure 5 is a "front view thereof;" and Figure 6 is a "left side view thereof."  (*Id.* at 1)

While Shure wishes for a "relatively simple" claim construction that focuses on the patent's figures, (Tr. at 20-21), ClearOne requests that the Court provide a detailed verbal description delineating the scope of the '723 patent claim, (*id.* at 36).  The parties' respective proposed constructions for the sole claim of the '723 patent are set out in the chart below:

| Claim | Shure's Proposed Construction | ClearOne's Proposed Construction |
|---|---|---|
| "The ornamental design for an array microphone assembly, as shown and described" | "The ornamental design for an array microphone assembly, as shown in the solid lines and associated claimed surfaces of Figures 1-6 and described in the | "Indefinite. The scope of the claim is not clear with reasonable certainty because the ordinary observer would have no way of resolving the differences between Figure 2 |

| | | |
|---|---|---|
| | specification of the '723 patent.<br><br>The Claimed Design should be considered as a whole and the broken lines in Figures 1-6 of the '723 patent form no part of the Claimed Design. No features of the Claimed Design are purely functional and/or dictated solely by function, thus all features of the Claimed Design have ornamental design elements and should be included in the claim construction." | (showing and claiming a pattern of sixteen slots around the periphery of the back panel) and Figure 4 (showing and claiming a square shaped back panel with no slots around the periphery).<br><br>To the extent the claim can be construed, the Court should determine that the thin, square shape of the claimed array microphone assembly design is functional because, as the array microphone assembly is intended to replace a standard ceiling tile, the thin, square shape of the claimed array microphone assembly is dictated by the shape of a standard ceiling tile.<br><br>To the extent the claim can be construed, the Court should also determine that the extent to which the front face of Shure's design (as depicted in Figure 3) looks like prior art ceiling vents is functional, because that allowed the claimed device to blend invisibly into a drop ceiling by adopting an air-and-sound passing form with which people were already familiar.<br><br>To the extent the claim can be construed, the Court should also account in its claim construction for the fact that numerous pieces of prior art, including ceiling speaker prior art and HVAC prior art, feature the same thin, square shape as that shown in the |

5

|  |  | claimed design, as well as the same perforated metal grille, both with a white frame and without, as depicted in the tables on pages 34 and 40 of the Joint Claim Construction Brief.<br><br>To the extent the claim can be construed, Defendant agrees with Plaintiff that the broken lines in Figures 1-6 of the D'723 patent form no part of the claimed design." |
| --- | --- | --- |

(D.I. 280 at 1-2)

The Court will take up in turn the parties' three disputes regarding the scope of the design claimed in the '723 patent.

### 1. Is the thin, square shape of the claimed design dictated by function, and if so, how should the Court account for that in its claim construction?

ClearOne first argues that the claim of the '723 patent should be construed to exclude the "'thin, square shape'" of the claimed design because these "are purely functional aspects dictated by the goal of allowing an embodying device to be installed in a standard ceiling grid in place of a standard ceiling tile." (D.I. 238 at 70-72; *see also id.* at 31-39; Tr. at 77-90) Shure's primary arguments in response are that: (1) ClearOne's position is flawed because it presumes that "allowing an embodying device to be installed in a standard ceiling grid in place of a standard ceiling tile" is actually a function that the '723 patent aims to serve, when in fact, that is not correct; and (2) there is at least one other alternative design (the "Sennheiser TeamConnect" or the "Sennheiser TC2") that accomplishes the same underlying function but looks different than the claimed design, which shows that the thin, square shape of the claimed design is not purely functional. (D.I. 238 at 52-54; Tr. at 25-26, 34-35) Further, Shure asserts that even if the Court

6

concludes that the scope of the claimed design is limited due to the functional nature of its thin, square shape, the Court should not "eliminate[]" any such functional elements in the claim construction process; instead, Shure argues the Court should simply limit the scope of the claimed design "to the overall ornamental visual impression as shown and described in the '723 patent." (D.I. 238 at 11 (emphasis omitted), 51, 56; Tr. at 30-34)

The first step is for the Court to assess whether (as ClearOne claims) a function of the claimed design is to replace a standard ceiling tile in a standard ceiling grid. In disagreeing with this premise, Shure contends that the article of manufacture at issue is an array microphone assembly, and that its *sole* intended function is "receiving and transmitting sound." (D.I. 238 at 54 (emphasis omitted))

The Court agrees with ClearOne. Now, to be sure, the '723 patent does not state in writing that the function of the claimed design is to replace a standard ceiling tile, and the patent's figures do not depict the claimed design being mounted in a standard ceiling grid. (*See id.*; Tr. at 21, 39-45) That said, the '723 patent: (1) depicts the claimed design as a square; (2) illustrates a design that looks, facially, as if it could replace a standard ceiling tile; and (3) is replete with citations to relevant prior art that relate to ceiling tiles, ceiling microphones or flush-mounted ceiling microphones. ('723 patent) And the '493 patent, to which the '723 patent claims priority, describes and claims, *inter alia*, housing for an array microphone "sized and shaped to be mountable in a drop ceiling in place of at least one of a plurality of ceiling tiles included in the drop ceiling[.]" (D.I. 239, ex. 4 at col. 18:42-45; *id.* at Abstract; *id.*, col. 6:8-20)[4] In the Court's

---

[4]     Shure argues that, when determining what is a function of the claimed design, the court must "stick relatively close to the design patent"—i.e., that there is something wrong with the Court looking for guidance to a related utility patent (here, the '493 patent). (Tr. at 43) But the Court agrees with ClearOne that, pursuant to Federal Circuit guidance in cases such as *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396 (Fed. Cir. 1997), a court does not need to

view, this evidence helps to demonstrate that a function of the claimed design is to replace a standard ceiling tile.  (*See* D.I. 238 at 71-72; Tr. at 44-45); *see, e.g.*, *Dyson, Inc. v. Sharkninja Operating LLC*, Case No. 14-cv-779, 2016 WL 6037688, at *3 (N.D. Ill. Oct. 13, 2016) (finding that the grip element in certain asserted design patents relating to a vacuum cleaner was functional, in that it provided the user with a needed way to hold the vacuum, and citing in support to the fact that the orientation of the grip was mentioned as a benefit in a co-pending utility patent).

Now that we have established that a function of the claimed design is to replace a standard ceiling tile in a standard ceiling grid, the next question in dispute is:  Is either the "square shape" or the "relative thinness" of the design a design element that is dictated by this function (i.e., are either or both of these elements "purely functional")?[5]  *Sport Dimension, Inc.*,

_____

"limit [itself] to the face of the patent disclosure" to define the function(s) of a claimed design. (D.I. 238 at 71; *see also* Tr. at 87)  In *OddzOn Prods.*, the design patent claimed a tossing ball that was shaped like a football with a tail and fin structure attached to one end.  *OddzOn Prods.*, 122 F.3d at 1399; (D.I. 248, ex. 53).  Although the design patent did not mention that the design was intended to travel farther than a typical football, (D.I. 248, ex. 53), the Court found that:  (1) the ball was "specifically designed to be thrown like a football, yet travel farther than a traditional foam football" and (2) it was the tail and fins on the football's design that promoted these functional qualities.  *OddzOn Prods.*, 122 F.3d at 1406.  While these points were not disputed in *OddzOn Prods.*, *id.*, the case suggests that one can look to sources other than the text of the design patent itself in assessing this question of function.

[5]    The Court acknowledges that some district courts have noted uncertainty as to whether they may (or if they may, whether they should) make a determination at the claim construction stage as to whether a particular element of a design is purely functional.  *Vertical Tank, Inc. v. BakerCorp*, Case No. 1:18-CV-00145-LJO-JLT, 2019 WL 2207668, at *19 (E.D. Cal. May 22, 2019) (citing cases); *Focus Prods. Grp. Int'l, LLC v. Kartri Sales Co., Inc.*, 15 Civ. 10154 (PAE), 2018 WL 3773986, at *15 (S.D.N.Y. Aug. 9, 2018).  Many courts have taken this step during claim construction.  *See, e.g., Graphic Packaging Int'l, LLC v. Inline Packaging, LLC*, File No. 15-cv-03476 (ECT/LIB), 2019 WL 4786148, at *3 (D. Minn. Oct. 1, 2019) ("Whether a design is functional or ornamental (or both) is a fact question, but the Court may decide fact disputes pertaining to claim construction.").  Some courts, however, have concluded that it is the jury who should decide whether a certain feature of a design patent is functional or not.  *See Deckers Outdoor Corp. v. Rue Servs. Corp.*, Case No. CV 13-06303-JVS (VBKx),

820 F.3d at 1320; (D.I. 238 at 70).  At the claim construction stage, several factors (the "*Berry Sterling* factors") may serve as a useful guide for answering this question of "claim construction functionality[.]"  *Sport Dimension, Inc.*, 820 F.3d at 1322.[6]  These include "[1] whether the protected design represents the best design; [2] whether alternative designs would adversely affect the utility of the specified article; [3] whether there are any concomitant utility patents; [4] whether the advertising touts particular features of the design as having specific utility; and [5] whether there are any elements in the design or an overall appearance clearly not dictated by function."  *Id.* (quoting *Berry Sterling Corp. v. Pescor Plastics, Inc.*, 122 F.3d 1452, 1455 (Fed.

---

2014 WL 12588481, at *3 (C.D. Cal. Aug. 29, 2014); *Black & Decker (U.S.) Inc. v. Pro-Tech Power Inc.*, No. 97-1123-A, 1998 WL 633636, at *3-6 (E.D. Va. June 2, 1998).  In the Court's view, the Federal Circuit has clearly indicated that the Court may play this role at claim construction.  *See Sport Dimension, Inc.*, 820 F.3d at 1320 (noting that district court can use claim construction to guide fact finder through issues that bear on claim scope, such as by distinguishing between those features of claimed design that are ornamental and those that are purely functional); *see also Lanard*, 958 F.3d at 1342.  And because both sides here are asking the Court to determine whether the disputed claim elements at issue are purely functional or not, the Court will do so.

[6]      As Shure points out, function may be assessed in two contexts:  in construing a design patent claim (i.e., what the Court is doing here), and in assessing the validity of a design patent (i.e., what the Court is *not* doing here).  (Shure's *Markman* Presentation, Slide 21)  As to the latter analysis, if a claimed design's "overall appearance" is dictated by function, then the design patent is invalid.  *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1333 (Fed. Cir. 2015); *see also Richardson*, 597 F.3d at 1293-94.  The *Berry Sterling* factors are also utilized in this validity analysis in order to determine whether a claimed design as a whole is dictated by its function.  To determine whether a design as a whole is primarily functional or ornamental, the claimed design must be "viewed in its entirety[.]"  *L.A. Gear, Inc.*, 988 F.2d at 1123.

The law is clear, however, that certain design elements may serve a functional purpose and yet the overall design may still possess protectable ornamentation.  *Sport Dimension*, 820 F.3d at 1321-22.  If the "overall appearance" of a claimed design is not dictated by function, then the design claim is not invalid, even if certain elements of the design have purely functional purposes.  *Ethicon Endo-Surgery, Inc.*, 796 F.3d at 1333.  Courts apply "a stringent standard" for invalidating a design patent on grounds of functionality and clear and convincing evidence is required.  *Rosco, Inc. v. Mirror Lite Co.*, 304 F.3d 1373, 1378 (Fed. Cir. 2002).

Cir. 1997)).  The availability of alternative designs is an important, if not dispositive, factor.
*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1329-30 (Fed. Cir. 2015); *see also*
*Automotive Body Parts Assoc. v. Ford Global Techs., LLC*, 930 F.3d 1314, 1319 (Fed. Cir. 2019)
("We have often emphasized the presence or absence of alternative designs, noting that the
existence of 'several ways to achieve the function of an article of manufacture,' though not
dispositive, increases the likelihood that a design serves a primarily ornamental purpose.")
(citation omitted).  When a design has "many functional elements" and "minimal ornamentation,
the overall [] scope of the claim is accordingly narrow."  *Sport Dimension*, 820 F.3d at 1323.

        With regard to the square shape of the claimed design, application of the *Berry Sterling*
factors demonstrates that this particular element is dictated by the functional ability to fit into a
ceiling tile.  It certainly represents the best design for this function, because if the design were of
a different shape, the assembly at issue could not replace a standard ceiling tile.  (D.I. 238 at 32;
D.I. 239, ex. 10 at ¶ 81; D.I. 240, ex. 11 at ¶¶ 80-81); *see also, e.g.*, *Lifted Ltd., LLC v. Novelty*
*Inc.*, Civil Action No. 16-cv-03135-PAB-GPG, 2020 WL 2747814, at *4 (D. Colo. May 27,
2020) (finding that the size and shape of the oval central recess was functional because those
features were "necessarily dictated by the dimensions of a standard lighter" that the recess would
hold); *Furrion Prop. Holding Ltd. v. Way Interglobal Network, LLC*, Case No. 3:19-cv-566-PPS-
MGG, 2019 WL 5587147, at *6 (N.D. Ind. Oct. 30, 2019) (examining whether a design patent
contained functional elements, and finding that the bracket that held a glass cover of the oven in
place was functional, because "[i]ts size is invariably linked (and thus dictated) by the size and
shape of the glass cover of the oven, which is in turn dictated by the size of the oven").  With
regard to the "whether alternative designs would affect the utility of the specified article" factor,
here surely they would, as a product adopting a different shape could not be installed to replace a

standard ceiling tile.  (D.I. 238 at 37; D.I. 239, ex. 10 at ¶ 81; D.I. 240, ex. 11 at ¶ 80)[7]  As for

any concomitant utility patents, as discussed above, the '493 utility patent describes and claims

an embodiment in which the housing for the claimed array microphone is square-shaped, so that

it can replace a ceiling tile.  And with regard to "whether the advertising touts particular features

of the design as having specific utility," Shure's advertising materials do clearly tout the ability

of its embodying product to mount directly into a ceiling tile grid.  (D.I. 243, exs. 22-23)

However, when it comes to the "relative thinness" of the claimed design, the record is not

as strong for ClearOne.  The Sennheiser TC2 reference ("Sennheiser"), which is square-shaped

but is not nearly as thin as the claimed design, demonstrates that there are alternative, non-"thin"

designs that would serve the same function as the claimed design.  (D.I. 238 at 52-53; Tr. at 18,

27-28; *id.* at 79-80 (ClearOne's counsel acknowledging that, in view of Sennheiser, "the thinness

[aspect] of our claim construction is slightly less definite than the square shape"))  Additionally,

ClearOne's argument here is compromised by the fact that it points to no record guidance

regarding how "thin" of a design would qualify as "relatively thin" for purposes of this

functionality analysis.  *See, e.g.*, *Vertical Tank, Inc. v. BakerCorp*, Case No. 1:18-CV-00145-

LJO-JLT, 2019 WL 2207668, at *18 (E.D. Cal. May 22, 2019) (rejecting defendant's argument

that the Court should "'factor out'" lengths of the various components depicted in the design

patents because they were functional, where "[n]othing in the design or any other evidence of

which the Court is aware provides absolute lengths. . . .  It is therefore entirely unclear how, if at

---

[7]    While Shure asserts that the Sennheiser TC2 represents a workable, alternative design, (D.I. 238 at 18, 35), that product undisputedly has a square shape, (D.I. 239, ex. 7; Tr. at 45-47).  And although Shure also pointed to a prior art *rectangular* speaker as an alternative design that would purportedly serve this function, (D.I. 238 at 53), the Court agrees with Clear One that this art is not helpful to Shure.  As ClearOne notes, such a rectangular speaker appears to serve a different function, as it only replaces half of a standard ceiling tile, instead of replacing a whole tile (and thus its use requires additional ceiling tile installation efforts).  (*Id.* at 71 n.17)

all, the Court should or could 'factor out' lengths from a design patent that does not obviously claim specific lengths").  In the end, as one of Shure's experts noted, it does not appear that a ceiling-mounted device's "ability to [replace a ceiling tile requires] the device to be *thin*, especially where much of the device can be mounted above the level of the ceiling tile where there is adequate room for comparatively tall devices."  (D.I. 247, ex. 46 at ¶ 30 (certain emphasis in original))  Therefore, the Court cannot conclude that this element of the design is dictated by function.

So now that the Court has concluded that the square shape of the claimed design is dictated by the function of replacing a standard ceiling tile, the last issue in dispute is about how that conclusion should affect the Court's claim construction.  ClearOne wants this "square-shaped" element to be "excluded" from the scope of the claim; Shure contends that to do this would be improper.

In support of its view, ClearOne relies on the Federal Circuit's decision in *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288 (Fed. Cir. 2010).  (D.I. 238 at 31; Tr. at 73)  In that case, the district court construed the claim after a trial (in the same opinion in which it assessed infringement).  *Richardson v. Stanley Works, Inc.*, 610 F. Supp. 2d 1046 (D. Ariz. 2009).  In doing so, the district court noted that the design patent at issue did not "protect the configuration of the handle, hammer-head, jaw and crow-bar utilized" in the claimed design because such a configuration was functional; however, it explained that the patent did protect the "ornamental aspects" of the design, including the "standard shape of the hammer-head, the diamond-shaped flare of the crow-bar and the top of the jaw, the rounded neck, the orientation of the crowbar relative to the head of the tool, and the plain, undecorated handle."  *Id.* at 1050.  The Federal Circuit affirmed the construction, holding that the district court had "properly *factored out* the

functional aspects of Richardson's design as part of its claim construction." *Richardson*, 597 F.3d at 1293 (emphasis added).

Yet despite what is said in *Richardson*, the Court agrees with Shure that, in the main, the caselaw counsels against *eliminating* whole aspects of the claimed design at the claim construction stage.  (D.I. 238 at 11, 51, 56; Tr. at 30-34)  Instead, the Federal Circuit has suggested that in this situation, the Court's claim construction should "identify" that it found a particular element to be dictated by function.  (Tr. at 34)[8]  On this score, the Federal Circuit has explained that while certain design patent claims may require a construction that "assist[s] a finder of fact in distinguishing between functional and ornamental features . . . in no case did [the Federal Circuit] entirely *eliminate* a structural element from the claimed ornamental design, even though that element also served a functional purpose."  *Sport Dimension, Inc.*, 820 F.3d at 1321 (finding that the district court erred in "eliminat[ing] whole aspects of the claimed design" that it found to serve functional purposes, in construing a design patent claim) (emphasis added).  Instead, if an element of the design serves a functional purpose, the Federal Circuit counsels that this element may still be considered as part of the design "to the extent that [it] contribute[s] to the overall ornamentation of the design"; in determining infringement, however, the fact finder should "not focus on [such] elements . . . but rather focus on what these elements contribute to the design's overall ornamentation."  *Id*. at 1323.  Various district courts have attempted to implement this guidance in subsequent cases.[9]  Thus, here the Court's claim construction will simply note that the square shape of the claimed design is dictated by function, nothing more.

---

[8]      Indeed, that is essentially what ClearOne's proposed construction accomplishes. (D.I. 280 at 1)

[9]      *See also, e.g.*, *Lifted Ltd., LLC*, 2020 WL 2747814, *6 (explaining that excluding elements in their entirety is inconsistent with the Federal Circuit's most recent guidance on claim

### 2.    Is the perforated metal front face of the claimed design dictated by function?

Second, ClearOne argues that "the extent to which the front face of Shure's design (as depicted in Figure 3) looks like prior art ceiling vents should be excluded from claim scope" because Shure's decision to model its claimed design after prior art ceiling air vents served two purely functional purposes:  (1) it allowed the claimed device to blend invisibly into a ceiling by adopting a form with which people were already familiar; and (2) it allowed sound to pass to the microphones inside the device.  (D.I. 238 at 2; *see also id.* at 39-42, 75-76; Tr. at 90-108)  The Court is not persuaded by ClearOne's position here.

The first "functional" purpose highlighted by ClearOne—that the design of the front face enables the claimed device to blend into the ceiling—seems to be an example of a type of functionality recognized in trademark law as "aesthetic functionality."  (D.I. 238 at 57 n.9; Tr. at 49-51)  Aesthetic functionality is based on how good the product looks, *Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 963 F.3d 859, 865 (9th Cir. 2020), and in the trademark law context, "a party cannot use trademark protection to prevent its competitors from . . . making their products as visually entrancing as its own[,]" *Automotive Body Parts Ass'n*, 930 F.3d at 1319-20 (internal quotation marks, brackets and citation omitted).  However, in *Automotive Body Parts Ass'n v. Ford Global Techs., LLC*, 930 F.3d 1314 (Fed. Cir. 2019), the Federal Circuit recently held that "[t]he considerations that drive the aesthetic functionality doctrine of trademark law simply do

---

construction in the design patent context); *Graphic Packaging Int'l, LLC*, 2019 WL 4786148, at *4 ("[C]ourts recognize that it makes little sense to extract *aspects* of a design at claim construction when the ultimate inquiry is supposed to be about the *overall* design.") (emphasis in original); *HFA, Inc. v. Trinidad/Benham Corp.*, CIVIL ACTION NO. 6:17-CV-00343-RWS, 2018 WL 1210880, at *4 (E.D. Tex. Mar. 7, 2018) ("While the nested pans serve a functional purpose, that does not deem them excluded from the claim" because such exclusion would "go against the principles set forth in case law regarding the scope of design patents.").

not apply to design patents." 930 F.3d at 1320. In that case, which involved a design patent, the accused infringer had argued that the patentee's hood and headlamp designs were functional because they aesthetically matched the patentee's F-150 truck. *Id*. at 1319. The Federal Circuit, however, concluded that "the aesthetic appeal of a design to consumers is inadequate to render that design functional." *Id*.

ClearOne argues that Shure did not create its design to make its product *aesthetically* appealing—but instead that it did so to achieve the functional purpose of making its product "unobtrusive." (D.I. 238 at 73) Yet that purpose (being "unobtrusive") is all about how the product *looks*. Indeed, at one point during the *Markman* hearing, ClearOne's counsel seemed to acknowledge that utilizing a front face with a perforated metal grille "is useful to aesthetically match standard ceilings by looking like a standard HVAC ceiling diffuser." (Tr. at 96) So in line with Federal Circuit precedent, the Court declines to apply the aesthetic functionality doctrine in construing the claim of the '723 patent. It thus concludes that allowing the "claimed device to blend invisibly into a ceiling" is not a functional purpose at all.

ClearOne's other "functional purpose" argument—that the appearance of the front face of the claimed design is purely functional because it ensures that sound will pass to the microphones inside the device—is also not persuasive. Of course, it is not disputed that allowing sound to pass is one function served by the claimed design. (Tr. at 53-54) And it is also not disputed that some acoustic considerations were involved in Shure's conception of the perforation pattern on the front face of the design (i.e., that Shure was cognizant of the fact that the perforations on the front face needed to be of a type that would allow sound to reach the microphones in the array). (D.I. 238 at 58; Tr. at 53; *see also* D.I. 247, ex. 49 at 14) However, the record evidence shows that "the actual design of the perforations was mainly aesthetic [not

functional] in nature[.]"  (D.I. 247, ex. 49 at 14)  This is underscored by the design choice to include "substantially more perforations than what was needed acoustically[,]" such as at the four corners of the front face—areas that have perforations but that do not have microphones located directly behind those perforations.  (D.I. 238 at 58; *see also* D.I. 247, ex. 49 at 14; Tr. at 13, 53-56)  The evidence also demonstrates that there are alternative designs with respect to the perforations on the front face that also allow sound to pass through, such as the elongated perforations on the Sennheiser microphone array.  (D.I. 154, ex. F at ¶ 40 & ex. 6; *see also* D.I. 247, ex. 46 at ¶ 35; Tr. at 53-54, 56)[10]  The Court therefore declines to find that the front face of Shure's design is dictated by function.  *See, e.g.*, *Furrion Prop. Holding Ltd.*, 2019 WL 5587147, at *6 (explaining that the design of the grate over the burners of an oven involves both functional and non-functional elements, in that "[t]he grate clearly serves a function of holding a pot or pan in place over a gas burner, but the pattern of that grate is only partially dictated by its function and one can imagine a multitude of different patterns that could be employed"); *Calphalon Corp. v. Meyer Corp.*, No. CIV. S-05-971 WBS DAD, 2006 WL 2474286, at *2 n.3 (E.D. Cal. Aug. 25, 2006) ("The holes are functional in that they serve the purpose of dissipating heat, but the position and shape of the holes is not 'dictated by' this function.").[11]

### 3.    Should the Court consider prior art in defining claim scope?

---

[10]    Indeed, this point is undisputed by ClearOne.  (Tr. at 108)

[11]    In ClearOne's proposed claim construction, it states with respect to this disputed issue that "the Court should also determine that the extent to which the front face of Shure's design (as depicted in Figure 3) *looks like prior art ceiling vents* is functional" because this element serves the two assertedly functional purposes described above.  (D.I. 280 at 1 (emphasis added))  The question of what "prior art ceiling vents" depict, and how that relates to claim construction, is relevant to ClearOne's next argument about the prior art.  (*See, e.g.*, Tr. at 108-09)  Below, the Court will explain why it will not be comparing the front face of the claimed design to the front face of prior art at this stage of the case.

Third, ClearOne asserts that the Court's claim construction should "point out . . . the fact that numerous pieces of prior art feature the same thin, square shape as that shown in the claimed design, as well as the same perforated metal grille, both bounded by a white frame and not." (D.I. 238 at 2; *see also id.* at 43-44, 75-76; Tr. at 109-12)  ClearOne argues that such an analysis is appropriate at this stage, where "there is a large body of prior art directed to the shape and design of mechanical or electrical elements . . . that are designed to replace a ceiling tile in a standard ceiling tile grid."  (D.I. 238 at 43)  The impetus behind ClearOne's position here is the principle that a design patent "cannot be granted for one device made to look like another."  (*Id.*; *see also* Tr. at 111 ("[A] party should not be able to capture within the claim scope an old design transferred to a new use."))

In *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008), the Federal Circuit stated that in the claim construction process, "[w]hile it may be unwise to attempt a full description of the claimed design, a court may find it helpful to point out, either for a jury or in the case of a bench trial by way of describing the court's own analysis, various features of the claimed design as they relate to the accused design and the prior art."  543 F.3d at 680.  The *Egyptian Goddess* Court went on to note that in the case before it, "for example, there would be nothing wrong with the court pointing out to a jury that in the patented design only three sides have buffers attached, while in the accused product (and in the three-sided Nailco patent), all of the sides have buffers attached.  It would similarly be permissible for the court to point out that, for example, although the Falley Buffer Block has four sides, it is not hollow, unlike the design of the ′389 patent, the Nailco patent, and the accused Swisa product."  *Id.*

The Court is not convinced that it need make reference to the prior art in its proposed claim construction for the '723 patent.  This is so for a few reasons.

17

For one thing, as Shure points out, ClearOne's request is focused only on the front side of the prior art devices.  (*See* Tr. at 62)  Yet all sides of a design claimed in a design patent are relevant (and therefore, so too would be all sides of the prior art).  (Tr. at 119); *cf. Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1326 (Fed. Cir. 2012) (concluding that the district court misconstrued the full scope of the design patent in finding that the patent was likely anticipated by a piece of prior art, where the district court had based its finding on comparison of the front views of the patent and the prior art, and had refused to consider any other views of the patent/prior art).  Indeed, in the *Egyptian Goddess* Court's description of how prior art might be utilized in the claim construction process (set out above), the Court appeared to be focused on all sides of the claimed design, the accused device and the prior art.

Additionally, as other courts have noted, "[t]he limitation in scope of a design patent in light of prior art is necessarily folded into the infringement analysis[.]"  *See, e.g.*, *Jenny Yoo Collection, Inc. v. Essense of Austl., Inc.*, Case No. 17-2666-JAR-GEB, 2020 WL 263583, at *13 (D. Kan. Jan. 17, 2020).  To determine whether a design patent has been infringed, where the claimed and accused designs "are not plainly dissimilar, resolution of the question whether the ordinary observer would consider the two designs to be substantially the same will benefit from a comparison of the claimed and accused designs with the prior art[.]"  *Egyptian Goddess*, 543 F.3d at 678.  Having not been presented with any compelling reason why the Court must account for prior art in construing the scope of the claimed design, the Court believes that it will make more sense to assess prior art in the later stages of the case.  *See, e.g.*, *Jenny Yoo Collection*, 2020 WL 263583, at *13 (concluding that defendant's position that the scope of the design patents should be construed to be circumscribed by prior art was inappropriate during claim construction, as doing so would "invade the province of the jury to determine infringement under

18

the 'ordinary observer' test"); *Reddy v. Lowe's Cos., Inc.*, 60 F. Supp. 3d 249, 254, 258-59 (D. Mass. 2014) (rejecting defendant's request that the Court consider prior art when construing the design patent claim, finding that such considerations would best be considered as part of the infringement analysis) (citing cases).

Lastly, ClearOne desires the Court to address and account for certain prior art "because a design patent cannot be granted for one device made to look like another[.]" (D.I. 238 at 43; Tr. at 111-12) But this seems to be more of an invalidity argument than an issue for claim construction. *See, e.g., Phoenix Knitting Works v. Rich*, 194 F. 708, 713 (N.D. Ohio 1911) ("In patentable designs a person cannot be permitted to select an existing form, and simply put it to a new use[.]"); (Tr. at 118).[12]

For all of these reasons, the Court declines to recommend that the portion of ClearOne's proposed claim construction referencing prior art be adopted.

### 4. Conclusion

_____

[12]       Beyond *Egyptian Goddess*, ClearOne cites only to one other case in which a Court considered prior art in connection with construing a design patent: *Lanard Toys Ltd. v. Toys "R" Us-Del., Inc.*, Case No. 3:15-cv-849-J-34PDB, 2019 WL 1304290, (M.D. Fla. Mar. 21, 2019), *aff'd, Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337 (Fed. Cir. 2020), in which the patent related to a chalk holder in the shape of an oversized no. 2 pencil. (D.I. 238 at 9-10, 43; *see also* Shure's *Markman* Presentation, Slide 39) But the Court is not convinced that it should follow the same path as the *Lanard* Court did. For one thing, in *Lanard*, the district court was not only determining the proper claim construction for the claimed design, but it was also then considering motions for summary judgment relating to invalidity and infringement. *Lanard*, 2019 WL 1304290, at *15-18 ("Indeed, in their briefs, when analyzing the prior art, Defendants often argued that to the extent the patented design is distinguishable from the prior art, and thus not anticipated, it is likewise distinguishable from the accused design, and thus not infringed."). Here, in contrast, the summary judgment stage is far off. Further, the *Lanard* Court considered all sides of the relevant prior art pencil designs, not just one view of the pencil, in describing the design features that the prior art and claim design shared. *Id.* at *12; *see also* (Tr. at 62-63) Yet here, as noted above, ClearOne has pointed the Court only to the front side of the prior art devices—not to a holistic view of those devices.

In light of the Court's conclusions above, it recommends that the District Court construe the claim as follows:  "The ornamental design for an array microphone assembly, as shown in the solid lines and associated claimed surfaces of Figures 1-6 and described in the specification of the '723 patent.  The broken lines in Figures 1-6 of the '723 patent form no part of the claimed design.  The square shape of the claimed design is functional."

### B.    Definiteness and Enablement

The definiteness and enablement requirements of 35 U.S.C. § 112 apply to design patents.  *In re Maatita*, 900 F.3d 1369, 1375 (Fed. Cir. 2018).

The purpose of the definiteness requirement is to "ensure that the disclosure is clear enough to give potential competitors (who are skilled in the art) notice of what design is claimed—and therefore what would infringe."  *Id.* at 1376.  A visual disclosure may be inadequate—and its associated claim indefinite—if it includes multiple, internally inconsistent drawings.  *Id.* at 1375.  Such inconsistencies will not render a patent indefinite, however, if they "do not preclude the overall understanding of the drawing as a whole."  *Id.* at 1375-76 (internal quotation marks and citations omitted).  "Given that the purpose of indefiniteness is to give notice of what would infringe . . . one skilled in the art would assess indefiniteness [of a design patent] from the perspective of an ordinary observer."  *Id.* at 1377.  A patent is indefinite under Section 112 "if one skilled in the art, viewing the design as would an ordinary observer, would not understand the scope of the design with reasonable certainty based on the claim and visual disclosure."  *Id.*  And "[b]ecause design patent claims are limited to what is shown in the application drawings . . . there is often little difference in the design patent context between the concepts of definiteness (whether the scope of the claim is clear with reasonable certainty) and

enablement (whether the specification sufficiently describes the design to enable an average designer to make the design)[.]"  *Id*. at 1375.

Like claim construction, definiteness and enablement are questions of law for the court. *H-W Tech., L.C. v. Overstock.com, Inc.*, 758 F.3d 1329, 1332 (Fed. Cir. 2014); *Moba, B.V. v. Diamond Automation, Inc*., 325 F.3d 1306, 1321 (Fed. Cir. 2003).  The Federal Circuit has stated that "[a]ny fact critical to a holding on indefiniteness . . . must be proven by the challenger by clear and convincing evidence."  *Intel Corp. v. VIA Techs., Inc.*, 319 F.3d 1357, 1366 (Fed. Cir. 2003); *see also Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1338 (Fed. Cir. 2008).[13] Clear and convincing evidence is also required to show that a patent is invalid for lack of enablement.  *Cephalon, Inc. v. Watson Pharms., Inc*., 707 F.3d 1330, 1336 (Fed. Cir. 2013).

ClearOne argues that the '723 patent is invalid for indefiniteness and that it is not enabled pursuant to Section 112.  (D.I. 238 at 25-31, 76-78)  As was noted above, the '723 patent contains six figures, two of which (Figures 2 and 4) depict the back view of the claimed array microphone assembly design.  ('723 patent)[14]  It is undisputed that Figure 2 and Figure 4 are internally inconsistent, because Figure 2 claims 16 slots in a pattern around the back panel of the design (with the slots depicted in solid, not broken, lines), while Figure 4 depicts the same panel with a smooth edge with no slots.  ('723 patent, FIGS. 2, 4; *see also* D.I. 238 at 62; D.I. 247, ex.

---

[13]    In *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898 (2014), the Supreme Court of the United States left open the question of whether factual findings subsidiary to the ultimate issue of definiteness should, in fact, trigger the application of a "clear-and-convincing-evidence standard[,]" noting that it would "leave th[is] question[] for another day."  572 U.S. at 912 n.10.  In the absence of Supreme Court precedent to the contrary, the Federal Circuit's case law (utilizing the clear-and-convincing-evidence standard) controls.  *See Cal. Inst. of Tech. v. Hughes Commc'ns Inc*., 35 F. Supp. 3d 1176, 1182 n.4 (C.D. Cal. 2014).

[14]    The other four figures depict front and side views of the claimed design.  ('723 patent)

46 at ¶ 10)  ClearOne contends that this inconsistency renders it impossible for the ordinary observer to understand the scope of the claimed design or to know how to make that design. (D.I. 238 at 27; Tr. at 125); *Gorham Mfg. Co. v. White*, 81 U.S. 511, 528 (1871) (noting that in the design patent context, the "ordinary observer" is typically the "the principal purchaser[] of the articles").

The Court continues to view ClearOne's position as a strong one.  (*See* D.I. 176 at 9 n.8) It feels this way for a number of reasons.

For one thing, ClearOne has made a good record in support of its claim that the 16 slots are material to the claimed design, and that the differences between Figure 2 and Figure 4 would matter to the ordinary observer.  It is undisputed that all sides of the claimed design (including the back) are important features from both an infringement and a validity perspective.  (D.I. 238 at 77 n.22; Tr. at 119, 138)  It is also undisputed that the back panel of the claimed design contains "few claimed visual features."  (D.I. 154, ex. F at 26; *see also* D.I. 238 at 76, 78; D.I. 248, ex. 57 at 241; Tr. at 134, 137, 148)  And ClearOne's expert, Joel Delman, relatedly opines that the 16 slots are "significant features, symmetrical in their orientation, identical in size and appearance, and carefully placed for maximum aesthetic impact along the perimeter of a highly prominent feature of the claimed design" such that they would be "highly noticeable" to an ordinary observer.  (D.I. 239, ex. 10 at ¶¶ 73-76 (emphasis omitted))  Thus, according to Mr. Delman, the inconsistency between Figure 2 and Figure 4 "prevents the ordinary observer from understanding the overall appearance of what is claimed by the '723 [p]atent" and would prevent that observer from knowing how to create the design.  (*Id.* at ¶ 76)[15]

---

[15]      As ClearOne notes, this does not seem to be a case where "a close review of the figures would reveal to . . . an ordinary observer[] which figure depicts the claimed design, and which contains an error."  (D.I. 238 at 26-27)  This is because there are only two figures that

Moreover, Shure's position on these slots—and whether they are or are not part of the claimed design—has been confused.  (Tr. at 135, 150-51)  Shure first asserted that the 16 slots were "unclaimed subject matter[.]"  (D.I. 238 at 20)  Then, during oral argument on its motion for a temporary restraining order, Shure conceded that the slots *were* claimed subject matter. (D.I. 178 at 30)  And yet as late as in a June 2020 deposition, Shure's expert, Paul Hatch, could not take a position on whether or not the slots are claimed in the '723 patent.  (D.I. 248, ex. 57 at 239)  Shure's back-and-forth only further highlights that there is an inconsistency in the patent that could well render the patent indefinite and not enabled.

Shure's current position to the contrary is that, when viewed in context, the discrepancy regarding the 16 slots does not render the patent invalid because it does not impact an *overall understanding* of the design.  Instead, Shure argues that the slots affect only a portion of the design (a small part of the back side of the array), such that the overall understanding of the design remains clear.  (D.I. 238 at 59-68; Tr. at 156-57)

In the end, the Court concludes that Shure has done just enough to demonstrate why the claim should not now be found indefinite.  To a great degree, the Court's conclusion here is driven by the fact that Shure has put forward the declaration of its own expert, Mr. Hatch.  In contrast to the conclusions of ClearOne's expert, Mr. Hatch opines that the 16 slots "have an insignificant effect on the overall visual impression" of the design claimed in the '723 patent.

---

show the back view; one depicts the slots at issue as part of the claimed design, one does not.  *Cf. Times Three Clothier, LLC v. Spanx, Inc*., Nos. 13 Civ. 2157(DLC), 13 Civ. 7260(DLC), 2014 WL 1688130, at *7 (S.D.N.Y. Apr. 29, 2014) ("Times Three cites several cases in which inconsistencies have not been fatal to the validity of the patent, but these cases are inapposite. Here, half of the figures depict the ornamental line with one shape and position, half depict it another way, and neither half can be disregarded as unclear due to the use of an unusual perspective.").

(D.I. 247, ex. 46 at ¶ 11)  This is because the slots are "but one of many features" embodied by the claimed design as a whole.  (*Id.*)  Mr. Hatch also opines that the slots are not located at the outer perimeter of the claimed design, but instead are located on the recessed back plate, behind the inner edge of the outer frame.  (*Id.* at ¶¶ 13-14)  For these reasons, Mr. Hatch asserts that the slots are "not immediately prioritized in the eyes of the ordinary observer."  (*Id.* at ¶ 14)[16]  Mr. Hatch concludes that the inconsistency between Figure 2 and Figure 4 amounts to "a detail so small it went unnoticed by both the draftsman and the Examiner at the United States Patent Office."  (*Id.* at ¶ 16)  Therefore, according to Mr. Hatch, a person of ordinary skill would be on notice as to what design would infringe the design claimed in the '723 patent, because the disclosure therein "sufficiently conveys the overall impression of the Claimed Design."  (*Id.* at ¶ 15)  To further underscore Mr. Hatch's position in this regard, Shure also points to:  (1) testimony from a ClearOne manufacturer representative, who indicates that no one in the industry has ever commented to him about the slots on the back of Shure's MXA910 product or ClearOne's BMA CT product; and (2) testimony of its industry expert, who similarly stated that

---

[16]      That said, Mr. Hatch's statements to this effect (i.e., that the slots are but one of many features in the design, and are less noticeable or significant because they are found on the design's back panel) seem to conflict with certain statements he made in support of Shure's motion for a preliminary injunction.  There, in discussing a different feature of the design that is found on the back panel, Mr. Hatch stated that "[t]he Accused Products, like the Claimed Design, also feature a 'mitered' corner where the sidewalls meet.  Given there are few claimed visual features on the rear of the Claimed Design, this detail would be relatively noticeable to the Ordinary Observer."  (D.I. 154, ex. F at 26; *see also* Tr. at 145, 147-48)  This apparent discrepancy is troubling, and is another reason why the Court finds ClearOne's position overall to be a strong one.  But for the reasons set out below, the Court nevertheless concludes that there is a sufficient credibility dispute here as to key factual issues, such that definiteness and enablement should go to a jury.

end-user purchasers would not be concerned with the look of "the minor details of the back face" such as slots.  (D.I. 238 at 61 (citing D.I. 247, ex. 50 at ¶ 38; *id.*, ex. 51 at 23))[17]

In the end, the parties have presented competing expert evidence with respect to these important, validity-related issues.  (*See* Tr. at 145 (ClearOne's counsel acknowledging the dueling expert opinions on this issue))  While definiteness and enablement are ultimately questions of law, addressing relevant disputes of fact would require assessing the credibility and the weight to be afforded these differing expert opinions.  This task is within the province of the jury, not the Court.  *See Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, CASE NO. 14-CV-2061-H (BGS), 2016 WL 7326609, at *5-6 (S.D. Cal. Jan. 12, 2016); *Weber-Stephen Prods. LLC v. Sears Holding Corp.*, No. 13 C 01686, 2015 WL 9304343, at *19 (N.D. Ill. Dec. 22, 2015); *see also, e.g.*, *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 809 F. App'x 965, 974–75 (Fed. Cir. 2020); *Bombardier Recreational Prods. Inc. v. Arctic Cat Inc.*, 785 F. App'x 858, 867 (Fed. Cir. 2019); *Pac. Biosciences of Cal., Inc. v. Oxford Nanopore Techs., Inc.*, C.A. No. 17-275-LPS-CJB, C.A. No. 17-1353-LPS-CJB, 2020 WL 4699049, at *1, *10-11 (D. Del. Aug. 13, 2020).

At this time, then, the Court cannot conclude that ClearOne has satisfied its burden of proving indefiniteness and non-enablement of the '723 patent by clear and convincing evidence.

## IV.    CONCLUSION

For the foregoing reasons, the Court recommends that the District Court adopt the following construction:  "The ornamental design for an array microphone assembly, as shown in the solid lines and associated claimed surfaces of Figures 1-6 and described in the specification

---

[17]    This other testimony seems like it could be relevant to the definiteness/enablement of the patent claim, in that the MXA910 product is said to embody that claim and the BMA CT product is said to infringe that claim.

of the '723 patent.  The broken lines in Figures 1-6 of the '723 patent form no part of the claimed design.  The square shape of the claimed design is functional."

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2).  The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court.  *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated:  October 15, 2020

*Christopher J. Burke*
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

26