## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SHURE INCORPORATED and SHURE ACQUISITION HOLDINGS, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 19-1343-RGA-CJB |
| CLEARONE, INC., | ) ) | |
| Defendant. | ) ) | |

## REPORT AND RECOMMENDATION

Presently pending in this action filed by Plaintiffs Shure Incorporated and Shure

Acquisition Holdings, Inc. ("Plaintiffs" or "Shure") is Defendant ClearOne, Inc.'s ("Defendant"

or "ClearOne") "Motion for Summary Judgment of Invalidity[,]" filed pursuant to Federal Rule

of Civil Procedure 56 ("the Motion"). (D.I. 441)  For the reasons that follow, the Court

recommends that ClearOne's Motion be DENIED.

## I.      BACKGROUND

Shure and ClearOne are competitors in the installed audio-conferencing market. (D.I. 64

at ¶¶ 14-15; D.I. 232 at 3 at ¶ 15)  On July 18, 2019, Shure filed the instant action against

ClearOne in this Court. (D.I. 1)[1]  On November 19, 2019, Shure filed the operative Second

Amended Complaint ("SAC"), in which it first asserted the patent implicated by the Motion,

---

[1]      The Court has been referred the instant case for all purposes, up through the case dispositive motions deadline, by United States District Judge Richard G. Andrews. (D.I. 9)

United States Design Patent No. D865,723 (the "'723 patent").  (D.I. 64)  The '723 patent issued on November 5, 2019.  (*Id.* at ¶ 16)

The '723 patent is entitled "Array Microphone Assembly[.]"  (D.I. 239, ex. 1 (hereinafter, "'723 patent"))  It is a continuation of a parent application filed on April 30, 2015, which matured into a utility patent, United States Patent No. 9,565,493 (the "'493 patent").  (*Id.* at 1-2; *id.*, ex. 4 at 1 (hereinafter, "'493 patent"))[2]

Earlier in the litigation, Shure moved for a temporary restraining order ("TRO Motion") and preliminary injunction ("PI Motion") based on its claim of patent infringement as to the '723 patent.  (D.I. 153)  The Court recommended denial of the TRO Motion on May 1, 2020 (the "TRO R&R"), (D.I. 176), and recommended denial of the PI Motion on January 20, 2021 (the "PI R&R"), (D.I. 400).  The District Court found that Plaintiffs' objections to the TRO R&R should be dismissed as moot and it adopted the Court's recommendation as to the PI R&R.  (D.I. 410; D.I. 414)  And on October 15, 2020, the Court issued a Report and Recommendation regarding claim construction (the "claim construction R&R"), (D.I. 359), which the District Court subsequently adopted, (D.I. 375).

Briefing on the instant Motion was completed on June 2, 2021, (D.I. 503), and the Court held oral argument on the Motion (as well as other summary judgment and *Daubert* motions) on

---

[2]     Shure also asserts infringement of the '493 patent.  (D.I. 64 at ¶¶ 26-41)  The '493 patent is entitled "Array Microphone System and Method of Assembling the Same[.]"  ('493 patent)  However, the case as to the '493 patent is currently stayed, pending completion of an *inter partes* review proceeding involving that patent.  (D.I. 53; D.I. 326; D.I. 391)  In addition to its infringement claims against ClearOne, Shure also asserts claims of false advertising under the Lanham Act, violation of the Delaware Deceptive Trade Practices Act, tortious interference with business relations and unfair competition under Delaware common law.  (D.I. 64)

June 9, 2021, (D.I. 527 ("Tr.")).  A 5-day trial is set to begin on November 1, 2021.  (D.I. 62 at

12)

## II.     STANDARD OF REVIEW

### A.     Summary Judgment

A grant of summary judgment is appropriate where "the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating the absence of

a genuine issue of material fact.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475

U.S. 574, 585 n.10 (1986).  If the moving party meets this burden, the nonmovant must then

"come forward with specific facts showing that there is a *genuine issue for trial*." *Id.* at 587

(emphasis in original) (internal quotation marks and citation omitted).  If the nonmoving party

fails to make a sufficient showing on an essential element of its case with respect to which it has

the burden of proof, the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v.

Catrett*, 477 U.S. 317, 322-23 (1986).  During this process, the Court will "draw all reasonable

inferences in favor of the nonmoving party, and it may not make credibility determinations or

weigh the evidence."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

However, in order to defeat a motion for summary judgment, the nonmoving party must

"do more than simply show that there is some metaphysical doubt as to the material facts."

*Matsushita*, 475 U.S. at 586.  The "mere existence of *some* alleged factual dispute between the

parties will not defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 247-48 (1986) (emphasis in original).  Facts that could alter the outcome are "material," and a factual dispute is "genuine" only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.  "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id.* at 249-50 (internal citations omitted).

A party asserting that a fact cannot be—or, alternatively, is—genuinely disputed must support the assertion either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).

**B.    Invalidity**

A patent granted by the United States Patent and Trademark Office ("PTO") is presumed to be valid.  35 U.S.C. § 282(a); *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 100-03 (2011).  The rationale underlying this presumption of validity is that "the PTO, in its expertise, has approved the claim[.]" *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 426 (2007).  The burden of proving invalidity rests with the patent challenger at all times, who must establish a patent's invalidity by clear and convincing evidence in order to prevail.  *Microsoft Corp.*, 564 U.S. at 95.  Clear and convincing evidence places within the mind of the fact finder "an abiding conviction that the truth of [the] factual contentions are highly probable." *Procter & Gamble*

4

*Co. v. Teva Pharms. USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009) (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)).

## III.   DISCUSSION

ClearOne moves for summary judgment of invalidity of the '723 patent on two grounds. First, ClearOne argues that the '723 patent is invalid as indefinite and non-enabled under 35 U.S.C. § 112 ("Section 112").  (D.I. 442 at 8-11; D.I. 503 at 4-6)  Second, ClearOne asserts that the '723 patent is invalid under the "on-sale bar" and "public use" bar set out in 35 U.S.C. § 102(a)(1) ("Section 102").  (D.I. 442 at 3-8; D.I. 503 at 1-4)  The Court will discuss each ground in turn.

### A.      Section 112

ClearOne contends that the '723 patent is invalid under Section 112 as indefinite and non-enabled because Figures 2 and 4 of the patent depict inconsistent designs.  (D.I. 442 at 9; D.I. 503 at 4)  On that score, there is no question that there is an inconsistency with regard to the drawings.  Figure 2 claims 16 slots in a pattern around the back panel of the design (with the slots depicted in solid, not broken, lines); Figure 4, on the other hand, depicts the same panel with a smooth edge that has no slots.  ('723 patent, FIGS. 2, 4; *see also* D.I. 442 at 2, 9) According to ClearOne, these differences are material and they prevent the ordinary observer from understanding the scope of the claimed design with reasonable certainty.[3]  (D.I. 442 at 1-2; D.I. 503 at 5-6; ClearOne's Hearing Presentation, Slide 160)

---

[3]      The Court hereby incorporates by reference the legal principles regarding the definiteness and enablement requirements of 35 U.S.C. § 112, as applied to design patents, which were set out in the claim construction R&R.  (D.I. 359 at 20-21)

The Court has previously considered this argument in connection with Shure's motion for a TRO, during claim construction proceedings, and again in assessing Shure's motion for a PI. (D.I. 176 at 10 n.8; D.I. 359 at 20-25; D.I. 400 at 4; *see also* D.I. 442 at 9 ("[T]he parties have extensively briefed this issue in connection with Shure's request for preliminary injunctive relief as well as during claim construction."))  The Court assumes familiarity with these decisions.  In the claim construction R&R, the Court concluded as follows:

> In the end, the parties have presented competing expert evidence with respect to these important, validity-related issues.  (*See* Tr. at 145 (ClearOne's counsel acknowledging the dueling expert opinions on this issue))  While definiteness and enablement are ultimately questions of law, addressing relevant disputes of fact would require assessing the credibility and the weight to be afforded these differing expert opinions.  This task is within the province of the jury, not the Court.

(D.I. 359 at 25 (citing cases))

At the summary judgment stage, the Court again stands by this conclusion.  Shure's validity expert, Paul Hatch, has opined that the person of ordinary skill in the art (the "POSITA") could ascertain the scope of the claimed design, and that the differences in Figures 2 and 4 do not affect the overall impression of that design.  He gave a number of reasons as to why this was so. (*See, e.g.*, D.I. 451, ex. 8 at ¶¶ 34-40)  And Shure has also relied on the testimony of industry participants, who explained that customers do not comment on or take much notice of what is on the back of ceiling speakers like the one depicted in the claimed design.  (*Id.* at ¶ 35; D.I. 472 at 6-7 (citing *id.*, ex. B at ¶¶ 36-40; *id.*, ex. C at 22-23; *id.*, ex. D at 33)).  This is all enough to create a material dispute of fact on these validity issues.[4]

---

[4]     The facts here are thus distinguishable from a case that ClearOne cites in its briefing, in which a district court granted summary judgment to a defendant on non-enablement

ClearOne gives two reasons as to why the Court should reach a different conclusion. Neither is ultimately persuasive.

First, ClearOne argues that "this is not a battle of the experts that deserves to go to trial." (D.I. 442 at 10)  In support, it focuses on two types of "recent evidence" that "suggest[]" that Mr. Hatch's opinion is conclusory and "completely insupportable" (and thus cannot raise a genuine dispute of material fact).  (*Id.*)  This evidence consists of:  (1) Mr. Hatch's belief (expressed in a technical tutorial and an interview with Industrial Designers Society of America) that "[h]umans are constantly looking for patterns[,]" (D.I. 451, ex. 5 at ¶ 21; *see also id.*, ex. 9 at 1/2); and (2) Mr. Hatch's preparation of a CAD model of the claimed design with the disclaimed elements of Figures 2 and 4 removed (which purportedly highlights how significant the 16 claimed slots in Figure 2 really are to the claimed design), (*id.*, ex. 14 at ¶ 39).  (D.I. 442 at 10 n.4)

With regard to Mr. Hatch's statements about "patterns," ClearOne will be free to argue about them to a jury.  But they do not move the needle for the Court here.  For one thing, those statements were offered in a very different context from the manner in which ClearOne is using them now.  And in his rebuttal expert report regarding validity, Mr. Hatch explained why his general belief regarding "patterns" does not contradict his opinion regarding the "small prominence" of the 16 slots to the claimed design as a whole.  (D.I. 451, ex. 5 at ¶¶ 22-23)

grounds:  *Seed Lighting Design Co. v. Home Depot*, No. C 04-2291 SBA, 2005 WL 1868152 (N.D. Cal. Aug. 3, 2005).  (D.I. 442 at 10)  In that case:  (1) the plaintiff did not point to any evidence demonstrating that a POSITA would understand the bounds of the asserted design patent; (2) the patent's inventor conceded that even he could not articulate the precise scope of the patent; and (3) the plaintiff's only response to the defendant's evidence regarding non-enablement was "[t]he bare, unsupported belief" of its counsel that any differences in the patent's figures were insubstantial.  *Seed Lighting Design Co.*, 2005 WL 1868152, at *8-9.  In contrast, here Shure does rely on evidence (including Mr. Hatch's opinion and the testimony of industry participants) in order to support its position in favor of validity.

As for Mr. Hatch's CAD model, the Court agrees that it may well be helpful to Clear One (and not to Shure).  In other words, the Court can see how ClearOne might credibly argue that this model, which strips away all of the unclaimed elements of the back panel of the design, unintentionally highlights the importance of one of the few *remaining* claimed elements—i.e., the 16 symmetrical slots at issue here.  (*See* D.I. 442 at 9; D.I. 503 at 5)  But with all that said, the Court acknowledges that Mr. Hatch has a different view about what this CAD model actually conveys to a POSITA.  He believes that the model brings to light the importance of *other* aspects of the claimed design (e.g., the square, flat face of the design).  (D.I. 473, ex. A at ¶ 40)  A jury should weigh the competing evidence and render a final decision on which side has the better of it.  *See, e.g.*, *Dow Chem. Co. v. Nova Chems. Corp. (Can.)*, Civil Action No. 05-737-JJF, 2010 WL 3070189, at *1 (D. Del. July 30, 2010) (rejecting the defendants' argument that evidence regarding indefiniteness that arose after issuance of a claim construction decision indicated that no question of material fact existed, even where there were some "troubling questions regarding indefiniteness" in the case, as the dispute required "resolution by the jury on a full factual record").

Second, ClearOne simply contends that the Court need not consider expert testimony at all before deciding this validity issue at the summary judgment stage.  For support, ClearOne points to two cases in which courts found design patents to be invalid for indefiniteness without reliance on expert testimony:  *Masonite Corp. v. Craftmaster Mfg., Inc.*, Case No. 09 C 2131, 2011 WL 13327344 (N.D. Ill. Apr. 28, 2011) and *Times Three Clothier, LLC v. Spanx, Inc.*, Nos. 13 Civ. 2157(DLC), 13 Civ. 7260(DLC), 2014 WL 1688130 (S.D.N.Y. Apr. 29, 2014).  (D.I. 442 at 10)

8

But again, it is worth noting that expert testimony can really matter regarding disputes like this one.  After all, even though Figures 2 and 4 of the patent are inconsistent as to the presence of the 16 slots, that does not end the definiteness inquiry.  Inconsistencies will not render a patent indefinite if they "do not preclude the overall understanding of the drawing as a whole."  *In re Maatita*, 900 F.3d 1369, 1375-76 (Fed. Cir. 2018); *see also* (D.I. 472 at 2-3).  And the definiteness test considers whether the POSITA, viewing the design from the perspective of an ordinary observer, would understand the scope of the design with reasonable certainty based on the claim and the visual disclosure.  *In re Maatita*, 900 F.3d at 1377.  Here, the experts disagree over whether the inconsistency would affect the overall impression of the design in the eyes of the POSITA.  So the outcome could truly depend on which expert the jury finds more credible.  *See Weber-Stephen Prods. LLC v. Sears Holding Corp.*, No. 13 C 01686, 2015 WL 9304343, at *19 (N.D. Ill. Dec. 22, 2015) (denying summary judgment as to indefiniteness of a design patent in part because there was a "battle of the experts" on the point, in that "[the defendant] has [an expert] saying that the inconsistencies [in certain figures of the patent] would baffle those skilled in the art" and "[the plaintiff] has [another expert] saying the opposite").

Nor do the outcomes in *Masonite* and *Times Three Clothier* necessarily counsel a different result.  In *Masonite*, the asserted patents (directed to an ornamental design for a door facing) contained figures that were inconsistent, in terms of their depiction of, *inter alia*, the contour of the decorative trim surrounding certain door panels and the sectional views of the door panels.  2011 WL 13327344, at *2-3, *5.  The plaintiff had argued that the defendant's invalidity challenge must fail because the defendant did not offer an expert opinion as to how a POSITA would view the drawings of the asserted design patents—and the *Masonite* court

9

rejected that argument. *Id.* at *5. In *Times Three Clothier*, the court invalidated two design patents directed to the exterior of a garment, and did so without relying on expert testimony. 2014 WL 1688130, at *7-8. But in both *Masonite* and *Times Three Clothier*, it does not appear that the patentee submitted an expert opinion in support of its argument as to validity. Here, in contrast, the patentee did so. And in *Times Three Clothier*, the relevant differences between the figures in the asserted design patents (regarding certain ornamental lines) went to a "fundamental" or key part of the claimed designs; here, in contrast, it is less clear (and a subject of dispute between the experts) as to whether the 16 slots at issue are similarly "fundamental." *Id.* at *7; *Weber-Stephen Prods. LLC*, 2015 WL 9304343, at *19 (distinguishing *Times Three Clothier* on similar grounds).

For the reasons set forth above, the Court recommends that the Motion be denied as to ClearOne's Section 112 challenge.

## B.    Section 102

The Court next addresses ClearOne's Section 102 challenge. A design patent is invalid under Section 102's "on-sale bar" if more than one year before the filing date of the patent application: "(1) [a] product embodying the claimed invention was the subject of a commercial offer for sale; and (2) the claimed invention was ready for patenting." *Fisher-Price, Inc. v. Safety 1st, Inc.*, 109 F. App'x 387, 391 (Fed. Cir. 2004); *see also* 35 U.S.C. §§ 102(a)(1), 102(b)(1). Similarly, the "public use bar" of Section 102 is triggered if, more than a year before the filing date of the application, the invention was "in public use and ready for patenting." *Barry v. Medtronic, Inc.*, 914 F.3d 1310, 1320-21 (Fed. Cir. 2019) (internal quotation marks and citation omitted); *see also* 35 U.S.C. §§ 102(a)(1), 102(b)(1).

ClearOne contends that the '723 patent is invalid under Section 102 because a product embodying the design claimed in the '723 patent (Shure's MXA910 product) was "on sale" and in "public use" more than three years before Shure filed the patent application for the '723 patent. (D.I. 442 at 3-8; D.I. 503 at 1-4)  ClearOne's argument turns on a dispute regarding the proper priority date for the '723 patent, which the Court previously assessed in the PI R&R.  (D.I. 400 at 5-9)  Before addressing the merits, the Court will briefly recap the key facts and the parties' positions as to this dispute.

There is no question that in February 2016, Shure began selling the MXA910, which is a commercial embodiment of the design claimed in the '723 patent.  (D.I. 154 at 4; D.I. 451, ex. 3 at 7)  And Shure filed the application that led to the '723 patent on August 6, 2019.  ('723 patent at 1)

Yet Shure asserts that the priority date of the '723 patent is not August 6, 2019, and instead is April 30, 2015 (a date that precedes the launch of the MXA910).  Shure argues that this is so because:  (1) the '723 patent claims priority to a series of prior utility patent applications, all with identical figures, which originated with the '493 patent; and (2) the patent application for the '493 patent was filed on April 30, 2015.  (*Id.* at 1-2; '493 patent at 1; D.I. 472 at 8)

For its part, ClearOne counters that the priority date for the '723 patent is not April 30, 2015, but is in fact August 6, 2019—the patent's filing date.  (D.I. 442 at 1)  If ClearOne is correct in that regard, then the MXA910 product would undisputedly render the patent invalid under the public use and on sale bar provisions of Section 102.  (*Id.* at 4; D.I. 503 at 1; Tr. at 134)  In support of its argument, ClearOne notes that the '493 patent does not contain Figures 4,

11

5 or 6 of the '723 patent.  (*See* '493 patent; '723 patent; Tr. at 135)  And ClearOne goes on to

contend that the '493 patent's drawings fail to reasonably convey that in April 2015, Shure had

possession of two features of the '723 patent's claimed design:  (1) the three nested square shapes

between the back panel and side rails that are depicted in Figure 4 of that patent; and (2) certain

aspects of the back panel itself.  (D.I. 442 at 4-7; D.I. 503 at 1-4)[5]  The Court will consider these

features in turn.[6]

### 1.   Nested Square Shapes

The Court confronted the nested square shapes in the PI R&R.  There it concluded that

there was at least a substantial question as to whether the inventor of the '723 patent had

possession of this feature at the time the '493 patent application was filed.  (D.I. 400 at 8)  Shure,

in arguing to the contrary, had focused on Figure 4 of the '493 patent; it had argued that Figure

4's cross-sectional view of the array microphone assembly actually disclosed a "'single slice'" of

these nested square shapes.  (*Id.* at 7-8)  In ruling against Shure, the Court explained that "even if

it is possible for a person of skill in the art to interpret Figure 4's cross-sectional view as

depicting a 'single slice' of those shapes, the [f]igure would still not seem to offer support for the

particular nested square shapes that are claimed in the '723 patent—shapes that travel around the

*entire perimeter* of the array microphone assembly design."  (*Id.* at 7 (emphasis in original))

---

[5]     The Court hereby incorporates by reference the legal principles governing
whether a patent is entitled to the priority date of an earlier-filed disclosure (because the earlier-
filed disclosure has provided adequate written description for the invention claimed in that
patent); these principles were set out in the PI R&R.  (D.I. 400 at 5-6)

[6]     ClearOne suggests that there are additional differences between the respective
patents that support its Section 102 invalidity argument.  (D.I. 442 at 4; D.I. 503 at 4)  However,
ClearOne did not describe these additional differences in its briefing.  So the Court here only
assesses the differences that ClearOne actually did brief.  (D.I. 472 at 11 n.5)

So ClearOne won the day at the PI Motion stage.  But in order to do so, ClearOne only had to put "forth a substantial question of invalidity to show that the claims at issue are vulnerable." *Erico Int'l Corp. v. Vutec Corp.*, 516 F.3d 1350, 1356 (Fed. Cir. 2008).  Now at the summary judgment stage, a different legal standard is at play.  ClearOne must here meet "the clear and convincing standard to show actual invalidity[,]" which requires greater proof than the "substantial question of invalidity" test did.  *Id*.  And though ClearOne continues to have some very good arguments about invalidity as to these nested square shapes, it has not surmounted the summary judgment hurdle.

In part, that is because Shure has now done a better job of pointing to evidence showing that the '493 patent would reasonably convey to a POSITA the nested squares depicted in the '723 patent.  (D.I. 472 at 9-10)  For example, Mr. Hatch opines that a POSITA would consider the design as disclosed in a number of figures of the '493 patent—not just Figure 4 of that patent—in order to understand that the inventor then had possession of the nested square shapes.  (D.I. 473, ex. A at ¶¶ 45-51; *id.*, ex. B at ¶¶ 88-89)  To that end, Mr. Hatch annotates and color codes Figure 3 and Figure 4 of the '493 patent, so as to indicate how:  (1) the POSITA would "very clear[ly]" see the nested square elements in the '493 patent drawings; and (2) this feature is consistent between the '493 and '723 patents.  (*Id.*, ex. A at ¶ 47 & Table 6)  In doing so, Mr. Hatch highlights a raised "bump" that he opines can be seen in Figures 3 and 4 of the '493 patent—a bump that, for him, is key to identifying the structure of these nested squares; he asserts that a POSITA would understand that this bump continues along the entire length of the rim of the design.  (*Id.* at ¶¶ 47, 51 & Table 6; *see also id.*, ex. B at ¶¶ 87-89)  Although it is not very easy to see, there does seem to be a raised portion of Figure 3 and Figure 4; this raised

portion could plausibly represent such a bump.  (*Id.*, ex. A at Table 6; D.I. 451, ex. 10 at Table 34; ClearOne's Hearing Presentation, Slide 152; Tr. at 137-38)  Next, Mr. Hatch refers to a color-coded CAD image that he built from the claimed design in the '723 patent.  In doing so, he compares that image with an expanded, annotated view of Figure 3 of the '493 patent—in order to show how the two patents are consistent in their depiction of the nested square shapes.  (D.I. 473, ex. A at Table 6)  And finally, Shure points to Figure 2 of the '493 patent, which is a rear perspective view of the array microphone assembly.  Shure acknowledges that this image does not visibly depict every square that is within the nested square shapes found in the '723 patent.[7] But Shure notes that the image displays at least certain squares within the nested square shapes that "extend[] around the entire perimeter of the product without interruption." (D.I. 472 at 10; *see also* '493 patent, FIG. 2)  Shure's point is that if other figures in the '493 patent (like Figure 3) do depict all of the nested square shapes at issue, then Figure 2 helps establish that the patent disclosed such shapes running along the *entire perimeter* of the design (not just a portion of the design), as is called for by the '723 patent.  (D.I. 472 at 10)

To be sure, ClearOne counters with its own evidence.  Its expert, Joel Delman, acknowledges that it is possible that Figure 2 of the '493 patent may depict one of the three nested square shapes, or that Figure 4 of the '493 patent might offer support for a single slice of the nested side rails.  (D.I. 451, ex. 4 at ¶ 64(a)(ii)-(iii))  However, Mr. Delman opines that the '493 patent fails to disclose three nested square shapes traveling around the entire perimeter of the product.  (*Id.* at ¶ 64(a)(iii))  And with respect to Mr. Hatch's reliance on the "bump" as

---

[7]        Shure says that this is because Figure 2 is a "perspective view." (D.I. 427 at 10 n.3)

14

supporting disclosure of the nested squares, Mr. Delman simply disagrees that the '493 patent

shows any such thing.  To the contrary, Mr. Delman opines that the POSITA would understand

that Figure 3 of the '493 patent discloses a smooth, uninterrupted surface—one devoid of any

such "bump."  (*Id.*, ex. 7 at ¶ 116(vii))[8]  ClearOne might well convince a jury that Mr. Delman is

correct on these fronts.[9]

　　But in the end, the law does not require identical drawings to establish priority.  *See In re*

*Daniels*, 144 F.3d 1452, 1456 (Fed. Cir. 1998).  And here, for the reasons noted above, the

record contains competing evidence regarding whether the '493 patent's figures would

reasonably convey to a POSITA the nested square shapes that are disclosed in the '723 patent.

(D.I. 472 at 8-10; Tr. at 142-43)  Accordingly, this issue is a disputed question of fact that the

jury, not the Court, should resolve.[10]  *See, e.g.*, *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1566-

---

[8]　　ClearOne also notes that it is far from certain that, even if there is a bump in Figure 3, the figure otherwise discloses lines that define three nested square shapes.  (D.I. 503 at 2; Tr. at 140)

[9]　　In its reply brief, ClearOne put forward an additional, more nuanced argument regarding this issue.  That is, ClearOne asserts that even assuming that Figure 3 discloses certain portions of the nested square shapes, Figure 3 discloses four separate frame elements that would have to be put together to form a complete product; it argues that "such disclosure would only support nested square shapes *each having mitered corners*, rather than being continuous squares as depicted in" Figure 4 of the '723 patent.  (D.I. 503 at 2-3 (emphasis in original))  While it is possible that this argument may be a good one for ClearOne, the Court will not consider it here because it was not fairly raised in ClearOne's opening brief (at least certainly not in the nuanced way that it was described in ClearOne's reply brief).  *See Acceleration Bay LLC v. Activision Blizzard, Inc.*, Civil Action No. 16-453-RGA, 2017 WL 3738468, at *4 (D. Del. Aug. 29, 2017).

[10]　　In anticipation of an argument that this is a "battle of the experts" that should go to a jury, ClearOne's counsel suggested at oral argument that the Court should disregard Mr. Hatch's competing testimony because "[w]e do not need expert testimony to tell us what our eyes plainly see."  (Tr. at 141)  But this written description issue is viewed from the perspective of the POSITA.  The Court is not a POSITA.  And it is not persuaded that such expert testimony (about what a POSITA would think) is worthless to the overall inquiry.

67 (Fed. Cir. 1991) (finding that summary judgment was not appropriate where there was a dispute of fact as to whether the design patents' drawings reasonably conveyed the invention disclosed by certain utility patents, and where the non-movant had submitted an expert declaration in support of its position); *cf. Bausch & Lomb Inc. v. Vitamin Health, Inc.*, 13-CV-6498, 2016 WL 4120657, at *6 (W.D.N.Y. Aug. 1, 2016) (finding that the summary judgment standard was not met with respect to written description where, in light of the competing expert testimony submitted, "reasonable minds may differ as to whether a person of ordinary skill in the art would be able to recogni[z]e the claimed invention based on an objective inquiry into the contents of the patent's specifications"); *Viasat, Inc. v. Space Sys./Loral, Inc.*, CASE NO. 3:12-CV-00260-H(WVG), 2013 WL 12061802, at *3 (S.D. Cal. Oct. 29, 2013) (denying a motion for summary judgment where the plaintiff's expert opined that the earlier applications fully described the inventions, because the court cannot make credibility determinations at the summary judgment stage and because the parties presented conflicting expert testimony regarding issues of material fact).

## 2. Back Panel

The Court next considers ClearOne's assertion that the '493 patent does not reasonably convey that, as of the critical date, Shure had possession of the back panel claimed in the '723 patent.  Here, ClearOne notes that the back panels depicted in the '493 patent and the '723 patent are visually different.

The difference that ClearOne focuses most of its energy on is the presence of three large, circular openings in Figure 3 of the '493 patent.  ('493 patent, FIG. 3; D.I. 442 at 6-7; D.I. 503 at 3-4)  Each of these holes are located a short distance inward from the back panel's corners.  Mr.

Delman opines that the POSITA would assume that these three openings are necessary for the attachment of screws, washers, and cable mounting hooks.  (D.I. 451, ex. 4 at ¶ 64(b)(i))  ClearOne notes that, in contrast, the back panel claimed in the '723 patent (depicted in Figure 4 of that patent) does not include these three circular openings; instead, the patent depicts the three locations as having a solid surface.  ('723 patent, FIG. 4; D.I. 442 at 7)  Thus, according to ClearOne, there is no evidence that Shure was in possession of the back panel claimed in the '723 patent, as of the filing date of the '493 patent application.  (D.I. 503 at 4; D.I. 451, ex. 4 at ¶ 64(b))

Shure counters by arguing that this difference does not defeat its priority claim.  That is because, according to Shure, "[i]t is well settled that merely removing a feature disclosed in a parent application from the disclosure of the child (particularly where that feature 'does not obscure the design' shown in the parent) does not destroy priority."  (D.I. 472 at 10)  For this proposition, Shure relies on *In re Daniels*, 144 F.3d 1452 (Fed. Cir. 1998).

In *In re Daniels*, the inventor had submitted a design patent application with the same drawings for a leecher device as were found in an earlier design patent application, except that in the latter application, a pattern of leaves that decorated that device was deleted from the drawings.  144 F.3d at 1454-55.  The United States Court of Appeals for the Federal Circuit explained that removal of the leaf design did not defeat the inventor's priority claim, because the leaf design "did not obscure the design of the leecher, all details of which are visible in the drawings of the earlier application" and because the leaf ornamentation was "a mere indicium that does not override the underlying design."  *Id.* at 1457.  The Board of Patent Appeals and Interferences has considered the "teaching value" of *In re Daniels*, and concluded that the case

17

indicates "that a logo or part number or the like may be removed in a subsequent application to the extent it may be fairly characterized as surface indicia not a part of the original or initial design." *Ex Parte Zooey C. Chu*, Appeal No. 2001-0959, 2003 WL 22282257, at *7 (B.P.A.I. Jan. 1, 2009); *see also Ex Parte Bruce C. Lincoln*, Appeal No. 2002-0494, 2002 WL 33948276, at *2 (B.P.A.I. June 13, 2002).

Does the earlier disclosure (i.e., a microphone array with a back panel that contains three holes) reasonably convey to a POSITA that the inventor then had possession of the claimed subject matter (i.e., a microphone array with a back panel that does not include those holes)? There are surely some reasons why ClearOne might prevail on that score. For example, as ClearOne notes, the facts here are a bit different than in *In re Daniels*. The back panel disclosed in the '723 patent does not simply remove a logo or a form of decoration from the back panel of the '493 patent—it eliminates three physical openings. So it can be said that the removal of those three holes changes the face or structure of the back panel itself. (D.I. 503 at 4) Perhaps that difference might make a difference to a POSITA (and to the fact finder).

But the question of whether a claimed invention is supported by adequate written description under Section 112 is a question of fact. *In re Owens*, 710 F.3d 1362, 1366 (Fed. Cir. 2013). And here, the evidence is such that a reasonable jury, when looking at the facts of record (including the respective patents and their drawings) could return a verdict for the nonmoving party.[11] After all, the three holes (or the lack thereof) are just one part of a larger design that is

---

[11] Unlike other issues described herein, this is not a classic "battle of the experts" issue, in that, so far as the Court can tell, Mr. Hatch does not opine specifically on the absence of the three holes in the '723 patent or what that might mean to a POSITA. But a jury would still need to sort through the available record evidence, including the figures of the respective patents and Mr. Hatch's other views about what is and is not truly important to the scope of the claimed

depicted in the '493 patent.  Much of the rest of those design elements do appear to have transferred over to the '723 patent.  Perhaps the presence or absence of those functional holes is just not that big of a deal when it comes to understanding the overall claimed microphone array design (i.e., that the three openings are like the later-removed leaf design in *In re Daniels*, i.e., a "mere indicium that does not override the underlying design").  This issue too, then, should go to a jury.  *In re Daniels*, 144 F.3d at 1457; *cf. Skechers U.S.A., Inc. v. Nike, Inc.*, IPR2016-00871, 2016 WL 7049406 (P.T.A.B. Sept. 29, 2016) ("To the extent any differences submitted by Skechers are visually apparent, we conclude that such differences are trivial and/or minor drafting inconsistencies that do not detract from understanding the design as a whole.  Accordingly, we are not persuaded that the photographs of the parent '576 application do not reasonably convey to those skilled in the art that the inventor had possession of the claimed design as shown in the '359 patent.").

Thus, the Court concludes that there is a material factual dispute as to whether the '493 patent reasonably conveys that Shure had possession of the back panel claimed in the '723 patent at the time that the '493 patent application was filed.[12]

---

design, in order to determine whether the inventors had possession of the claimed subject matter as of the filing date.  *See Mfg. Res. Int'l, Inc. v. Civiq Smartscapes, LLC*, 397 F. Supp. 3d 560, 574-75 (D. Del. 2019) (denying defendants' motion for summary judgment of lack of written description for the asserted patent, and pointing not to expert testimony but instead to the intrinsic record (i.e., the language of the original claims of the patent) in order to articulate why there was a disputed material issue of fact).

[12]     ClearOne devotes only two sentences in its opening brief to another Section 102 argument regarding the back panel:  i.e., that Figure 2 of the '493 patent (and the remainder of the figures in that patent) fails to depict a portion of the back panel "immediately adjacent to the disclaimed control box" in Figure 4 of the '723 patent.  (D.I. 442 at 7; *see also* D.I. 503 at 4; D.I. 451, ex. 4 at ¶ 64(c)(i))  However, because ClearOne's argument here was so sparse, it is not really clear to the Court what are the elements of the design of the '723 patent that are said to be

IV.     **CONCLUSION**

For the foregoing reasons, the Court recommends that ClearOne's Motion be DENIED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R.

Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections

within fourteen (14) days after being served with a copy of this Report and Recommendation.

Fed. R. Civ. P. 72(b)(2).  The failure of a party to object to legal conclusions may result in the

loss of the right to *de novo* review in the district court.  *See Sincavage v. Barnhart*, 171 F. App'x

924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R.

Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website,

located at http://www.ded.uscourts.gov.

Because this Report and Recommendation may contain confidential information, it has

been released under seal, pending review by the parties to allow them to submit a single, jointly

proposed, redacted version (if necessary) of the Report and Recommendation.  Any such

redacted version shall be submitted no later than **August 26, 2021** for review by the Court.  It

should be accompanied by a motion for redaction that shows that the presumption of public

---

missing from Figure 2 of the '493 patent.  Moreover, contrary to ClearOne's assertion that
Shure's expert failed to address this feature, (D.I. 442 at 7), Mr. Hatch did explain why he
disagrees with ClearOne's expert on this point, (D.I. 472, ex. F at ¶ 30 (disagreeing that the '493
patent does not depict the portion of the back panel of the '723 patent at issue, and pointing to
Figure 4 of the '493 patent, which purportedly "depicts the back panel to be continuous from one
side to the other" and to Figure 3 of that patent, which purportedly "also shows that the back
panel continues in the areas [that] Mr. Delman [is focused on]")).  Thus, there is a genuine
dispute of fact regarding whether the '493 patent reasonably conveys that Shure had possession
of this portion of the back panel claimed in the design of the '723 patent, and summary judgment
is not warranted on this ground either.  (D.I. 472 at 11; Tr. at 142)

access to judicial records has been rebutted with respect to the proposed redacted material, by including a factually-detailed explanation as to how that material is the "kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (internal quotation marks and citation omitted). The Court will subsequently issue a publicly-available version of its Report and Recommendation.

Dated:  August 23, 2021

*Christopher J. Burke*

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE