## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SHURE INCORPORATED and<br>SHURE ACQUISITION HOLDINGS,<br>INC., | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-1343-RGA-CJB |
| | ) | |
| CLEARONE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Presently pending in this action filed by Plaintiffs Shure Incorporated and Shure

Acquisition Holdings, Inc. ("Plaintiffs" or "Shure") against Defendant ClearOne, Inc.

("Defendant" or "ClearOne") is Shure's "Motion for Summary Judgment on ClearOne's

Inventorship Defense[,]" filed pursuant to Federal Rule of Civil Procedure 56 ("the Motion").

(D.I. 435)  For the reasons that follow, the Court recommends that Shure's Motion be DENIED.

## I.     BACKGROUND

### A.     Factual Background

The Court incorporates by reference its discussion in its August 23, 2021 Report and

Recommendation (the "August 23 R&R") of certain aspects of the factual background of this

case.  (D.I. 535 at 1-2)  It provides additional factual background below that is particularly

relevant to the Motion.

By April 2014, Shure employees John Miller (Director of Industrial Design), Elizabeth Cho (Lead Industrial Designer) and Gregory Lantz (Senior Manager, Mechanical Engineering) had created a design (what Mr. Miller terms a "close-to-final" design) for Shure's MXA910 microphone array product. (D.I. 436, ex. A at ¶¶ 1, 5, 10)  Mark Brunner, who was then Shure's Vice President of Global Corporate and Government Relations, (*id.* at ¶ 4), had no role in the development of this proposed design, (*id.*, ex. E at 15).[1]

On the front facing portion of this April 2014 design (the "April 2014 plan"), *inter alia*, was a space for Shure's logo and an area of omitted perforation around that logo (the "logo gap").  The logo/logo gap were depicted in the upper right-hand corner of the front face of the design, as seen in the following image:



(D.I. 436, ex. B at SHUREDDEL00052411)

---

[1]     In his role, Mr. Brunner managed public and media relations at Shure.  (D.I. 436, ex. A at ¶ 4)  While he was not a member of Shure's industrial design team, he occasionally provided high-level branding suggestions to the team to ensure that new products were aligned with Shure's brand identity and character.  (*Id.*)

On August 5, 2014, the proposed design for the MXA910 product (along with proposed designs for other Shure products) was circulated to a team of 27 Shure personnel, including Mr. Brunner.  (*Id.*, ex. F)  Twenty minutes later, Mr. Brunner responded by e-mail, stating "[o]ne small nit before it gets too far along — on the ceiling array, if there is no functional obstacle for doing so, Shure['s] logo in the upper [l]eft corner would be more consistent with our customary placement across a variety of applications."  (*Id.*, ex. G)  Shortly after receiving Mr. Brunner's feedback, on August 13, 2014, Ms. Cho circulated an updated version of the design; this updated version was "almost identical" to the prior version, except that the logo and logo gap were moved to the top left side of the front face of the design.  (*Id.*, ex. H & ex. J)  That version is depicted below:



(*Id.*, ex. I at SHUREDDEL00001297)

Eventually, Shure filed an application for a design patent, which became United States Design Patent No. D865,723 (the "'723 patent").  The '723 patent, entitled "Array Microphone Assembly[,]" is directed to an ornamental design for an array microphone assembly, which can

be mounted in a drop ceiling.  ('723 patent)  Part of the design embodied in the '723 patent is the "top plan view" of the assembly, which is depicted in Figure 3 of the patent and is reproduced below:



*FIG. 3*

('723 patent, FIG. 3; *id.* at 1)  As can be seen in the image above, the top plan view of the assembly in Figure 3 includes a claimed logo gap at the top left side of the array.  The '723 patent lists as inventors Ms. Cho, Mr. Lantz and Mr. Miller.  (*Id.* at 1)  Shure's MXA910 product is the commercial embodiment of the '723 patent.  (D.I. 436, ex. C. at ¶ 30(c); *id.*, ex. D at ¶¶ 15, 114-19)

It is undisputed that, other than with regard to the placement of the logo gap, Mr. Brunner did not otherwise contribute to the design of the '723 patent.  It is also undisputed that Mr. Brunner suggested the final location of the logo gap, and that it was due to his suggestion that the logo gap was moved to its top-left location.  (D.I. 479, ex. 65 at 32)

### B.      Procedural Background

The operative complaint in this case is the Second Amended Complaint ("SAC"), which Shure filed on November 19, 2019.  (D.I. 64)  Therein, Shure alleges, *inter alia*, that the '723 patent is infringed by ClearOne's products.  (*Id*. at ¶¶ 1, 19, 71-81)  On June 15, 2020, ClearOne filed its Answer to the SAC; it is not disputed that in this Answer or otherwise, ClearOne has sufficiently asserted the affirmative defense of invalidity of the '723 patent on the ground of incorrect inventorship.  (D.I. 232; D.I. 436 at 1)[2]

The instant Motion was filed on April 16, 2021.  (D.I. 435)  Briefing on the Motion was completed on June 2, 2021.  (D.I. 500)

## II.      STANDARD OF REVIEW

### A.      Summary Judgment

The Court incorporates by reference its discussion in the August 23 R&R of the legal standards regarding summary judgment.  (D.I. 535 at 3-4)

### B.      Inventorship

"A patent is invalid if more or less than the true inventors are named."  *Trovan, Ltd. v. Sokymat SA, Irori*, 299 F.3d 1292, 1301 (Fed. Cir. 2002).  Inventorship is a question of law with underlying factual issues.  *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 412 F.3d 1331, 1338 (Fed. Cir. 2005); *see also Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1473 (Fed. Cir. 1997) ("The

---

[2]      The Court does not actually see this specific defense referenced in ClearOne's Answer, (D.I. 232 at 8-9), but Shure does not dispute that ClearOne raised the defense in that pleading or otherwise, (D.I. 436 at 1).

determination of whether a person is a joint inventor is fact specific[.]").  Because there is a presumption that the inventors named on an issued patent are correct, nonjoinder of inventors must be proven by clear and convincing evidence.  *Falana v. Kent State Univ.*, 669 F.3d 1349, 1356 (Fed. Cir. 2012).  At the summary judgment stage, if there is a genuine issue of material fact regarding the issue of joint inventorship in light of the evidence submitted by the parties, then summary judgment should not be granted.  *Checkpoint Sys.*, 412 F.3d at 1334; *Fina Oil*, 123 F.3d at 1474.

Conception is the touchstone of inventorship, which requires a definite and permanent idea of the complete and operative invention.  *Tavory v. NTP, Inc.*, 297 F. App'x 976, 979 (Fed. Cir. 2008) (citations omitted).  And a patented invention can be the work of two or more joint inventors.  35 U.S.C. § 116.  A joint invention is simply the product "of a collaboration between two or more persons working together to solve the problem addressed."  *Fina Oil*, 123 F.3d at 1473; *see also CODA Dev. s.r.o. v. Goodyear Tire & Rubber Co.*, 916 F.3d 1350, 1359 (Fed. Cir. 2019); *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1359 (Fed. Cir. 2004) ("Joint inventorship . . . can only arise when collaboration or concerted effort occurs—that is, when the inventors have some open line of communication during or in temporal proximity to their inventive efforts[.]") (citation omitted).

In order to qualify as a joint inventor, a person must:  (1) contribute in some significant manner to the conception or reduction to practice of the invention; (2) make a contribution to the claimed invention that is not insignificant in quality; and (3) do more than merely explain to the real inventors well-known concepts and/or the current state of the art.  *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1351 (Fed. Cir. 1998); *see also* 35 U.S.C. § 116; *CODA Dev. s.r.o.*, 916 F.3d at 1358;

*Fina Oil*, 123 F.3d at 1473.  Additionally, one cannot be a joint inventor if he merely assists the actual inventor after conception of the invention.  *Ethicon, Inc. v. U.S. Surgical Corp*, 135 F.3d 1456, 1460 (Fed. Cir. 1998).

However, a joint inventor need not "make the same type or amount of contribution" to the invention nor contribute to every claim; a contribution to one claim is enough.  *CODA Dev. s.r.o.*, 916 F.3d at 1358 (internal quotation marks and citations omitted); *see also* 35 U.S.C. § 116(a); *Vanderbilt Univ. v. ICOS Corp.*, 601 F.3d 1297, 1303 (Fed. Cir. 2010) ("[E]ach contributor need not have their own contemporaneous picture of the final claimed invention in order to qualify as joint inventors.").  Nor do the joint inventors have to have physically worked together or at the same time.  35 U.S.C. § 116(a); *Pannu*, 155 F.3d at 1351.  And there is no "explicit lower limit on the quantum or quality of inventive contribution required for a person to qualify as a joint inventor." *Fina Oil*, 123 F.3d at 1473.

## III.   DISCUSSION

As to its affirmative defense regarding inventorship, ClearOne asserts that the '723 patent is invalid because Mr. Brunner[3] jointly conceived of the inventions claimed therein but was not identified as a co-inventor of the patent.  (D.I. 436 at 1; D.I. 475 at 1)  With the instant Motion, Shure argues that ClearOne cannot demonstrate by clear and convincing evidence that Mr. Brunner is a co-inventor; it argues that ClearOne's inventorship defense must therefore fail as a matter of law.  (D.I. 436 at 5; D.I. 500 at 3)  ClearOne responds by asserting that there is a

---

[3]      Mr. Brunner unexpectedly passed away in September 2020; he was never deposed in this case.  (D.I. 436 at 2 n.1)

genuine dispute of material fact regarding Mr. Brunner's purported inventorship, making

summary judgment inappropriate.[4]

In the context of design patents, in order for a person's contribution to a claimed design

to merit joint inventor status, the person has to have contributed a change in the design that was

"substantial and not just superficial"; the new design, post-contribution, must contain an

"inventive concept." *Hoop v. Hoop*, 279 F.3d 1004, 1007 (Fed. Cir. 2002); *see also Sunbeam*

---

[4]      ClearOne separately alleges that there is a genuine dispute of material fact regarding the date of conception of the claimed invention.  ClearOne notes that Shure, in its briefing, seemed to contend that its April 2014 plan included "every detail" or "every other element" of what turned out to be the design claimed in the '723 patent, with the exception of the movement of the logo gap's location.  (D.I. 436 at 1, 5)  But Clear One musters evidence suggesting that "conception did not occur until after Mr. Brunner's contribution."  (D.I. 475 at 5)  For example, ClearOne asserts that there are a number of differences between the front face of the frame in the April 2014 plan design as compared to the claimed design, including that:  (1) the "[April 2014] plan [] frame is only about half as wide as the frame in the '723 patent"; (2) the mitered corners of that frame in the '723 patent are not present in the frame found in the April 2014 plan; (3) while the hole patterns on the front face of the April 2014 plan design include "'cutoff' perforated holes on the side," the claimed design features "full holes on the side"; and (4) the claimed design's sides "generally taper inwards" while the April 2014 plan design's sides "taper inwards *and* taper[] toward the front."  (*Id*. at 2-3 (internal quotation marks and citations omitted) (emphasis and certain alteration in original))  ClearOne also cites to certain other facts allegedly demonstrating that Shure was still working on the claimed design "well into late 2014[.]"  (*Id*. at 5 (citing D.I. 479, ex. 65 at 41-42; *id*., ex. 71; *id*., ex. 72 at 52-54))

It seems to the Court that these portions of the record could create a genuine issue of fact as to what is the relevant date of conception of the invention.  But the Court does not see why this record evidence, or disputes over it, are particularly relevant to the issues raised by the Motion.  The key dispute here is over whether Mr. Brunner's contribution to the design in the '723 patent is significant enough to qualify him as a joint inventor.  If there is at least a genuine dispute of fact on that front, then it seems there would necessarily be a genuine dispute of fact as to whether the invention was conceived in April 2014 (since Mr. Brunner's alleged contribution came later).  But there is no dispute that all of the evidence cited above relates to alleged alterations to the MXA910 design that did not involve Mr. Brunner nor the logo/logo gap.  So whatever this evidence shows or does not show regarding the true date of conception, it would appear largely irrelevant to the question of whether Mr. Brunner's contribution regarding the placement of the logo/logo gap in the claimed invention is substantial enough to qualify him for joint inventor status.  (D.I. 500 at 1-2)

*Prods., Inc. v. Wing Shing Prods. (BVI), Ltd*., 153 F. App'x 703, 707 (Fed. Cir. 2005). If, on the other hand, the design change simply amounts to a "minor difference[]"—such that the prior design and the design after the contribution were "'substantially similar'"—then the person's contribution was not significant enough to render him or her a joint inventor. *Hoop*, 279 F.3d at 1007; *see also Sunbeam Prods., Inc.*, 153 F. App'x at 707. Substantial similarity is a question of fact. *Hoop*, 279 F.3d at 1007.

So was Mr. Brunner's contribution "substantial and not just superficial"? Shure's validity expert, Paul Hatch, says no. In support, Mr. Hatch opines that "the substantial majority of the Claimed Design (including the existence, size, shape, orientation[] and the look of the 'logo gap') was in existence before Mr. Brunner suggested a change to the placement of the logo" and that this "change did not add to the inventive concept of the Claimed Design, but simply refined it." (D.I. 436, ex. K at ¶ 58) Mr. Hatch does not believe that the ordinary observer would be "'particularly attuned' [] to the change of the logo position from one side [of the front face of the assembly] to the other" and opines that the "repositioning of the logo area . . . does not change the overall visual impression of the design as a whole." (*Id*. at ¶ 59)

But ClearOne musters evidence to the contrary. Its validity expert, Joel Delman, opined that the logo gap is "one of the only truly ornamental elements of the claimed design." (D.I. 479, ex. 73 at ¶ 79) And he contends that "[a]s the logo gap breaks up an otherwise symmetric front face of the design, and is perhaps the most prominent feature on th[e] front face as it would be viewed by the ordinary observer upon installation[;] the observer's eye [would be] immediately drawn to its location." (*Id*.) Mr. Delman also opines (contrary to Mr. Hatch) that "the hypothetical ordinary observer would be particularly attuned to Mr. Brunner's contribution

9

because . . . many examples of similar prior art [] teach, essentially, all that is claimed on the front of the MXA910 *other* than the logo gap." (*Id.* at ¶¶ 80-81 (emphasis in original))  And ClearOne additionally points to certain statements of Ms. Cho, who:  (1) testified in her deposition that the logo gap "was [one of the] very few details that [the] end user could notice[,]" (*id.*, ex. 65 at 39); and (2) wrote in an e-mail that "[h]aving a custom pattern and precise logo application with the LED was [] one of the very few industrial design details in the array mic[,]" (*id.*, ex. 74 at 2).[5]

To be sure, the positioning change of the logo gap was just one piece of a much larger claimed design.  A factfinder surely could conclude that it is a minor thing, and that Mr. Brunner is thus not a joint inventor.  But discerning whether someone is a joint inventor is a fact-specific inquiry.  *Fina Oil*, 123 F.3d at 1473.  And with both sides pointing to facts that could redound in their favor as to the issue, this is clearly a question that is not ripe for summary judgment.  *See Hoop*, 279 F.3d at 1008 (concluding that the issue of whether two purported joint inventors had made a substantial contribution to the claimed invention was such that the "final resolution of this factual question must await a trial on the merits[,]" even where the evidence of record was such that the patentee had the stronger position and had prevailed on the issue at the preliminary injunction stage); *cf. Finkelstein v. Mardkha*, 495 F. Supp. 2d 329, 341-43 (S.D.N.Y. 2007)

---

[5]      In its reply brief, Shure suggests that Mr. Delman's or Ms. Cho's evidence, cited above, somehow is only relevant to an infringement analysis—and that it is irrelevant to the question of inventorship.  (D.I. 500 at 2)  This is supposedly because the evidence relates to the "'ornamental'" nature of the logo gap or its relative "'noticab[ility]'" or prominence in the claimed design.  (*Id.*)  But Shure cites to nothing in support of this assertion.  And ClearOne is pointing to the distinctness/prominence/noticeability of the logo gap in order to explain why the logo gap's positioning amounts to a significant and substantial addition to the claimed design.  That all seems very relevant to the inventorship question.

(granting the defendant's summary judgment motion regarding the plaintiff's claim that he was a co-inventor of certain patents, but doing only where the plaintiff's claim was that he had conceived many or all of the particular facet shapes, alignments and angles of a diamond, and where (1) multiple witnesses testified that it only requires ordinary skill in the art to choose facet angles and alignments once the arrangement of facets is dictated and (2) "[n]o witness or expert suggested otherwise").

## IV.    CONCLUSION

For the foregoing reasons, the Court recommends that Shure's Motion be DENIED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2).  The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court.  *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated:  September 1, 2021

*Christopher J. Burke*
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

11