IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SHURE INCORPORATED and SHURE ACQUISITION HOLDINGS, INC., <br><br>Plaintiffs, <br><br>v. <br><br>CLEARONE, INC., <br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br>Civil Action No. 19-1343-RGA-CJB |

**REPORT AND RECOMMENDATION**

Presently pending in this action filed by Plaintiffs Shure Incorporated and Shure Acquisition Holdings, Inc. ("Plaintiffs" or "Shure") is Defendant ClearOne, Inc.'s ("Defendant" or "ClearOne") "Motion for Summary Judgment of Non-Infringement[,]" filed pursuant to Federal Rule of Civil Procedure 56 ("the Motion"). (D.I. 443) For the reasons that follow, the Court recommends that ClearOne's Motion be DENIED.

**I.   BACKGROUND**

**A.   Factual Background**

Shure and ClearOne are competitors in the installed audio-conferencing market. (D.I. 64 at ¶¶ 14-15; D.I. 232 at 3 at ¶ 15) In 2016, Shure introduced a line of microphone arrays called the Microflex Advance ("MXA"). (D.I. 473, ex. A at ¶ 21) In 2019, ClearOne released its microphone array product, the BMA CT, which was followed by the BMA CTH and BMA CT

360 products (collectively, the "BMA CT products" or the "Accused Products"). (*Id.* at ¶¶ 55, 60; D.I. 451, ex. 3 at 7)[1]

In this case, Shure alleges that ClearOne's BMA CT products infringe United States Design Patent No. D865,723 (the "'723 patent"). (D.I. 451, ex. 3 at 7)[2] The '723 patent is entitled "Array Microphone Assembly" and it issued on November 5, 2019. (*Id.*, ex. 1 (hereinafter, "'723 patent")) It is a continuation of a parent application filed on April 30, 2015, which matured into a utility patent, United States Patent No. 9,565,493 (the "'493 patent"). (*Id.* at 1-2; *id.*, ex. 2 at 1)[3] Shure asserts the sole claim of the '723 patent, which recites "[t]he ornamental design for an array microphone assembly, as shown and described." ('723 patent at 1)

On October 15, 2020, the Court issued a Report and Recommendation regarding claim construction (the "claim construction R&R"), (D.I. 359), which the District Court subsequently adopted, (D.I. 375). The Court construed the '723 patent claim as follows:

> The ornamental design for an array microphone assembly, as shown in the solid lines and associated claimed surfaces of Figures 1-6 and described in the specification of the '723 patent. The broken lines in Figures 1-6 of the '723 patent form no part of the claimed design. The square shape of the claimed design is functional.

(D.I. 359 at 25-26; D.I. 375)

---

[1]     The only differences between the BMA CT and BMA CTH are the product labels and firmware. (D.I. 451, ex. 15 at ¶ 15) The BMA 360 product has a similar (but not identical) housing to the BMA CT and BMA CTH products. (*Id.*, ex. 7 at 3 nn. 3-4)

[2]     The Court has been referred the instant case for all purposes, up through the case dispositive motions deadline, by United States District Judge Richard G. Andrews. (D.I. 9)

[3]     In this matter, Shure also asserts a claim of infringement of the '493 patent, (D.I. 64 at ¶¶ 26-41), which is currently stayed, (D.I. 53; D.I. 326; D.I. 391), as well as other federal and state law tort claims, (D.I. 64). None of these other claims are at issue as to the Motion.

Any additional facts relevant to this Report and Recommendation will be discussed in Section III below.

**B.     Procedural History**

On July 18, 2019, Shure filed the instant action against ClearOne in this Court. (D.I. 1) Briefing on the instant Motion was completed on June 2, 2021. (D.I. 504) A 5-day trial is currently set to begin on November 1, 2021. (D.I. 62 at ¶ 16)

**II.     STANDARD OF REVIEW**

**A.     Summary Judgment**

The Court incorporates by reference its prior discussion of the legal standard for resolving summary judgment motions, found in its August 23, 2021 Report and Recommendation. (D.I. 535 at 3-4)

**B.     Infringement**

Design patent infringement is a question of fact that must be proven by the patentee by a preponderance of the evidence. *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 942 F.3d 1119, 1129 (Fed. Cir. 2019). Determining whether a design patent has been infringed is a two-part test; first, the court construes the claim to determine its meaning and scope, and second, the fact finder compares the properly construed claim to the accused design. *Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1341 (Fed. Cir. 2020).

The "ordinary observer" test is the sole test for determining whether a design patent has been infringed. *Id.* (citing *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008)). Under that test, infringement is found "[i]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to

be the other." *Id.* (quoting *Egyptian Goddess*, 543 F.3d at 670).  The United States Court of Appeals for the Federal Circuit has explained that in some cases, "the claimed design and the accused design will be sufficiently distinct that it will be clear without more that the patentee has not met its burden of proving the two designs would appear 'substantially the same' to the ordinary observer[.]" *Egyptian Goddess*, 543 F.3d at 678.  In other cases, "when the claimed and accused designs are not plainly dissimilar, resolution of the question whether the ordinary observer would consider the two designs to be substantially the same will benefit from a comparison of the claimed and accused designs with the prior art"; here, differences between the claimed and accused designs that might not be noticeable in the abstract can become significant when a hypothetical ordinary observer is conversant with the prior art.  *Id.*

With the ultimate burden of proving infringement resting with the patentee, an accused infringer may establish that summary judgment is proper either by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case.  *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001); *Nike, Inc. v. Sketchers U.S.A., Inc.*, Case No. LA CV17-08509 JAK (Ex), 2020 WL 10486482, at *4 (C.D. Cal. Oct. 26, 2020).  If the moving party meets this initial burden, the burden shifts to the party asserting infringement to set forth, by affidavit or as otherwise permitted under Rule 56, "'specific facts showing that there is a genuine issue for trial.'"  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted); *see also Nike, Inc.*, 2020 WL 10486482, at *4.

### III.    DISCUSSION

ClearOne moves for summary judgment of non-infringement of the '723 patent.  The crux of its argument is that Shure's evidence of infringement—which, according to ClearOne, must be

limited to the opinions of Shure's infringement expert, Paul Hatch, and to Shure's final infringement contentions—is legally insufficient and should be wholly discounted. (D.I. 444 at 2 & n.2) First, with regard to Mr. Hatch's opinions, ClearOne asserts that they violate the Court's claim construction and relevant law, and must therefore be discarded. (*Id.* at 7-11) Second, with regard to Shure's final infringement contentions (the "final contentions" or the "contentions"), ClearOne claims that they are insufficient to create a triable issue of fact regarding infringement. (*Id.* at 12)[4] The Court will discuss each ground in turn.

      A.      **Mr. Hatch's Infringement Opinions**

According to ClearOne, Mr. Hatch's infringement analysis is inconsistent with the Court's claim construction and the law in two ways: (1) it wrongly relies on the functional square shape of the claimed design; and (2) it improperly redefines the claim as a combination of features. (*Id.* at 8-11) Because of these errors, ClearOne asserts that Mr. Hatch's infringement analysis should simply not be credited. (*Id.* at 11)

      1.      **Mr. Hatch's References to the "Square Shape"**

With respect to ClearOne's first attack on Mr. Hatch's analysis, portions of Mr. Hatch's infringement analysis do indeed reference the "square shape" of the claimed design. For example, Mr. Hatch's opening expert report includes a table that "describes the scope of the design claimed in the '723 patent[.]" (D.I. 473, ex. A at ¶ 33) This table states that the "Claimed Design features a sleek, flat, *square shape*." (*Id.* at Fig. 1 (emphasis added); *see also id.* at Fig. 2 ("the Claimed Design features a flat *square shape*") (emphasis added); *id.* at Fig. 3 ("the Claimed Design features a clean, *square outer shape*" (emphasis added); *id.* at Fig. 4)

---

[4]      ClearOne's briefing also sets out the evidence that supports its position that the Accused Products do not infringe the '723 patent. (D.I. 444 at 2-6)

5

Additionally, in describing the Accused Products, Mr. Hatch explains that they all "feature a clean, *square outer shape*[.]" (*Id.* at ¶ 61 (emphasis added))  In his comparison of the Accused Products and the claimed design, Mr. Hatch opines that "[t]he above comparison shows a sleek, flat *square overall shape* featured in the Claimed Design that is also found in the Accused Products." (*Id.* at ¶ 87 (emphasis added); *see also id.* at ¶¶ 89, 112)  Finally, Mr. Hatch also points out that certain prior art references have a "flat *square shape*" (noting that this shape is similar to that in the claimed design and in the Accused Products).  (*Id.* at ¶¶ 100, 104 (emphasis added))

As was stated above, the Court's claim construction notes that "[t]he square shape of the claimed design is functional." (D.I. 359 at 25-26)  The Court reached this conclusion because the microphone array's outer square shape is designed to allow it to replace a standard ceiling tile in a standard ceiling grid.  (*Id.* at 7-11)  And as the Court explained in the claim construction R&R, (*id.* at 2-3), only the novel, ornamental features of the patented design are protected by a design patent, *see OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997), such that the scope of a design patent does not extend to any functional elements, *see Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316, 1320 (Fed. Cir. 2016); *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293-94 (Fed. Cir. 2010).

In light of this, ClearOne is correct that when Mr. Hatch refers to the overall/outermost square shape of the design (or references the square shape of the design generally, without qualifying that such references were not to the outermost square shape) in his expert reports, he improperly treats that aspect of the design as part of the claim's scope—when, in fact, the Court has ruled that the parties should not focus on this portion of the design in their infringement analysis.  (*See* D.I. 451, ex. 8 at ¶¶ 21, 33 (Table 2), 61 (Table 9), 87 (Table 11), 96, 100, 104,

112)[5]  Accordingly, the portions of these paragraphs referencing the "square shape" are

STRICKEN.[6]

But even having ruled that the above-referenced portions of Mr. Hatch's report are in contravention of the Court's claim construction and are thus stricken, the Court does not see why it cannot simply refuse to consider those excluded portions, and otherwise take into account the remainder of Mr. Hatch's opinions on infringement.

### 2. Mr. Hatch's Alleged Improper Redefinition of the Claim

As for ClearOne's other argument—i.e., that Mr. Hatch's infringement analysis improperly redefines the claim as a combination of features—ClearOne points to the portion of Mr. Hatch's opinion that asserts that:

> The overall visual impression of the Claimed Design—to the ordinary observer applying as much attention as such a purchaser would give and with knowledge of the prior art—is of (1) a square, flat face with a square perforation pattern, arranged angularly, (2) a gap around the perimeter of the perforations, and (3) a relatively slim profile with sides that taper inwards from the lower surface.

---

[5]  In its briefing, Shure drew a distinction between the "outermost square shape" of the claimed design and the "many other square elements [in the design] that have nothing to do with this function, including the flat square face [or 'square, flat face,' which the Court does not understand to be a reference to the outermost square shape, but instead to the element inside the outermost frame], the perforations arranged in largely a square shape on that face, the square-shaped gap around the perimeter of the perforations, and the backplate." (D.I. 473 at 3)  While the Court's construction did not expressly reference "outermost[,]" Shure is correct that it is the outermost square shape of the design that allows the array microphone to replace a standard ceiling tile.  Shure is also correct that there are other square elements of the design (referenced above) that are distinct from the outermost square shape of the claimed array microphone assembly.  For example, a few of the paragraphs of Mr. Hatch's report that ClearOne calls out refer to the "square, flat face" of the design. (*See, e.g.*, D.I. 451, ex. 8 at ¶¶ 40, 89 (*cited in* D.I. 444 at 8-9))  The Court does not strike these references.  However, the majority of Mr. Hatch's references to the design's square shape are pretty clearly to the "square *outer/overall*" shape; they do not appear to be directed to the *other* ornamental square elements that Shure is referring to in its briefing. (*See* D.I. 504 at 1)

[6]  ClearOne has separately filed a motion to exclude Mr. Hatch's infringement opinions on this ground (as well as on other grounds) (the "motion to exclude"). (*See* D.I. 446 at 1-2)  The Court thus rules on this portion of ClearOne's motion to exclude here.

7

(D.I. 473, ex. A at ¶ 40)  According to ClearOne, this definition improperly:  (1) converts the Court's claim construction into a detailed verbal description; (2) includes elements that are pervasive in the prior art; (3) turns the infringement test into an element-by-element comparison; and (4) completely fails to account for the back panel of the claimed design.  (D.I. 444 at 10-11)

With respect to ClearOne's first critique, the Court is not convinced that Mr. Hatch's "verbal description" of an overall visual impression of the claimed design is improper as a general matter.  As noted above, it is true that the Court's claim construction largely makes reference to the patent's figures, and does not describe in words the various aspects of the claimed ornamental design.  And to be sure, Mr. Hatch did use lots of words in describing what he believes is the overall visual impression of the claimed design.  But it is not as if the words he used explicitly *conflict* with anything in the Court's construction.  And the idea that a party cannot use descriptive words to refer to an overall visual impression of the claimed design does not make any sense.  Indeed, ClearOne seems to set forth its own overall visual impression of the claimed design—and it uses lots of its own descriptive words in doing so.  (*Id.* at 4-5; *see also* D.I. 504 at 2 (ClearOne acknowledging that it "is true that words can be used to describe the overall visual impression"))  After all, if Mr. Hatch did not explain his understanding of the overall visual impression of the claimed design, the ordinary observer analysis would be "inside the expert's head and immune from scrutiny." (D.I. 473 at 6)  Thus, the Court is not persuaded that this aspect of Mr. Hatch's infringement analysis is *per se* improper.  *Cf. In re Maxim Integrated Prods., Inc.*, Civil No. 12-945, 2015 WL 5311264, at *4 (W.D. Pa. Sept. 11, 2015) ("It is well-settled that an expert can offer an opinion on how a court's claim construction should be applied to the facts of a case, but cannot offer an opinion that contradicts or disregards a court's claim construction rulings.")

ClearOne's second concern is that Mr. Hatch's overall visual impression definition is improper because it includes elements that are pervasive in the prior art. (D.I. 444 at 10-11; D.I. 504 at 2-3) It is not disputed that the ordinary observer test may be conducted in light of the prior art. (D.I. 444 at 11; D.I. 473 at 7)[7] Here, Mr. Hatch's infringement analysis includes a three-way comparison between the claimed design, the Accused Products and the prior art. (D.I. 473, ex. A at ¶¶ 90-113) This comparison does take into account how certain elements of Mr. Hatch's description of the overall visual impression of the claimed design are found in the Accused Products and in the prior art. (*See, e.g.*, *id.* at ¶¶ 95-97, 99-101, 103-05, 107-110) Mr. Hatch also: (1) asserts that certain elements of the prior art are not found in the claimed design or the Accused Products; and (2) opines that certain of the elements found in the prior art (but not in the claimed design or the Accused Products) would be "dominant visual elements that would affect the visual impression of an ordinary observer[,]" such that the Accused Products would be seen as closer to the claimed design than the prior art. (*See, e.g.*, *id.*)

The fact that Mr. Hatch's infringement analysis considers the presence of some elements in the claimed design/Accused Products that are arguably found in the prior art does not require the Court to give no credit to Mr. Hatch's infringement opinions. As Shure points out, it is not the law that the overall visual impression of a design may include only novel elements. (D.I. 473 at 6) Indeed, the Federal Circuit has explained that "[i]f the claimed design consists of a combination of old features that creates an appearance deceptively similar to the accused design,

---

[7] *See also Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010) ("To show infringement under the proper test, an ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design."); *Egyptian Goddess*, 543 F.3d at 678 ("[W]hen the claimed and accused designs are not plainly dissimilar, resolution of the question whether the ordinary observer would consider the two designs to be substantially the same will benefit from a comparison of the claimed and accused designs with the prior art[.]").

even to an observer familiar with similar prior art designs, a finding of infringement would be justified." *Egyptian Goddess*, 543 F.3d at 677–78. So nothing that Mr. Hatch did here regarding the prior art appears to violate the law.

ClearOne's third critique is that Mr. Hatch's overall visual impression definition, in reciting a combination of features, improperly converts the infringement test into "an element-by-element comparison." (D.I. 444 at 11; *see also* D.I. 504 at 2) And the Federal Circuit has explained that the infringement test analyzes "the design as a whole from the perspective of an ordinary observer" instead of making an "element-by-element comparison." *Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d 1365, 1372 (Fed. Cir. 2006). But the Court is not persuaded that Mr. Hatch has violated this rule. Even though he at times references or focuses on particular features of the claimed design, Mr. Hatch also explains how those features impact the overall visual impression. (D.I. 473, ex. A at ¶¶ 38, 88) His analysis then appropriately compares overall visual impressions of the claimed design and the Accused Products (as well as the prior art). (*Id.* at ¶¶ 61, 86-113)

ClearOne's fourth concern—i.e., that the combination of features that Mr. Hatch uses to determine infringement is incomplete, as it fails to account for the back panel of the claimed design—is also not a winning one at this stage. (D.I. 444 at 11; D.I. 504 at 1) While Mr. Hatch's definition of the overall visual impression of the claimed design does not highlight elements on the design's back panel, (D.I. 473, ex. A at ¶ 40), his report does elsewhere discuss the back panel, explaining how and why certain of its details do not impact the overall visual impression, (*id.* at ¶¶ 34, 38). And Mr. Hatch's analysis includes comparison photographs of the back panels of the claimed design and Accused Products (as well as the prior art), along with discussion of those photographs. (*Id.* at ¶¶ 61, 87, 94, 98, 102, 106) In the Court's view, if Mr.

Hatch's relative lack of focus on the back panel is a problem, it is a weakness that ClearOne should note to a jury—not a reason why a jury trial should be entirely avoided.

### 3. Conclusion

In sum, even if some portions of Mr. Hatch's infringement analysis do wrongly focus on the outermost square shape of the claimed design, for the reasons set out above, the Court does not find the remainder of Mr. Hatch's analysis to be legally problematic. Therefore, the Court will: (1) disregard those portions of Mr. Hatch's reports that improperly focus on the outermost square shape of the claimed design; and (2) otherwise consider the remainder of Mr. Hatch's opinions when deciding ClearOne's Motion.

### B. Shure's Final Infringement Contentions

ClearOne's position with regard to Shure's final contentions (served on November 11, 2020) is that they fail to create a triable issue of fact with respect to infringement. (D.I. 444 at 12) The final contentions are not lengthy, but they include: (1) a chart depicting the 6 figures of the '723 patent, 6 photographs of the BMA CT that correspond to the views of each of the '723 patent's figures, and 4 photographs of the BMA 360 that correspond to all but Figures 4 and 6 of the '723 patent; (2) deposition testimony from ClearOne's Chief Executive Officer and its Senior Vice President of Research & Development, which is purportedly relevant to how ClearOne copied Shure's claimed design; and (3) identification of certain prior art references. (D.I. 451, ex. 3)

In its opening brief, ClearOne suggested that there were two particular problems with Shure's final contentions: (1) they were devoid of any evidence to support Shure's position that the ordinary observer is an "'IT specialist'"; and (2) the above-referenced deposition testimony (regarding how ClearOne copied the claimed invention) is "out of context" and irrelevant. (D.I.

11

444 at 12) But as to the ordinary observer issue, Shure has *additional* evidence of record—i.e., evidence from Mr. Hatch (via his expert reports on infringement)—supporting Shure's view as to who is the ordinary observer. (*See, e.g.*, D.I. 473, ex. A at ¶¶ 77-83)[8] As for the deposition testimony, ClearOne provides no argument as to why it is "out of context." And whether that testimony is relevant to infringement or not has no impact on the Court's view as to whether there is a genuine dispute of material fact regarding the infringement issue (there is, even if one does not consider this testimony).

### C.     Conclusion

ClearOne's opening brief steps through the evidence that it (via its expert, Joel Delman) argues supports a finding of non-infringement. (D.I. 444 at 2-6 (citing D.I. 451, ex. 7)) There, ClearOne notes that there are aspects of the claimed design (i.e., how it has side rails with mitered corners on the front face, or how it has a particular type of "framed look" on the front face, or the fact that there is a logo gap in the top left corner of the front face, or that its side

---

[8] It could be that ClearOne was suggesting that Mr. Hatch's opinion on who is the ordinary observer should be discounted altogether, because it goes beyond the scope of what was included in Shure's final contentions. But if ClearOne's argument is that Shure's final contentions were deficient because they did not make reference to who is the ordinary observer, the Court agrees with Shure that this is an issue that ClearOne "should have raised . . . during discovery." (D.I. 473 at 9) Alternatively, if ClearOne's argument is that Mr. Hatch's observations about the ordinary observer in his expert report should be stricken (because they go beyond the content of Shure's final contentions), then ClearOne should have filed a motion to strike or exclude these observations on this ground. The point is that this is not an issue that should be raised for the first time in a summary judgment motion. *Cf. Intell. Ventures I LLC v. AT&T Mobility LLC*, C.A. No. 13-1668-LPS, 2017 WL 658469, at *3 (D. Del. Feb. 14, 2017) (granting a motion to strike "legally deficient and untimely-served contentions" while noting that the decision "does not grant summary judgment of non-infringement"); *see also Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*, Case No. 15 C 1067, 2018 WL 1071443, at *4 (N.D. Ill. Feb. 26, 2018) (construing a motion to strike final infringement contentions as a motion to compel amendment to the infringement contentions because such contentions "are a discovery tool" and the defendant will have "ample opportunity" to argue that the plaintiff's infringement theory is baseless at summary judgment or trial).

profile has a "smooth rounded surface," or that there is a lack of certain detail on its back panel) that do appear to differ from the design of the Accused Products.

But Shure sets out *competing* evidence on that front, primarily in the form of Mr. Hatch's expert reports on infringement. (*See* D.I. 473 at 7-9 (citing *id.*, exs. A-C)) Not surprisingly, Mr. Hatch tends to focus on the apparent similarities between the claimed design and the Accused Products (i.e., a square perforation pattern that leaves a gap around the perimeter of the perforations, or a "slim profile" at the bottom of the design that turns inward in some way) and tends to minimize the differences that were highlighted by Mr. Delman. (*See, e.g., id.*, ex. A at ¶¶ 86-89) And, as noted above, the Court disagrees with ClearOne's argument that Mr. Hatch's expert reports should be wholly thrown out or discredited. So it has to consider Mr. Hatch's opinions.

In the end, whether there is infringement will require a factfinder to make lots of different judgment calls about disputed facts—decisions about who the ordinary observer is, or about what would really matter to that observer with regard to the overall visual impression given by the claimed design and the Accused Products, or about which expert is more credible. And so there is a genuine dispute of material fact as to infringement, which means that summary judgment of non-infringement is not warranted. *See, e.g.*, *Kao v. Snow Monster Inc.*, CV 17-08934-RSWL-GJSx, 2019 WL 2164192, at *4 (C.D. Cal. May 16, 2019) (emphasizing that "a conclusion about what a reasonable juror would think in viewing the two designs is difficult to make given the factual nature of this inquiry" and finding that "there is a triable issue as to whether . . . the Accused Product [is] dissimilar [to the claimed design] under the ordinary observer test"); *Unique Indus., Inc. v. 965207 Alberta Ltd.*, 843 F. Supp. 2d 86, 95–96 (D.D.C. 2012); *Kellogg v. Nike, Inc.*, 592 F. Supp. 2d 1166, 1172 (D. Neb. 2008).

## IV. CONCLUSION

For the foregoing reasons, the Court recommends that ClearOne's Motion be DENIED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. Any objections to this Report and Recommendation should be filed by **September 24, 2021**; any responses should be filed by **October 1, 2021**. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated: September 17, 2021

*Christopher J. Burke*
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE