## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| **SHURE INCORPORATED,** | ) | |
| **and** | ) | |
| **SHURE ACQUISITION** | ) | **C.A. No.: 19-1343-RGA-CJB** |
| **HOLDINGS, INC.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CLEARONE, INC.** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>JOINT [PROPOSED] FINAL JURY INSTRUCTIONS</u>

# TABLE OF CONTENTS

**Page**

I. FINAL INSTRUCTIONS .................................................................................................... 1

A. General Information [AGREED] .......................................................................... 1

    1. Introduction ................................................................................................. 1

    2. Juror's Duties [AGREED] ........................................................................... 2

    3. Burdens of Proof [AGREED] ...................................................................... 3

    4. Evidence Defined [AGREED] ..................................................................... 5

    5. Consideration of Evidence [AGREED] ....................................................... 7

    6. Direct and Circumstantial Evidence [AGREED] ....................................... 8

    7. Statements of Counsel [AGREED] ............................................................. 9

    8. Credibility of Witnesses [AGREED] ........................................................ 10

    9. Number of Witnesses [AGREED] ............................................................. 12

    10. Expert Witnesses [AGREED] ................................................................... 13

    11. Demonstrative Exhibits [AGREED] ......................................................... 14

    12. Use of Notes [AGREED] ........................................................................... 15

B. PATENT CLAIMS [AGREED] .......................................................................... 16

    1. Parties ....................................................................................................... 16

    2. Patent Contentions ................................................................................... 16

C. THE PATENT LAWS [AGREED] ..................................................................... 18

    1. Design Patents—Interpretation of a Design Patent Claim [CONTESTED] ............................................................................................. 19

    2. Design Patents—Burden of Proof [AGREED] ......................................... 22

    3. Design Patents—Infringement Generally [AGREED] ............................. 23

4.        Design Patents—Infringement ................................................................. 24

5.        Design Patent—Ordinary Observer [SHURE PROPOSAL] ................ 30

Design Patent—Ordinary Observer [CLEARONE PROPOSAL], ................... 31

6.        Design Patent Invalidity—Priority Date [DISPUTED] ........................ 34

7.        Patent Invalidity –Prior Art Defined [AGREED] .................................. 37

8.        Patent Invalidity—Anticipation [AGREED] ......................................... 38

9.        Patent Invalidity—Obviousness [DISPUTED] ...................................... 39

1.        Invalidity—Indefiniteness and Lack of Enablement [AGREED] .......... 42

D.     WILLFULNESS CONTENTIONS [SHURE CONTESTED INSTRUCTION] ............ 44

10.     PATENT DAMAGES [AGREED] ....................................................... 46

1.        Patent Damages Generally [DISPUTED] .............................................. 47

1.     Date Damages Begin [AGREED] ......................................................... 49

2.        Total Profits—Entitlement .................................................................... 50

2.        Reasonable Royalty—Entitlement [SHURE CONTESTED INSTRUCTION] .................................................................................... 54

3.        Reasonable Royalty--Measure of Damages [SHURE CONTESTED INSTRUCTION] .................................................................................... 55

1.        Reasonable Royalty—Factors for Determining [SHURE CONTESTED INSTRUCTION] .................................................................................... 57

16.    Reasonable Royalty—Availability of Non-Infringing Substitutes [SHURE CONTESTED INSTRUCTION]] ................................................................ 60

E.     NON-PATENT CONTENTIONS ...................................................................... 61

17.    Tortious Interference with Prospective Business Relations [CLEARONE CONTESTED PROPOSAL] ................................................................. 63

18.    Unfair Competition under Delaware Common Law [CLEARONE PROPOSAL] ........................................................................................... 66

Unfair Competition under Delaware Common Law [SHURE PROPOSAL] .... 66

1.        Unclean Hands [SHURE CONTESTED INSTRUCTION] ................... 67

    2.      Preliminary Injunctions [CLEARONE CONTESTED INSTRUCTION] ................................................................................................ 68

    3.      Contempt [CLEARONE CONTESTED INSTRUCTION].................... 69

    4.      Agency [CLEARONE CONTESTED INSTRUCTION] ...................... 70

G. NON-PATENT DAMAGES [AGREED] ............................................................ 71

    a.      Uncertainty Caused by Wrongful Conduct [CLEARONE CONTESTED INSTRUCTION] ..................................................................................... 72

    b.      Damages for Tortious Interference with Prospective Business Relations ................................................................................................ 73

    c.      Delaware Unfair Competition Damages [AGREED] ............................ 74

F.      DELIBERATION AND VERDICT ................................................................. 75

    1.      Introduction [AGREED].................................................................. 75

    2.      Unanimous Verdict [AGREED] ............................................................ 76

    3.      Duty to Deliberate [AGREED] .............................................................. 77

    4.      Social Media [AGREED] ...................................................................... 78

    5.      Court Has No Opinion [AGREED] ....................................................... 79

I.   **FINAL INSTRUCTIONS**

A.  **General Information [AGREED]**

1.  **Introduction**

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain some rules that you must use in evaluating particular testimony and evidence. Then I will explain the positions of the parties and the law you will apply in this case. Finally, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say. In following my instructions, you must follow all of them and not single out some and ignore others. They are all important.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this case.

**Sources**: *E.I. Du Pont Nemours and Co. v. Unifrax I LLC*, No. 14-CV-1250-RGA, D.I. 336 (D. Del. May 15, 2017) (read in open court); *BioRad Labs., Inc. and the University of Chicago v. 10X Genomics, Inc.*, No. 15-cv-152-RGA. D.I. 470 (D. Del. Nov. 13, 2018) (read in open court).

## 2.  **Juror's Duties [AGREED]**

You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide, under the appropriate burden of proof, which party should prevail on each of the claims and defenses presented. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

**Sources**: Final Jury Instructions (D.I. 549) at 9, *Ingevity Corp. v. BASF Corp.,* No. 18-CV-1391-RGA, (D. Del. Sep. 14, 2021); *E.I. Du Pont Nemours and Co. v. Unifrax I LLC*, No. 14-CV-1250-RGA, D.I. 336 (D. Del. May 15, 2017) (read in open court); *BioRad Labs., Inc. and the University of Chicago v. 10X Genomics, Inc.*, No. 15-cv-152-RGA. D.I. 470 (D. Del. Nov. 13, 2018) (read in open court).

### 3.  **Burdens of Proof [AGREED]**

In any civil case, facts must be proven by a required standard of evidence known as the burden of proof. There are two different burdens of proof relevant to this case. The first is called the preponderance of the evidence. The second is called clear and convincing evidence.

Shure has the burden of proving its patent infringement claim by a preponderance of the evidence. Likewise, ClearOne has the burden of proving its claims for tortious interference with prospective business relations and unfair competition by the same burden: a preponderance of the evidence.

"Proof by a preponderance of the evidence" means evidence which, as a whole, shows that something is more probable than not. To put it differently, if you were to put the evidence favorable to the party bearing the burden of proof and the evidence favorable to the other party on opposite sides of the scales, the party with the burden would need to make the scales tip somewhat to its side in order to prevail on its claim.

In this case, ClearOne not only denies infringement, but also contends that the asserted claim of the '723 patent is invalid. To prove that the asserted claim of the 723 patent is invalid, ClearOne must meet a different standard, called "clear and convincing evidence."

"Proof by clear and convincing evidence" is evidence that shows that the truth of a factual contention is highly probable. Proof by clear and convincing evidence is a higher burden of proof than proof by a preponderance of the evidence. However, neither standard of evidence requires proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

In determining whether a party has met their burden of proof, unless otherwise instructed, you may consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

**Shure Sources**: *E.I. Du Pont Nemours and Co. v. Unifrax I LLC*, No. 14-CV-1250-RGA, D.I. 325 (May 15, 2017) (read in open court); *Bayer Healthcare LLC v. Baxalta Inc*., No. 16-CV-1122-RGA, D.I. 364 (Jan. 28, 2019) (read in open court); *Alarm.com, Inc. v. Securenet Tech. LLC*, No. 15-CV-807-RGA-CJB, D.I. 251 (Jan. 28, 2019) (read in open court).

**ClearOne Sources**: Jury Instructions (D.I. 240) at 7, *U.S. Bank Nat'l Ass'n v. Gunn*, No. 22-cv-01155-RGA (D. Del. Nov. 19, 2014).

## 4.  <u>Evidence Defined [AGREED]</u>

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, including deposition testimony that was played to you, the documents, exhibits, and physical exhibits that I allowed into evidence, and any facts that are stipulated—that is, formally agreed to by the parties.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts. Their questions and objections are not evidence. My legal rulings are not evidence. My comments and questions are not evidence. Any testimony I told you to disregard is not evidence.

During the trial I did not let you hear the answers to some of the questions that the lawyers asked. I also ruled that you could not see some of the exhibits that the lawyers wanted you to see. And sometimes I ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all of these things. Do not even think about them. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way. [**IF APPLICABLE**: You will recall that during the course of the trial I instructed you that I admitted certain testimony and certain exhibits for a limited purpose. You may consider such evidence only for the specific limited purposes for which it was admitted.]

Make your decision based only on the evidence, as I have defined it here, and nothing else. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court

influence your decision in any way.

**Shure Sources**: *E.I. Du Pont Nemours and Co. v. Unifrax I LLC*, No. 14-CV-1250-RGA, D.I. 336 (D. Del. May 15, 2017) (read in open court); Final Jury Instructions (D.I. 549) at 4, *Ingevity Corp. v. BASF Corp.,* No. 18-CV-1391-RGA, (D. Del. Sep. 14, 2021).
**ClearOne Source**: Jury Instructions (D.I. 240) at 7, *U.S. Bank Nat'l Ass'n v. Gunn*, No. 22-cv-01155-RGA (D. Del. Nov. 19, 2014).

**5.  <u>Consideration of Evidence</u> [AGREED]**

You should use your common sense in weighing the evidence. Consider the evidence in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

**Source**: *E.I. Du Pont Nemours and Co. v. Unifrax I LLC*, No. 14-CV-1250-RGA, D.I. 336 (D. Del. May 15, 2017) (read in open court); Final Jury Instructions (D.I. 549) at 4, *Ingevity Corp. v. BASF Corp.,* No. 18-CV-1391-RGA, (D. Del. Sep. 14, 2021); *Gavrieli v. Soto Massini*, C.A. No. 18-462-MN (D. Del. May 3, 2019), D.I. 141 (Final Jury Instructions) at Instruction No. 1.5.

**6.  <u>Direct and Circumstantial Evidence [AGREED]</u>**

There are two kinds of evidence: direct evidence and circumstantial evidence. Direct evidence is direct proof of a fact, such as the testimony of an eyewitness. For example, if a witness testified that she saw it raining outside, and you believed her, that would be direct evidence that it was raining.

Circumstantial evidence is indirect proof of a fact—in other words, proof of facts from which you may infer or conclude that other facts exist. For example, if someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

The law makes no distinction between the weight that you should give to either direct or circumstantial evidence, nor does it say that one type of evidence is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

**Source**: *E.I. Du Pont Nemours and Co. v. Unifrax I LLC*, No. 14-CV-1250-RGA, D.I. 336 (D. Del. May 15, 2017) (read in open court); *Gavrieli v. Soto Massini*, C.A. No. 18-462-MN (D. Del. May 3, 2019), D.I. 141 (Final Jury Instructions) at Instruction No. 1.4.

**7.  <u>Statements of Counsel [AGREED]</u>**

A further word about statements and arguments of counsel: The attorneys' statements and arguments are not evidence. Instead, their statements and arguments are intended to help you review the evidence presented. If you remember the evidence differently from the attorneys, you should rely on your own recollection.

**Source**: *Ingevity Corp. v. BASF Corp.,* No. 18-CV-1391-RGA, (D. Del. Sep. 14, 2021).

## 8.  <u>Credibility of Witnesses [AGREED]</u>

You are the sole judges of each witness's credibility. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all. But if you cannot do this, then it is your duty and privilege to believe the portions of testimony that, in your judgment, are most believable and disregard any testimony that, in your judgment, is not believable.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there is evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something that was different from the testimony he or she gave at the trial. You have the right to distrust such witness's testimony in other particulars and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

This instruction applies to all witnesses, including expert witnesses and witnesses that provided testimony by deposition.

**Source**: *E.I. Du Pont Nemours and Co. v. Unifrax I LLC*, No. 14-CV-1250-RGA, D.I. 336 336 (D. Del. May 15, 2017) (read in open court); *Ingevity Corp. v. BASF Corp.,* No. 18-CV-1391-RGA, (D. Del. Sep. 14, 2021); *Gavrieli v. Soto Massini*, C.A. No. 18-462-MN (D. Del. May 3, 2019), D.I. 141 (Final Jury Instructions) at Instruction No. 1.7.

## 9.  <u>Number of Witnesses [AGREED]</u>

The weight of the evidence to prove a fact does not necessarily depend on the number of witnesses who testify. What is more important is how believable the witnesses were, and how much weight you think the testimony deserves.

**Source***: E.I. Du Pont Nemours and Co. v. Unifrax I LLC*, No. 14-CV-1250-RGA, D.I. 336 (D. Del. May 15, 2017) (read in open court); Jury Instructions (D.I. 240) at 10, *U.S. Bank Nat'l Ass'n v. Gunn*, No. 22-cv-01155-RGA (D. Del. Nov. 19, 2014).

## 10. <u>Expert Witnesses [AGREED]</u>

During the trial, you heard testimony from expert witnesses. When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field—called an expert witness—is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness's testimony, it is up to you to decide whether to rely upon it.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. The fact that an expert states a fact or an opinion does not mean that the testimony is correct or supported by the factual evidence. Expert testimony is a guide to interpreting the evidence. What the facts are is for you to decide.

Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case. You are free to accept or reject the testimony of experts, just as with any other witness.

**Sources**: *Ingevity Corp. v. BASF Corp.,* No. 18-CV-1391-RGA, (D. Del. Sep. 14, 2021); *E.I. Du Pont Nemours and Co. v. Unifrax I LLC*, No. 14-CV-1250-RGA, D.I. 336 (D. Del. May 15, 2017) (read in open court).

**11. <u>Demonstrative Exhibits [AGREED]</u>**

During the course of the trial, you have seen many exhibits. Many of these exhibits were admitted as evidence. You will have these admitted exhibits in the jury room for your deliberations. The other exhibits, including slides, charts and animations presented by attorneys and witnesses, were offered to help illustrate the testimony of the various witnesses. These illustrations, called "demonstrative exhibits," have not been admitted as evidence, are not evidence, and should not be considered as evidence. Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibits that is the evidence in this case.

**Source**: *E.I. Du Pont Nemours and Co. v. Unifrax I LLC*, No. 14-CV-1250-RGA, D.I. 336 (D. Del. May 15, 2017) (read in open court); *Ingevity Corp. v. BASF Corp.,* No. 18-CV-1391-RGA, (D. Del. Sep. 14, 2021).

**12. Use of Notes [AGREED]**

You may use notes taken during trial to assist your memory. However, you should use caution in consulting your notes. There is always a tendency to attach undue importance to matters that you have written down. Some testimony that is considered unimportant at the time presented, and thus not written down, takes on greater importance later on in the trial in light of all the evidence presented. Therefore, you are instructed that your notes are only a tool to aid your own individual memory, and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

**Source**: *E.I. Du Pont Nemours and Co. v. Unifrax I LLC*, No. 14-CV-1250-RGA, D.I. 336 (D. Del. May 15, 2017) (read in open court) (verbatim); *Gavrieli v. Soto Massini*, C.A. No. 18-462-MN (D. Del. May 3, 2019), D.I. 141 (Final Jury Instructions) at Instruction No. 1.11.

### B.  PATENT CLAIMS [AGREED]

As I did at the start of the case, I will give you a summary of each side's contentions. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions. I will begin with the patent portion of this case.

### 1.  Parties

As I previously told you, the Plaintiffs in this case are Shure Incorporated and Shure Acquisition Holdings, Inc., whom I may refer to collectively as "Shure" or "Plaintiffs." Shure owns design patent U.S. Patent No. D865,723. This design patent may also be referred to as "the '723 Patent," "Shure's design patent," or "the asserted design patent." ClearOne, Inc., whom I may refer to as "ClearOne" or "Defendant," is accused of infringing the '723 Patent.

### 2.  Patent Contentions

Shure contends that certain ClearOne products, namely the BMA CT, BMA CTH, COLLABORATE Versa Pro CT, COLLABORATE Versa Lite CT, COLLABORATE Versa Room CT, BMA 360, Aura XCeed, and BMA CTX —referred to collectively as the "Accused Products" or "BMA Products"—infringe the asserted design patent. ClearOne denies that it has infringed the '723 Patent and contends that the patent is invalid. I will now summarize the patent issues that you must decide and for which I will provide instructions to guide your deliberations.

You must decide the following three main issues for the patent claim:

1. Whether Shure has proven by a preponderance of the evidence that ClearOne's Accused Products infringe the ornamental design in the sole claim of the '723 Patent.

2. Whether ClearOne has proven by clear and convincing evidence that the '723 Patent is invalid.

3. What amount of damages or compensation, if any, Shure has proven.

**Source**: 2018 AIPLA Model Patent Jury Instructions, Section V(1); *Gavrieli v. Soto Massini*, C.A. No. 18-462-MN (D. Del. May 3, 2019), D.I. 141 (Final Jury Instructions) at Instruction No. 2.1-3.

## C.  <u>THE PATENT LAWS</u> [AGREED]

At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case. I will now give you more detailed instructions about the design patent laws that specifically relate to the asserted design patent in this case.  If you would like to review my instructions at any time during your deliberations, you will have your copy available to you in the jury room.

**Source:** *Gavrieli v. Soto Massini*, C.A. No. 18-462-MN (D. Del. May 3, 2019), D.I. 141 (Final Jury Instructions) at Instruction No. 3.2

**1.**   **Design Patents—Interpretation of a Design Patent**
**Claim [CONTESTED]**

As I have previously instructed, there are several types of patents granted by the U.S Patent and Trademark Office, including utility patents and design patents. Shure's '723 Patent asserted in this case is a design patent.

Before you decide whether ClearOne has infringed Shure's asserted design patent, or whether the design patent is invalid, you will have to understand the design patent claim.

A design patent can only have one claim. The scope of the claim encompasses the design's visual appearance as a whole, as shown in all the figures and described in the figure descriptions. Each design patent contains multiple drawings to illustrate the claimed design. The claimed design does not cover a general design concept, and is not limited to isolated features of the drawings. The scope of the claim of a design patent covers the purely ornamental features of the design and the ornamental aspects of the functional features of the design. [**SHURE PROPOSAL**: Those purely ornamental features and ornamental aspects of the functional features should be the focus of your infringement comparison.] [**CLEARONE PROPOSAL:** Features that are determined to be functional are not included within the scope of the claim.][1,2]  Here, the Court has determined that

---

[1] [**SHURE STATEMENT**: Shure opposes this language as an incorrect statement of law. It is not appropriate to change the scope of the claim based on elements that are determined to be functional during claim construction. "[D]esign patents protect the overall ornamentation of a design, not an aggregation of separable elements. *Richardson,* 597 F.3d at 1295 (noting that "discounting of functional elements must not convert the overall infringement test to an element-by-element comparison"). By eliminating structural elements from the claim, the district court improperly converted the claim scope of the design patent from one that covers the overall ornamentation to one that covers individual elements." *Sport Dimension v. Coleman Co., Inc.* 820 F.3d 1316, 1323 (Fed. Cir. 2016).]

[2] [**CLEARONE'S STATEMENT**: Contrary to Shure's suggestion, this language is correct.  *See* D.I. 545 at 6-7 (striking references to the overall square shape of the design from Mr. Hatch's expert report because "only the novel, ornamental features of the patented design are protected by a design patent," and "[Mr. Hatch] improperly treats that aspect of the design as part of the claim's

19

the claim of the '723 patent means the following:

> "The ornamental design for an array microphone assembly, as shown in the solid lines and associated claimed surfaces of Figures 1-6 and described in the specification of the '723 patent. The broken lines in Figures 1-6 of the '723 patent form no part of the claimed design. The square shape of the claimed design is functional."

[**CLEARONE PROPOSAL**: In other words, the squareness of the device is not a feature that is within the scope of Shure's design patent claim, and should not be considered in your evaluation of patent infringement. The fact that both the claimed design and the accused products have an overall square shape is not a similarity that can be factored into your analysis, because they have that square shape for a *functional* reason, and design patent claims can only cover ornamental, not

---

scope—when, in fact, the Court has ruled that the parties should not focus on this portion of the design in their infringement analysis."); *Richardson v. Stanley Works*, 584 F.3d 1288, 1293 (Fed. Cir. 2010) ("Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent."); *id.* at 1294 ("[I]t would indeed be improper to allow" a design patent to "include[] utilitarian elements" in the "claim scope."; *id.* at 1293-94 (the "district court here properly factored out the functional aspects of Richardson's design as part of its claim construction."); *id.* (scope of a design patent should be "limited to [ornamental] aspects alone and does not extend to any functional elements of the claimed article.")  Shure's citation to *Sport Dimension* (which cited and discussed *Richardson* approvingly) is not to the contrary.  In that case, the district court was faulted for concluding that armbands to a flotation device were functional, and then disregarding the shape of those armbands altogether.  *Sport Dimension*, 820 F.3d at 1318-22.  In other words, the district court in *Sport Dimension* disregarded more than it should have in its functionality analysis.  Here, in contrast, precisely the shape of the device *is what is* functional in this case, so it is proper to disregard that shape.]

functional, aspects of a design.][3,4]

This definition of the '723 patent's claim and a copy of the '723 patent are included in your jury

binders.

**Sources:** *Gavrieli v. Soto Massini*, C.A. No. 18-462-MN (D. Del. May 3, 2019), D.I. 141 (Final Jury Instructions) at Instruction No. 3.3; Edward D. Manzo, PATENT JURY INSTRUCTION HANDBOOK § 6:3 – Design patent claim instruction, direct, inducing, and willful infringement, invalidity for anticipation, obviousness, lack of ornamentality, damages of lost profits and reasonable royalty (N.D. Cal. 2012), discussing Final Jury Instructions entered in *Apple, Inc. v. Samsung Electronics, Co., Ltd.*, No. 3:10-cv-891-J-37JBT (N.D. Cal.).

---

[3] D.I. 545 at 6-7 (striking references to the overall square shape of the design from Mr. Hatch's expert report because "only the novel, ornamental features of the patented design are protected by a design patent," and "[Mr. Hatch] improperly treats that aspect of the design as part of the claim's scope—when, in fact, the Court has ruled that the parties should not focus on this portion of the design in their infringement analysis."); *Richardson v. Stanley Works*, 584 F.3d 1288, 1293 (Fed. Cir. 2010) ("Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent."); *id.* at 1294 ("[I]t would indeed be improper to allow" a design patent to "include[] utilitarian elements" in the "claim scope."); *id.* at 1293-94 (the "district court here properly factored out the functional aspects of Richardson's design as part of its claim construction."); *id.* (scope of a design patent should be "limited to [ornamental] aspects alone and does not extend to any functional elements of the claimed article.").

[4] Shure opposes this proposal because it is merely ClearOne's further interpretation of the Court's clear construction. The precise language the Court used is quoted above and does not need additional commentary by ClearOne as to what it means. Shure incorporates by reference its footnote material above in this section as well.

## 2.  <u>Design Patents—Burden of Proof [AGREED]</u>

To prove that ClearOne has infringed Shure's design patent, Shure must prove by a preponderance of the evidence that ClearOne infringed the patent.

**Source**: *Gavrieli v. Soto Massini*, C.A. No. 18-462-MN (D. Del. May 3, 2019), D.I. 141 (Final Jury Instructions) at Instruction 3.4.

### 3.  <u>Design Patents—Infringement Generally [AGREED]</u>

I will now instruct you as to the rules you must follow when deciding whether Shure has proven that ClearOne has infringed Shure's design patent.

The United States' patent law gives the owner of a valid design patent the right to exclude others from importing, making, using, offering to sell, or selling the patented designs within the United States during the term of the patent. Any person or company that has engaged in any of those acts without the design patent owner's permission infringes the patent.

Here, Shure alleges that ClearOne infringes Shure's design patent. Shure bears the burden of proving by a preponderance of the evidence that its design patent is infringed. Therefore, you, the jury, must determine infringement for the asserted design patent.

**Shure Source**: *Gavrieli v. Soto Massini*, C.A. No. 18-462-MN (D. Del. May 3, 2019), D.I. 141 (Final Jury Instructions) at Instruction 3.5 (verbatim).

#### 4.  Design Patents—Infringement

The test for infringement of a design patent is whether the overall appearance of the claimed design and the accused products are substantially the same in the eyes of the ordinary observer, giving such attention as a purchaser usually gives, and the resemblance between the two designs is such that the ordinary observer would be deceived into believing the accused design is the same as the patented design, such that he or she would mistakenly purchase one design, supposing it to be the other. [**SHURE PROPOSAL**: The ordinary observer is the principal purchaser of the Accused Products.] [**CLEARONE PROPOSAL**: The ordinary observer is the principal purchaser of the products embodying the patent and the Accused Products][5,6].

If you find by a preponderance of the evidence that the ordinary observer would consider the

---

[5] The ordinary observer test is directed to whether "in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other. *Gorham Mfg. Co. v. White*, 81 U.S. 511, 528 (1871).  For the purposes of that test, ordinary observers are "the principal purchasers of the articles to which designs have given novel appearances, and if they are misled, and induced to purchase what is not the article they supposed it to be..." *Id.*  Necessarily, then, the "articles to which designs have been given novel appearances" are both the Accused Products and the plaintiffs' embodying products (to the extent such exist, which, in this case, they do).  *Id.*; *see also KeyStone Retaining Wall Systems, Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1451 (Fed. Cir. 1993) ("[T]he 'ordinary observer' for the purpose of the block design patent is a purchaser of the patented block, not of the unpatented wall.").  Indeed, in *Goodyear*, cited by Shure below, the Federal Circuit held that the "ordinary observer" was a trucker or truck fleet operator, because "both the accused tire and the [patentee's] commercial embodiment are truck tires."  *Goodyear Tire & Rubber v. Hercules Tire & Rubber*, 162 F.3d 1113, 1117 (Fed. Cir. 2006).

[6] Shure agrees with the first part of this sentence, but disagrees with the "of the products embodying the patent" addition. The ordinary observer is defined as the purchaser of the product accused on infringement, in other words, the product to which the claimed design is *applied. See Gorham Mfg. Co. v. White*, 81 U.S. 511 (1871) (referring to the "principal purchasers of the articles to which designs have given novel appearances, and if they are misled, and induced to purchase what is not the article they supposed it to be..."); *Goodyear Tire & Rubber v. Hercules Tire & Rubber*, 162 F.3d 1113, 1117 (Fed. Cir.) ("The accused tire, the Hercules Power Trac, is a truck tire. The district court correctly invoked the ordinary trucker or fleet operator who purchases truck tires, as the person from whose viewpoint deceptive similarity to the '080 design is determined.").

overall appearance of the accused products to be substantially the same as the overall appearance of the claimed design, and that the Accused Products were made, used, sold, offered for sale, or imported within the United States, you must find that the accused products infringed the claimed design. When considering the overall appearance of the claimed design and the accused products, you must consider the entire claimed design as depicted in the drawings. You should not give more or less weight to aspects of the design because they are on the front, back, or side of the design, as long as those aspects are depicted in the drawings that define the claimed design. That is, you should consider the entirety of the claimed design, including elements on all sides of the device, if all sides are present in the drawings. This analysis is not limited to those features visible when on sale or when installed, and instead must encompass all ornamental features visible at any point in the product's life, beginning after completion of manufacture or assembly and ending with the ultimate destruction of the product.

Two designs are substantially the same if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, the resemblance between the two designs is such as to deceive such an observer, inducing him to purchase one supposing it to be the other. You do not need, however, to find that any purchasers actually were deceived or confused by the appearance of the accused products. You should consider any perceived similarities or differences between the patented and accused designs. [**SHURE PROPOSAL**: Minor differences should not prevent a finding of infringement.][7,8]

---

[7] Shure has not provided a source for this addition, which is unnecessary and cumulative to the description of the design patent infringement analysis.  It is also incorrect.  To the extent that minor differences would cause the designs to not appear substantially the same to the ordinary observer, they *would* prevent a finding of infringement.

[8] Shure cites to *Crocs, Inc. v. USITC*, 598 F.3d 1294, 1303-04 (Fed. Cir. 2020), for the proposition that "Minor differences should not prevent a finding of infringement." Shure submits that if a

This is a two-step test. In the first step, you should compare the design claimed in the '723 design patent and the design of the Accused Products. If you find that the two designs are sufficiently distinct that it will be clear without more that the patentee has not met its burden of proving the two designs would appear "substantially the same" to the ordinary observer, then the analysis ends[9] and you should not find infringement.

If, on the other hand, you find that it is more likely than not that the designs are *not* sufficiently distinct, then determination of whether two designs are substantially the same will benefit from a second analytical step: a comparison of the claimed and accused designs with the [**SHURE PROPOSAL**: background prior art in the eyes of the ordinary observer.] [**CLEARONE PROPOSAL**: prior art.][10] You must familiarize yourself with the prior art admitted at trial in making your determination of whether there has been infringement.

You may find the following guidelines helpful to your analysis:

1. When there are many examples of similar prior art designs, small differences between the accused design and the claimed design that may not be noticeable in the abstract can become significant to the hypothetical ordinary observer who is conversant with the prior art.

---

difference changes the overall visual impression of a design, then it would not be a "minor" difference.

[9] *Egyptian Goddess v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008) ("In some instances, the calimed design and the accused design will be sufficiently distinct that it will be clear without more that the patentee has not met its burden of proving the two designs would appear 'substantially the same' to the ordinary observer, as required by *Gorham*. In other instances, [going on to describe second step].")

[10] *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) ("In other instances, when the claimed and accused designs are not plainly dissimilar, resolution of the question whether the ordinary observer would consider the two designs to be substantially the same will benefit from a comparison of the claimed and accused designs with the prior art....").

2.  If the accused design includes a feature of the claimed design that departs conspicuously from the prior art, you may find that feature important in analyzing whether the overall appearance of the accused and claimed designs are substantially the same to the ordinary observer.

3.  If the accused design is visually closer to the claimed design than it is to the closest prior art, you may find this comparison important in analyzing whether the overall appearances of the accused and claimed designs are substantially the same to the ordinary observer.

4.  You should not consider the size of the accused products if the asserted design patent does not specify the size of the design.

While these guidelines may be helpful, the test for infringement of a design patent is whether the overall appearances of the accused design and the claimed design, as the Court has construed it, are substantially the same to the ordinary observer, giving such attention as a purchaser usually gives.

In deciding the issue of infringement, the comparison must be between ClearOne's Accused Products and the '723 patent. In addition, you have heard evidence about certain Shure products, namely the MXA910 product line. **[SHURE PROPOSAL**: The parties have agreed that the MXA910 embodies the '723 patent claim.][11] If you determine that any of Shure's other products in the MXA product line are substantially the same as the '723 patent, and that the product has no significant distinctions with the patented design, then it is permissible to also compare those Shure products to ClearOne's Accused Products. This may facilitate your determination of whether the Accused Products infringe the '723 patent. If you determine that a particular Shure product does

---

[11] Shure has objected to a similar proposal in the invalidity section, noting that the parties agree the original MXA910 anticipates the '723 patent if it is not entitled to the '493 priority date.  ClearOne objects to this conclusory fact here, but not in the invalidity section.  Shure's proposal to only include facts when they are to Shure's advantage is one-sided.  Shure can present this testimony at trial, it is not a proper jury instruction (it is not a statement of the law).

not embody a patented design, you may not compare it to the Accused Products.

Whether and to what extent ClearOne knew of Shure's '723 Patent, or even considered whether its products infringed, does not matter in determining infringement.

**[CLEARONE PROPOSAL, IF APPLICABLE**: You may have heard evidence that ClearOne was aware of Shure's MXA910 product when developing its design, or allegations that ClearOne copied Shure's product. That evidence should not be considered in determining infringement. To determine infringement, you should apply the test I just described only, and compare ClearOne's Accused BMA Products to the '723 design patent, or to the other products of the MXA product line, if you determine that those products embody Shure's design.][12, 13]

**Sources:** *Gavrieli v. Soto Massini*, C.A. No. 18-462-MN (D. Del. May 3, 2019), D.I. 141 (Final Jury Instructions), Instruction 3.6; *Goodyear Tire & Rubber v. Hercules Tire & Rubber*, 162 F. 3d 1113, 1117 (Fed. Cir. 1998); *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008); *Gorham v. White*, 81 U.S. 511, 528 (1871); *Contessa Food Prod., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1378,1381 (Fed. Cir. 2002); *CBOE v. ISE*, No. 07 C 623, 2013 WL 987765, at *1 (N.D. Ill. Mar. 14, 2013); *Egyptian Goddess*, 543 F.3d 665, 670 (Fed. Cir. 2008); *L.A. Gear, Inc. v. Thom An Shoe Co*., 988 F.2d 1117, 1125-26 (Fed. Cir. 1993) (finding it permissible to establish infringement by comparing the accused products to commercial articles "[w]hen the patented design and the design of the article sold … are substantially the same") (finding infringement when the accused

---

[12] *See* D.I. 560 (arguing copying not relevant to infringement question); ClearOne's MIL No. 2 (same); *Egyptian Goddess, Inc. v. Swisa*, 543 F.3d 665, 670 (Fed. Cir. 2008) (setting forth infringement test with no reference to copying); *Allen Eng'g Corp. v. Bartell Indus.*, 299 F.3d 1336, 1352 (Fed. Cir. 2002) ("While copying may be relevant to obviousness, it is of no import on the question of whether the claims of an issued patent are infringed."); *Finjan, Inc. v. Blue Coat Sys., Inc.*, 2015 WL 4129193, at *6 (N.D. Cal. July 8, 2015) ("[T]here is significant prejudice associated with this evidence, as a jury may use evidence of copying to unfairly conclude that Defendant's products *infringe* the patents-in-suit.").

[13] Shure opposes this ClearOne proposed language—it has already been conceded by ClearOne that the '723 patent design is embodied by the original MXA910. There is thus no need for the jury to make this determination separately or anew. As written, this effectively undoes what was agreed to above in the paragraph: "The parties have agreed that the MXA910 embodies the '723 patent claim. If you determine that any of Shure's other products in the MXA product line are substantially the same as the '723 patent, and that the product has no significant distinctions with the patented design, then it is permissible to also compare those Shure products to ClearOne's Accused Products. This may facilitate your determination of whether the Accused Products infringe the '723 patent. If you determine that a particular Shure product does not embody a patented design, you may not compare it to the Accused Products."

product is "almost a direct copy" of the claimed design); *see also Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1189 (Fed. Cir. 1988) ("When no significant distinction in design has been shown between the patent drawing and its physical embodiment, it is not error … to compare the embodiment of the patented design with the accused devices.").

### 5. <u>Design Patent—Ordinary Observer [SHURE PROPOSAL][14, 15]</u>

The ordinary observer is a hypothetical person through whose eyes the design patent infringement analysis is performed. The ordinary observer is not the average consumer. Instead, the ordinary observer for a particular case is the actual purchaser of the accused products embodying the patent and of the Accused Products, giving such attention that such a purchaser usually gives to that purchasing decision. The ordinary observer is aware of the background prior art in the field.

The jury must decide who the ordinary observer is in this case.

Shure alleges that the typical purchaser of microphone array is an IT technician employed at a corporation, and/or an individual whose duties include, among other things, the selection of fixtures or electronic devices for commercial spaces. The ordinary observer may encounter such devices either in a retail environment or online.

ClearOne alleges that the ordinary observer is either: (1) a sophisticated organizational end-user purchaser of installed audio-conferencing equipment; or (2) a specialized intermediary in the audio-visual market, such as a distributor, integrator, consultant, and installer.

**Source**: *Gorham Company v. White*, 81 U.S. 511, 528 (1871); *Egyptian Goddess Inc. v. Swisa Inc.*, 543 F.3d 665, 671, 88 U.S.P.Q.2d 1658 (Fed. Cir. 2008) (en banc); *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1383-84 (Fed. Cir. 2009); *Richardson v. Stanley Works, Inc.*, 597

---

[14] ClearOne objects to this instruction as giving insufficient instruction in this case, where accused devices are sold first to resellers and, then later, to consumers.  In this case, where the jury will be considering whether middle-men can constitute the "ordinary observer," further instruction on that point will be helpful.  ClearOne further objects to the portion of this instruction that says that the "ordinary observer may encounter such devices … in a retail environment...."  That was not a portion of Shure's design expert's initial opinion, and seems more related to additional opinions from Shure's design expert that the Court has stricken.  *See* D.I. 539 at 5-6.

[15] Shure's design expert's initial report specifically discussed the ordinary observer as the IT technician or professional employed by a company who "typically encounters products like the Claimed Design online and in product brochures." Hatch Opening Report at ¶ 80.

F.3d 1288, 1295 (Fed. Cir. 2010)

### Design Patent—Ordinary Observer [CLEARONE PROPOSAL][16], [17]

The ordinary observer is a hypothetical person through whose eyes the design patent infringement analysis is performed. The ordinary observer is not the average consumer. Instead, the ordinary observer for a particular case is the principal purchaser of the articles in question. In other words, the ordinary observer is someone who is actively involved in the purchasing of products like the products embodying the patent and of the Accused Products, giving such attention that such a purchaser usually gives to that purchasing decision. The ordinary observer is aware of the background prior art. The ordinary observer is not required to be the final, end purchaser in a purchasing chain. Instead, intermediaries who purchase a product from a vendor or

---

[16] ClearOne submits that this level of instruction is appropriate in this case, where the jury will be considering whether an intermediary or an end purchaser is the "primary purchaser." The jury should be advised on the law related to that question, including the fact that the intermediary reseller *can* be considered the "primary purchaser." *See, e.g.*, *Arminak & Assocs.*, 424 F.Supp.2d 1188, 1196-1201 (C.D. Cal. Mar. 20, 2006) (collecting cases where, like here, there was a dispute between whether the ordinary observer was an upstream purchaser of the product, or a downstream consumer); *id.* at 1197 ("[T]he 'ordinary observer' is the purchaser in danger of being misled."); *id.* (describing a case where the ordinary observer was "the distributors who actually purchased the oxygen tanks"); *id.* at 1199 (describing case where consumers were not the ordinary observer because "the product they purchase is not a trigger sprayer or shroud, but an entire bottle of cleaning solution"); *id.* at 1199 ("*Gorham's* statement that experts should not be the ordinary observer where they are not the buyers of the relevant product does not preclude sophisticated buyers from being the ordinary observer where they are the only ones who purchase the patented product directly.").

[17] Shure objects to the sentence "The ordinary observer is not required to be the final, end purchaser in a purchasing chain. Instead, intermediaries who purchase a product from a vendor or manufacturer to later resell that product to an end-user can be the proper ordinary observer" as incorrect on the law. *See Gorham Mfg. Co. v. White*, 81 U.S. 511 (1871); *Goodyear Tire & Rubber v. Hercules Tire & Rubber*, 162 F.3d 1113, 1117 (Fed. Cir.) ("The accused tire, the Hercules Power Trac, is a truck tire. The district court correctly invoked the ordinary trucker or fleet operator who purchases truck tires, as the person from whose viewpoint deceptive similarity to the '080 design is determined."). Further, the factors articulated impermissibly shift the focus of the analysis: Shure could accept these three factors in a separate instruction not tied to assessing *who* the ordinary observer is, but *how* they assess; otherwise this section remains contested in full.

manufacturer to later resell that product to an end-user can be the proper ordinary observer.

Some factors to be considered when assessing the identity of the ordinary observer, and the attention paid by such an ordinary observer, include:

Price point of the product;

Expected use, and length of time the product will be used by the purchaser; and

Where, and how, the products would be viewed and compared.

The jury must decide who the ordinary observer is in this case.

Shure alleges that the ordinary observer is an IT technician employed at a corporation, and/or an individual whose duties include, among other things, the selection of fixtures or electronic devices for commercial spaces.

ClearOne alleges that the ordinary observer is either: (1) a sophisticated organizational end-user purchaser of installed audio-conferencing equipment; or (2) a specialized intermediary in the audio-visual market, such as a distributor, integrator, consultant, and installer.

**ClearOne Sources:** *Arminak & Assocs., Inc. v. Saint-Gobain Calman, Inc.*, 424 F. Supp. 2d 1188, 1196 (C.D. Cal. 2006), *aff'd*, 501 F.3d 1314 (Fed. Cir. 2007) ("ordinary observer of the trigger sprayer shrouds in this case is, as the district court found, the contract or industrial buyer for companies that purchase the stand-alone trigger sprayer devices, not the retail purchasers of the finished product"); *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312 (Fed. Cir. 2015) (affirming the district court's identification of the ordinary observer as a "sophisticated entity who managed the complex medical device purchasing process, because that entity was the ultimate purchaser of the underlying ultrasonic surgical shears" not "the surgeon who would use the shears" because "it is the hospital or medical device supplier, not the surgeon, who is ultimately responsible for purchasing the underlying articles at issue"); *Spotless Enterprises, Inc. V. A & E Products Group, L.P.*, 294 F.Supp.2d 322, 347 (E.D.N.Y. 2003) (for a design patent for lingerie hangers, the "ordinary observer" was not the general public, but the commercial buyer for garment manufacturers, who then resold garments on the hangers to retail stores); *Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.*, 162 F.3d 1113, 1116 (Fed. Cir. 1998); *Puritan-Bennett Corp. v. Penox Techs. Inc.*, 2004 WL 866618 (S.D. Ind., Mar. 2, 2004); *Hutzler Mfg. Co., Inc. V. Bradshaw Intern., Inc.*, 2012 WL 3031150, *7, *15 (S.D.N.Y. 2012) ("In considering the degree of attention a typical consumer is likely to bring to a purchase, it is reasonable to assume that consumers will bring greater attention to an expensive purchase, and give less attention where the cost is inconsequential."); *Cardiac Pacemakers, Inc. v. Coratomic, Inc.*, 535 F.Supp. 280, 286 (D. Minn.

1982) ("The test for design patent infringement is whether an ordinary purchaser would be induced to purchase a product supposing it to be another. Pacers are expensive and generally are sold to physicians who specialize in pacer implants.").

### 6.  Design Patent Invalidity—Priority Date [DISPUTED]

To prove invalidity of Shure's design patent, ClearOne must persuade you by clear and convincing evidence that the '723 patent is invalid. One way in which a design patent can be invalid is if the patented design or a product embodying the patented design was in the prior art. The prior art includes any design or product that was in public use, on sale, or otherwise made available to the public before the patent's "priority date." A patent's "priority date" can be the filing date of that patent.

In this case, the parties dispute what the priority date is for the '723 patent. The application for the '723 patent was filed on August 6, 2019, which would typically make its "priority date" August 6, 2019. However, the '723 patent states on its face that it claims priority to an earlier-filed utility patent. If the '723 patent is entitled to claim priority to the earlier-filed utility patent, the '723 patent would have an earlier priority date of April 30, 2015. ClearOne asserts that the '723 patent is not entitled to claim priority to the earlier-filed utility patent. For a patent to be entitled to claim priority to an earlier-filed application, the earlier-filed application must provide adequate written description for the claimed invention.

The test for "written description" is whether the earlier disclosure reasonably conveys to a person of ordinary skill in the art that the inventor had possession of the claimed subject matter as of the filing date. In other words, as of the earlier filing date, had the inventor already conceived of, or invented, the invention claimed in the later-filed document?  In the context of a design patent, this analysis involves looking to the drawings of the earlier application for disclosure of the subject matter claimed in the later application. Differences between drawings of a parent application, from which the child application seeks to claim priority, can be sufficient to defeat priority for a claimed design.

In deciding whether the earlier-filed utility patent application discloses the design of the '723 design patent, you must consider the application from the viewpoint of a person having ordinary skill in this area [**SHURE PROPOSED LANGUAGE:** as of the applicable priority date][18]. ClearOne must show by clear and convincing evidence that the disclosure section of the application does not reasonably convey to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date. "[P]ossession" does not mean actual, physical possession of the claimed invention; rather, the specification of the patent need only describe an invention understandable to one of skill in the art and show that the inventor actually invented the invention claimed. The disclosure is sufficient if a person having ordinary skill in the art at the time of the earlier priority date – April 30, 2015 – would have recognized that the inventor had possession of the design claimed in the '723 design patent. This is a question of whether the earlier application contains illustrations, whatever form they may take, depicting the ornamental design illustrated in the later application and claimed therein by the prescribed formal claim.

[**CLEARONE PROPOSAL**: If you find that the '723 design patent is not entitled to claim priority to the earlier April 30, 2015 priority date, then you should find the patent invalid, because the parties agree that Shure's MXA910 was on sale and in public use more than one year before the August 6, 2019 filing date of the '723 patent.][19],[20]


**Source:** *Gavrieli Brands v. Soto Massini USA, Inc.*, C.A. No. 8-462 (MN), D.I. 141 (Final Jury Instructions) Instruction 3.9; *In re Owens*, 710 F.3d 1362, 1366 (Fed. Cir. 2013); *Ariad Pharms.,*

---

[18] ClearOne submits that this language is unworkable. The question here is what is the applicable priority date. Shure's proposed language is asking the jury to use the applicable priority date in deciding the applicable priority date, which is circular.

[19] Shure opposes this paragraph as improperly suggesting to the jury how it should decide the larger issue, and would improperly put the judge's thumb on the scale via this proposed ClearOne instruction.

[20] ClearOne's position is that this is not disputed and, as such, is helpful context for the jury.

*Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010); *Spencer v. Taco Bell, Corp.*, No. 8:12-cv-387-T-23TGW, 2013 WL 5499609, *2-*3, *7 (M.D. Fla. Oct. 2, 2013); 35 U.S.C. § 120; PowerOasis, Inc. v. T-Mobile USA, Inc., 522 F.3d 1299, 1305 (Fed. Cir. 2008); *Racing Strollers, Inc. v. TRI Indus., Inc*., 878 F.2d 1418, 1420 (Fed. Cir. 1989).

### 7.  Patent Invalidity –Prior Art Defined [AGREED]

As I mentioned, the prior art includes any design or product that was in public use, on sale, or otherwise made available to the public before the patent's priority date. Prior art includes any of the following items received into evidence during trial:

> 1. anything that was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public anywhere in the world before the priority date of the '723 patent; and

> 2. anything that was described in a patent, or in an application for patent published or deemed published, in which the patent or application names another inventor and was filed before the priority date of the '723 patent.

When considering whether a piece of prior art may invalidate Shure's '723 design patent, you may only consider prior art that has been admitted into evidence. ClearOne has the burden of proving whether an item qualifies as prior art. Results of image searches, product literature, and other documents that may have been referenced by counsel or a witness, but not admitted into evidence, may not be considered in connection with your invalidity determination.

**Source**: *Gavrieli Brands v. Soto Massini USA, Inc.*, C.A. No.  8-462 (MN), D.I. 141 (Final Jury Instructions) Instruction 3.9; AIPLA Model Patent Jury Instructions V(5.0.2) (2019).

### 8.  **Patent Invalidity—Anticipation [AGREED]**

Invalidity by anticipation requires that ClearOne show by clear and convincing evidence that a design in a single prior art reference is substantially the same as the patented design of the later '723 patent.

In determining whether a design patent has been anticipated by the prior art, you are to apply the same test for determining whether a design patent has been infringed, i.e., the ordinary observer test described above.  That is, the single prior art reference and the claimed design patent are substantially the same if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, the resemblance between the two designs is such as to deceive such an observer, inducing him to purchase one supposing it to be the other. You should consider any perceived similarities or differences between the claimed designs and prior art reference.

**[CLEARONE PROPOSAL:**  Minor differences should not prevent a finding of anticipation.][21]

In other words, if you find a design in the prior art would infringe the '723 design patent if it came after the '723 design patent, you must find that the design anticipates '723 patent, if it came before.

**Source**: *Apple v. Samsung*, Case No. 5:11-cv-1846 (N.D. Cal August 12, 2012) (Final Jury Instructions); *International Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1239 (Fed. Cir. 2009).

---

[21] If Shure's proposal is accepted in infringement, § II.C.4, *supra*, the mirror-image language should appear for invalidity.

### 9.  **Patent Invalidity—Obviousness [DISPUTED]**

Even if a design is not anticipated by a single reference, it may still be invalid if the claimed design would have been obvious to a designer of ordinary skill in the field at the time the design was made.  Unlike anticipation, which allows consideration of only one item of prior art, obviousness may be shown by considering more than one item of prior art.  The ultimate conclusion of whether a claimed design is obvious should be based upon your determination of several factual decisions.

First, you must decide the level of ordinary skill in the field of the patent at the time the claimed design was made. In this case, Shure and ClearOne agree that a designer of ordinary skill is: an Industrial Designer with a degree in Industrial Design or Product Design, with approximately two (2) years of professional design experience, including experience in consumer product design, or a designer without a degree may be an ordinary designer if they have approximately two (2) to four (4) years of experience designing electronic devices, such as microphone array assemblies.

Second, you must determine if a designer of ordinary skill in these designs would have combined the prior art references or modified a single prior art reference to create the same overall visual appearance as the claimed design.  To do this, you must consider whether ClearOne has identified a "primary" prior art reference. A "primary" reference must be an actual design which creates basically the same visual impression as the patented design.

If you identify a primary reference, you must then consider whether ClearOne has identified one or more "secondary" prior art references.  "Secondary" references are other references that are so visually related to the primary reference that the appearance of certain ornamental features in the

other references would suggest the application of those features to the primary reference. If you find that there are one or more such secondary references, you must determine if a designer of ordinary skill in these designs would have combined these references to create the same overall visual appearance as the claimed design.

Finally, before deciding the issue of obviousness, you must consider other factors that might show that the designs were not obvious despite the prior art.  You may only consider those factors that Shure has established through evidence admitted at trial.  No one factor alone is dispositive:

1.   Were products covered by the claimed design commercially successful due to the appearance of the claimed design?

2.   Did others copy the claimed design?

3.   Did the claimed design achieve an unexpectedly superior appearance over the closest prior art?

4.   Did others in the field praise the claimed design or express admiration for the claimed design?

The presence of any of the factors may be considered by you as an indication that the claimed invention would not have been obvious at the time the claimed invention was made.

Answering any, or all, of these above questions "yes" may suggest that the claim was not obvious, however, these factors are relevant only if Shure establishes a connection, or nexus, between the factor and the claimed design of the '723 patent. This means that you should only [**SHURE**: rely on]  [**CLEARONE**: consider] evidence related to these factors if you find them to be a direct result of [**CLEARONE**: the unique characteristics of] the claimed invention. Even if you conclude that some of the above factors have been established, those factors should be

considered along with all the other evidence in the case in determining whether ClearOne has proven that the claimed invention would have been obvious.

Although you should consider any evidence of these factors, the relevance and importance of any of them to your decision on whether the claimed invention would have been obvious is up to you.

In deciding whether the claimed design was obvious, keep in mind that a design with several features is not obvious merely because each individual feature was present in prior art designs. You must always be careful not to determine obviousness using the benefit of hindsight. You should put yourself in the position of a person of ordinary skill in the field at the time the claimed as made and should not consider what is known today.

**Source**: *Apple v. Samsung*, Case No. 5:11-cv-1846 (N.D. Cal August 12, 2012) (Final Jury Instructions); *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117 (Fed. Cir. 1993); *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1240 (Fed. Cir. 2009); *Apple*, 678 F.3d at 1329; AIPLA Model Patent Jury Instructions at (V)(7.4) (2019); *Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1373–74 (Fed. Cir. 2019), *cert. denied*, 141 S. Ct. 373, 208 L. Ed. 2d 95 (2020); *In re Huang*, 100 F.3d 135, 140 (Fed. Cir. 1996).

1. **Invalidity—Indefiniteness and Lack of Enablement [AGREED]**

ClearOne contends that the '723 design patent is invalid because it is "indefinite" and because it is not sufficiently "enabled." For ClearOne to prevail on either of these defenses, it must prove them by clear and convincing evidence.

The patent laws have requirements for the way patents are written. A design patent must be sufficiently clear to inform, with reasonably certainty, a person of ordinary skill in the art about the scope of the invention based on the claim and visual disclosure. If a patent does not meet this requirement, then the patent is said to be "indefinite," and the claim is invalid. A design patent must also sufficiently describe the design to enable an average designer to make it. If a patent does not meet this requirement, then the patent is said to be not "enabled." In the design patent context, there is often little difference between the concepts of indefiniteness and enablement.

A design patent claim may be considered indefinite or not enabled if it includes multiple internally inconsistent drawings. But errors and inconsistencies between drawings do not necessarily mean the claim is indefinite if they do not preclude the overall understanding of the design as a whole, or if they do not prevent an average designer from understanding how to make it.

ClearOne contends that the '723 design patent is indefinite and not enabled because there are inconsistent drawings in the patent. If you find that ClearOne has proved by clear and convincing evidence that the '723 patent is indefinite or not enabled because a person of ordinary skill in the art would not understand the scope of the claimed design, then you must find the patent invalid.

**Source:** *In re Maatita*, 900 F.3d 1369, 1375 (Fed. Cir. 2018) (citing *Ex Parte Asano,* 201 U.S.P.Q. 315, 317 (B.P.A.I. 1978)); *see also Antonious v. Spalding & Evenflo Cos.,* 217 F.3d 849, 1999 WL 777450, at *8 (Fed. Cir. 1999) (unpublished) (reversing summary judgment of indefiniteness when alleged inconsistencies between drawings could have been based on

perspective and were not "sufficient to preclude a person from gaining an overall understanding of the total substance of the designs"); *Deckers Outdoor Corp. v. Romeo & Juliette, Inc.,* Case No. 2:15-cv-02812, 2016 WL 7017219, at *3-5 (C.D. Cal. Dec. 1, 2016).

ABA Model Patent Jury Instructions, available at

https://www.ded.uscourts.gov/sites/ded/files/chambers/ABAModelPatentJuryInstructions.pdf

### D.  WILLFULNESS CONTENTIONS [SHURE CONTESTED INSTRUCTION][22]

If you find on the basis of the evidence and the law as I have explained it, that ClearOne infringes the '723 patent, you must then also decide whether or not ClearOne's infringement was willful.

In this case, Shure argues that ClearOne willfully infringed the asserted patented design as of the issue date of the '723 patent, on November 5, 2019. ClearOne denies this allegation. To prove willful infringement, Shure must first persuade you that ClearOne has infringed a valid claim of the '723 patent. The requirements for proving such were discussed in my prior instructions.

In addition, to prove willful infringement of a patent, Shure must persuade you that it is more likely than not that ClearOne intentionally ignored or recklessly disregarded the '723 patent during the relevant timeframe.

Evidence that ClearOne had knowledge of the patent by itself is not sufficient to show willfulness. Rather, to show willfulness, you must find that ClearOne engaged in additional conduct evidencing deliberate or reckless disregard of Shure's patent rights. In deciding whether ClearOne acted with deliberate or reckless disregard, you should consider all of the facts surrounding the alleged infringement, including whether ClearOne intentionally copied Shure's patented design in developing the Accused Products; whether ClearOne knew, or should have known, that its conduct involved an unreasonable risk of infringement; and whether ClearOne had a reasonable belief at the time of infringement that its products did not infringe the '723 patent or that the patent was invalid.

---

[22] [**CLEARONE STATEMENT**: Shure did not plead a claim for willfulness nor file an amended complaint. Willfulness is not a part of the case, and ClearOne reserves all rights. Nevertheless, ClearOne provides a corrected willfulness instruction consistent with the AIPLA guidelines otherwise cited by Shure.] [**SHURE STATEMENT**: Shure asserts that willful infringement is properly in the case and also incorporates by reference its statements in the Joint Pretrial Order, filed October 11, 2021, and its letter brief, filed October 12, 2021.]

If you do decide that there was willful infringement, that decision should not affect any

damages award you give in this case.

**Sources**: *Apple v. Samsung*, Case No. 5:11-cv-1846 (N.D. Cal August 12, 2012) (Final Jury Instructions); *Gavrieli v. Soto Massini*, C.A. No. 18-462-MN (D. Del. May 3, 2019), D.I. 141 (Final Jury Instructions) at Instruction 3.12.

## 10. **<u>PATENT DAMAGES [AGREED]</u>**

I will instruct you about the law that you must follow in determining the amount of damages that Shure is entitled to recover if there is a determination that ClearOne infringed and Shure's patent is valid.

The fact that I am instructing you on damages does not mean that the Court believes that one party or the other should win in this case. My instructions about patent damages are for your guidance only in the event you find in favor of Shure. You will need to address damages only if you find that the '723 patent is both not invalid and infringed.

### 1.  Patent Damages Generally [DISPUTED]

If you find that ClearOne's Accused BMA Products infringe the '723 design patent, and that the patent is not invalid, Shure may recover damages adequate to compensate Shure for the infringement. On the other hand, if you find that the '723 design patent is either invalid or is not infringed, then you should not consider damages in your deliberations.

Shure must prove each element of its damages—including the amount of the damages—by a preponderance of the evidence, which means more likely than not.

If proven by Shure, damages must be in an amount adequate to compensate Shure for the infringement. The purpose of a damages award is to put Shure in about the same financial position it would have been in if the infringement had not happened. [**SHURE PROPOSAL** (to complete the AIPLA paragraph): But the damages cannot be less than a reasonable royalty.][23] You may not add anything to the amount of damages to punish an accused infringer or set an example. You also may not add anything to the amount of damages for interest.

For design patent infringement, Shure seeks ClearOne's total profits of sales of the Accused Products. Total profits are permitted for infringement of a design patent, allowing Shure to recover the total profit that ClearOne made from the article of manufacture relating to its infringing sales of any infringing BMA Products that apply the patented design. I will explain the term "article of manufacture" in more detail later.

[**SHURE PROPOSAL:** Shure may also be entitled to another kind of patent damages called a "reasonable royalty," available if a valid patent claim has been infringed. A reasonable royalty is

---

[23] ClearOne objects to this proposal because Shure's reasonable royalty theory is no longer in the case.  D.I. 575.  Shure respectfully disagrees, for the reasons set forth above and in the Pretrial Order.

the amount that someone wanting to use the patented design would have agreed to pay to the patent owner and the patent owner would have accepted. A reasonable royalty is the minimum amount of damages that a patent owner can receive for infringement.][24]

Shure is entitled only to damages that it has proven with reasonable certainty. On the one hand, reasonable certainty does not require proof of damages with mathematical precision. Mere difficulty in ascertaining damages is not fatal to Shure. On the other hand, Shure is not entitled to speculative damages. You should not award any amount for loss, which, although possible, is remote or left to conjecture or guesswork. You may base your evaluation of reasonable certainty on any evidence, including expert or opinion evidence.

[**CLEARONE PROPOSAL**: You have the right to award zero in damages.][25]

**Source**:  AIPLA Model Patent Jury Instructions 2019, Section V(10).

---

[24] [**ClearOne's Statement**: ClearOne objects to this proposal because Shure's reasonable royalty theory is no longer in the case.  D.I. 575.  She did not disclose an alternate reasonable royalty theory at any point in fact or expert discovery.  Shure's reliance on ClearOne's expert is misplaced; Shure has the burden of proof, and since Shure has no admissible evidence related to a reasonable royalty, there will be no reason for ClearOne to put forward any evidence related to a reasonable royalty at trial.  Shure should moreover not be allowed to present a new, previously undisclosed reasonable royalty opinion to the jury.  *See MLC Intell. Prop., LLC v. Micron Tech., Inc.*, No. 2020-1413, 2021 WL 3778405, at *9 (Fed. Cir. Aug. 26, 2021) ("[B]ecause Rule 26(a)(1)(A)(iii) requires timely disclosure of damages information, the district court properly excluded the damages information under Rule 37.").  .Nor is a claimant entitled to reasonable royalty damages—or any damages—"if none are proven that adequately tie a dollar amount to the infringing acts." *TecSec, Inc. v. Adobe, Inc.*, 978 F.3d 1278, 1291 (Fed. Cir. 2020).]  [**Shure's Response**: ClearOne is wrong to state that reasonable royalty theories are out of the case.  ClearOne's own damages expert asserts a reasonable royalty theory.  And moreover, a reasonable royalty is required by law as the minimum statutory compensation for patent infringement. 35 U.S.C. § 284.  The Federal Circuit has explained that even where expert testimony is not available on a reasonable royalty, the factfinder may still consider the available evidence to set a royalty.  *Dow Chem. Co. v. Mee Indus.*, 341 F.3d 1370, 1381-1382 (Fed. Cir. 2003).  "A party need not present expert testimony on damages or, as a corollary, on every aspect of damages, such as a single royalty rate." *Bayer HealthCare LLC v. Baxalta Inc.*, 989 F.3d 964, 985 (Fed. Cir. 2021).]
[25] Shure disputes this as an incorrect legal proposition under the Patent Act and ClearOne cites to nothing for this statement, which is not in the AIPLA section, and in fact goes against it.

### 1.  Date Damages Begin [AGREED]

ClearOne and Shure agree that the date for the start of any damages calculation is November 5, 2019.

**Source**:  AIPLA Model Patent Jury Instructions 2019, Section V(10.1).

## 2. __Total Profits—Entitlement__

If you find that ClearOne infringed the '723 patent, and you also find that the '723 patent is not invalid, you may award Shure the total profits earned by ClearOne attributable to the sale of the "article of manufacture" to which that patented design has been applied.

Determining total profits is a two-step process:

First, [**SHURE PROPOSAL**: the jury must identify the "article of manufacture" to which the infringed design has been applied by defendant—i.e., whether the infringing product is a single article of manufacture or a multi-component article of manufacture] [**CLEARONE PROPOSAL**: you must identify the "article of manufacture" to which the infringed design has been applied by defendant. The article of manufacture is the article in which the design prominently features, and that may be said to embody the claimed design. The relevant article of manufacture need not be the end product sold to the consumer, but may instead be only a component of that product][26].

[**SHURE PROPOSAL**: The accused product is assumed to be a single article of manufacture for purposes of total profits. If ClearOne alleges otherwise, it has the burden to identify any component or components of the article of manufacture to which the claimed design

---

[26] **CLEARONE STATEMENT**: It is undisputed that the article of manufacture is a question for the fact-finder. Shure's suggested clarification – that the decision is solely whether the product is a single- or multi-component product is wrong as a matter of law.  "Arriving at a damages award under § 289 thus involves two steps. First, identify the "article of manufacture" to which the infringed design has been applied. Second, calculate the infringer's total profit made on that article of manufacture."  *Samsung Elecs. Co. v. Apple Inc.*, 137 S. Ct. 429, 434, 196 L. Ed. 2d 363 (2016). The Supreme Court has stated that an "article of manufacture "encompasses both a product sold to a consumer and a component of that product," *id.*, but that is not the sole determination – as the Supreme Court clearly explains, the fact-finder must "identify" the article of manufacture.  Shure's suggestion this identification is merely a determination of whether the product is single- or multi-component is incorrect.  ClearOne's language includes the Supreme Court's statement on this topic (namely, that the relevant article of manufacture can "a produce sold to a consumer, " but may also be "a component of that product.") but also provides the jury some guidance on determining the appropriate article of manufacture consistent with the following paragraphs.

has been applied. A four-factor test may be used to help determine if the "article of manufacture" is

a single article or multi-component:

    a.    Whether the scope of the design claimed in the patent, including the drawing and written description, provide insight into which portions of the underlying product the design is intended to cover, and how the design relates to the product as a whole.

    b.    Whether the design is a minor component of the product with many other components unaffected by the design or whether the design is a significant attribute of the entire product, affecting the appearance of the product as a whole. The relative prominence of the design within the product as a whole may help determine if the article of manufacture is a single or multi-component.

    c.    Whether the design is conceptually distinct from the product as a whole. If the product contains other components that embody conceptually distinct innovations, it may be appropriate to conclude that a component is the relevant article.

    d.    Whether the design pertains to a component that a user or seller can physically separate from the product as a whole, that may suggest that the design has been applied to the component alone rather than to the complete product.][27]

    [**CLEARONE PROPOSAL**: In determining the article of manufacture, you should

consider the following four factors:

        a.  The scope of the design claimed in the patent, including the drawing and

          written description;

---

[27] [**CLEARONE STATEMENT**: Shure's statement is overly complicated and an incorrect statement of the law.  Moreover, Shure is entirely incorrect to suggest ClearOne has the burden. The plaintiff bears both the burden of production and persuasion in identifying the article of manufacture and total profit on the sale of that article. *Apple Inc. v. Samsung Elecs. Co. Ltd.*, No. 11-1846, 2017 WL 4776443, at *13–14 (N.D. Cal. Oct. 22, 2017); *Junker v. Med. Components, Inc.*, No. CV 13-4606, 2021 WL 131340, at *31 (E.D. Pa. Jan. 14, 2021). If the plaintiff satisfies its burden on these issues, then the burden shifts to the defendant to produce evidence of an alternative article of manufacture and any deductible expenses. *Apple Inc.*, 2017 WL 4776443, at *13–14; *jJunker*, 2021 WL 131340 at *31 (citing *Henry Hanger & Display Fixture Corp. of Am. V. Sel-O-Rak Corp.*, 270 F.2d 635, 643 (5th Cir. 1959) ("The burden of establishing the nature and amount of [deductible costs], as well as their relationship to the infringing product, is on the defendants.")).] [SHURE STATEMENT: Shure's statement of the factors is verbatim from the DOJ brief, and already represents a distillation of the relevant concepts.]

    b.   The relative prominence of the design within the product as a whole;

    c.   Whether the design is conceptually distinct from the product as a whole;

    d.   The physical relationship between the patented design and the rest of the

product, including whether the design pertains to a component that a user or

seller can physically separate from the product as a whole, and whether the

design is embodied in a component that is manufactured separately from the

rest of the product, or if the component can be sold separately.

Shure has the burden to prove that its identification of the articles of manufacture to which

ClearOne applied Shure's patented design is correct by a preponderance of the evidence. ][28]

Second, after you have determined the article of manufacture, you must calculate the

infringer's total profit made on that article of manufacture.

---

[28] [**CLEARONE STATEMENT**: This language comes directly from other design patent cases, which have simplified these factors for the jury.  Shure's instruction is overly complicated and unnecessary.  *See, e.g., Samsung Elecs. Co. Ltd. v. Apple*, Case No. 5:11-cv-01846 (N.D. Cal., May 18, 2018) (Dkt. 3785). Shure is entirely incorrect to suggest ClearOne has the burden.  The plaintiff bears both the burden of production and persuasion in identifying the article of manufacture and total profit on the sale of that article. *Apple Inc. v. Samsung Elecs. Co. Ltd.*, No. 11-1846, 2017 WL 4776443, at *13–14 (N.D. Cal. Oct. 22, 2017); *Junker v. Med. Components, Inc.*, No. CV 13-4606, 2021 WL 131340, at *31 (E.D. Pa. Jan. 14, 2021). If the plaintiff satisfies its burden on these issues, then the burden shifts to the defendant to produce evidence of an alternative article of manufacture and any deductible expenses. *Apple Inc.*, 2017 WL 4776443, at *13–14; *jJunker*, 2021 WL 131340 at *31 (citing *Henry Hanger & Display Fixture Corp. of Am. V. Sel-O-Rak Corp.*, 270 F.2d 635, 643 (5th Cir. 1959) ("The burden of establishing the nature and amount of [deductible costs], as well as their relationship to the infringing product, is on the defendants.")).] [**SHURE STATEMENT**: The DOJ brief in *Apple* states: "While the plaintiff bears the ultimate burden of establishing the infringer's total profit, the defendant, as the manufacturer or seller of the product in question, should bear the burden of identifying any component that it views as the relevant article of manufacture." *Samsung Elecs. Co. Ltd. v. Apple,* 137 S. Ct. 429, 434 (2016); Solicitor General's Brief at 9, *available at* http://www.scotusblog.com/wpcontent/uploads/2016/ 06/15-777npUnitedStates.pdf (accessed April 17, 2020)]

Profits are determined by deducting certain expenses from gross revenue. Gross revenue is all of the infringer's receipts from using the design in the sale of the infringing products (if you find the whole product is the article of manufacture) or the sale of the infringing component(s) (if you find a component is the relevant article of manufacture). Shure has the burden of proving ClearOne's gross revenue by a preponderance of the evidence. ClearOne has the burden of proving the deductible expenses and the portion of the profit attributable to factors other than use of the infringed design, all by a preponderance of the evidence. Such expenses can include costs incurred in producing the gross revenue, such as the cost of the goods. Other costs may be included as deductible expenses if you determine they are attributable to the sales of the infringing products resulting in a nexus between the infringing products and the expense.

**Source:** *Samsung Elecs. Co. Ltd. v. Apple,* 137 S. Ct. 429, 434 (2016); Solicitor General's Brief at 9, *available at* http://www.scotusblog.com/wpcontent/uploads/2016/ 06/15-777npUnitedStates.pdf (accessed April 17, 2020); *Nike, Inc. v. Wal-Mart Stores, Inc.,* 138 F.3d 1437, 1447-48 (Fed. Cir. 1998); *Braun, Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 824 (Fed. Cir. 1992); *Trans-World Mfg. Corp. v. A1 Nyman & Sons, Inc.*, 750 F.2d 1552, 1566-68 (Fed. Cir. 1984); *Bergstrom v. Sears, Roebuck & Co.,* 496 F. Supp. 476, 495 (D. Minn. 1980). *Samsung Elecs. Co. Ltd. v. Apple*, Case No. 5:11-cv-01846 (N.D. Cal., May 18, 2018) (Dkt. 3785).

2. __Reasonable Royalty—Entitlement [SHURE CONTESTED INSTRUCTION]__[29]

If you find that Shure has established infringement of the '723 patent, and ClearOne has not

shown that the patent is invalid, Shure [**SHURE PROPOSAL**: is entitled to at least]

[**CLEARONE PROPOSAL**: may recover] a reasonable royalty to compensate it for that

infringement. If you find that Shure has not proved its claim for total profits above, then you

[**SHURE PROPOSAL**: must] [**CLEARONE PROPOSAL**: may award Shure a reasonable

royalty for all infringing sales for which it has not been awarded damages.

[**CLEARONE PROPOSAL**: You do not have to award a reasonable royalty.][30]

---

[29] [**ClearOne's Statement**: ClearOne submits that on Friday, October 8, Magistrate Judge Burke
issued a Memorandum Order (D.I. 575) granting ClearOne's motion to exclude the reasonable
royalty opinions of Shure's damages expert, Dr. Vander Veen.  Shure has not disclosed an alternate
reasonable royalty theory at any point in fact or expert discovery.  Shure's reliance on ClearOne's
expert is misplaced; Shure has the burden of proof, and since Shure has no admissible evidence
related to a reasonable royalty, there will be no reason for ClearOne to put forward any evidence
related to a reasonable royalty at trial.  Shure should moreover not be allowed to present a new,
previously undisclosed reasonable royalty opinion to the jury.  *See MLC Intell. Prop., LLC v.
Micron Tech., Inc.*, No. 2020-1413, 2021 WL 3778405, at *9 (Fed. Cir. Aug. 26, 2021) ("[B]ecause
Rule 26(a)(1)(A)(iii) requires timely disclosure of damages information, the district court properly
excluded the damages information under Rule 37.").  Nor is a claimant entitled to reasonable
royalty damages—or any damages—"if none are proven that adequately tie a dollar amount to the
infringing acts." *TecSec, Inc. v. Adobe, Inc.*, 978 F.3d 1278, 1291 (Fed. Cir. 2020).]  [**Shure's
Statement**: ClearOne is wrong to state that reasonable royalty theories are out of the case.
ClearOne's own damages expert asserts a reasonable royalty theory.  And moreover, a reasonable
royalty is required by law as the minimum statutory compensation for patent infringement.  35
U.S.C. § 284.  The Federal Circuit has explained that even where expert testimony is not available
on a reasonable royalty, the factfinder may still consider the available evidence to set a royalty.
*Dow Chem. Co. v. Mee Indus.*, 341 F.3d 1370, 1381-1382 (Fed. Cir. 2003).  "A party need not
present expert testimony on damages or, as a corollary, on every aspect of damages, such as a
single royalty rate."  *Bayer HealthCare LLC v. Baxalta Inc.*, 989 F.3d 964, 985 (Fed. Cir. 2021).]
[30] **SHURE STATEMENT**: Shure objects for the reasons expressed above. AIPLA Model Patent
Jury Instructions 2019, Section V(10) ("But the damages cannot be less than a reasonable royalty").

**3.** **Reasonable Royalty--Measure of Damages [SHURE CONTESTED INSTRUCTION][31]**

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began. In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the '723 Patent was valid and infringed as of issuance on November 5, 2019, and the patent holder and infringer were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have

---

[31] [**ClearOne's Statement**: ClearOne submits that on Friday, October 8, Magistrate Judge Burke issued a Memorandum Order (D.I. 575) granting ClearOne's motion to exclude the reasonable royalty opinions of Shure's damages expert, Dr. Vander Veen.  Shure has not disclosed an alternate reasonable royalty theory at any point in fact or expert discovery.  As such, Shure should not be allowed to present any reasonable royalty opinions to the jury.  Shure's reliance on ClearOne's expert is misplaced; Shure has the burden of proof, and since Shure has no admissible evidence related to a reasonable royalty, there will be no reason for ClearOne to put forward any evidence related to a reasonable royalty at trial.  Shure should moreover not be allowed to present a new, previously undisclosed reasonable royalty opinion to the jury.  *See MLC Intell. Prop., LLC v. Micron Tech., Inc.*, No. 2020-1413, 2021 WL 3778405, at *9 (Fed. Cir. Aug. 26, 2021) ("[B]ecause Rule 26(a)(1)(A)(iii) requires timely disclosure of damages information, the district court properly excluded the damages information under Rule 37.").  Nor is a claimant entitled to reasonable royalty damages—or any damages—"if none are proven that adequately tie a dollar amount to the infringing acts." *TecSec, Inc. v. Adobe, Inc.*, 978 F.3d 1278, 1291 (Fed. Cir. 2020).] [**Shure's Statement**: ClearOne is wrong to state that reasonable royalty theories are out of the case. ClearOne's own damages expert asserts a reasonable royalty theory.  And moreover, a reasonable royalty is required by law as the minimum statutory compensation for patent infringement.  35 U.S.C. § 284.  The Federal Circuit has explained that even where expert testimony is not available on a reasonable royalty, the factfinder may still consider the available evidence to set a royalty. *Dow Chem. Co. v. Mee Indus.*, 341 F.3d 1370, 1381-1382 (Fed. Cir. 2003).  "A party need not present expert testimony on damages or, as a corollary, on every aspect of damages, such as a single royalty rate."  *Bayer HealthCare LLC v. Baxalta Inc.*, 989 F.3d 964, 985 (Fed. Cir. 2021).]

preferred.

Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from the hypothetical negotiation.

**Source:** *E.I. Du Pont Nemours and Co. v. Unifrax I LLC*, No. 14-CV-1250-RGA, D.I. 336 (verbatim).

1. **Reasonable Royalty—Factors for Determining [SHURE CONTESTED INSTRUCTION]**[32]

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

1. The royalties received by the patentee for the licensing of the patents-in-suit, proving or tending to prove an established royalty.

2. The rates paid by the licensee for the use of other patents comparable to the patents-in-suit.

3. The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may

---

[32] [**ClearOne's Statement**: ClearOne submits that on Friday, October 8, Magistrate Judge Burke issued a Memorandum Order (D.I. 575) granting ClearOne's motion to exclude the reasonable royalty opinions of Shure's damages expert, Dr. Vander Veen.  Shure has not disclosed an alternate reasonable royalty theory at any point in fact or expert discovery.  As such, Shure should not be allowed to present any reasonable royalty opinions to the jury.  Shure's reliance on ClearOne's expert is misplaced; Shure has the burden of proof, and since Shure has no admissible evidence related to a reasonable royalty, there will be no reason for ClearOne to put forward any evidence related to a reasonable royalty at trial.  Shure should moreover not be allowed to present a new, previously undisclosed reasonable royalty opinion to the jury.  *See MLC Intell. Prop., LLC v. Micron Tech., Inc.*, No. 2020-1413, 2021 WL 3778405, at *9 (Fed. Cir. Aug. 26, 2021) ("[B]ecause Rule 26(a)(1)(A)(iii) requires timely disclosure of damages information, the district court properly excluded the damages information under Rule 37.").  Nor is a claimant entitled to reasonable royalty damages—or any damages—"if none are proven that adequately tie a dollar amount to the infringing acts." *TecSec, Inc. v. Adobe, Inc.*, 978 F.3d 1278, 1291 (Fed. Cir. 2020).] [**Shure's Statement**: ClearOne is wrong to state that reasonable royalty theories are out of the case. ClearOne's own damages expert asserts a reasonable royalty theory.  And moreover, a reasonable royalty is required by law as the minimum statutory compensation for patent infringement. 35 U.S.C. § 284.  The Federal Circuit has explained that even where expert testimony is not available on a reasonable royalty, the factfinder may still consider the available evidence to set a royalty. *Dow Chem. Co. v. Mee Indus.*, 341 F.3d 1370, 1381-1382 (Fed. Cir. 2003).  "A party need not present expert testimony on damages or, as a corollary, on every aspect of damages, such as a single royalty rate."  *Bayer HealthCare LLC v. Baxalta Inc.*, 989 F.3d 964, 985 (Fed. Cir. 2021).]

be sold.

4. The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

5. The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

6. The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

7. The duration of the patent and the term of the license.

8. The established profitability of the product made under the patents, its commercial success, and its current popularity.

9. The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

10. The nature of the patented invention the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

11. The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

13. The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14. The opinion and testimony of qualified experts.

15. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention-would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty ClearOne would have been willing to pay and Shure would have been willing to accept, acting as normally prudent business people. The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between Shure and ClearOne taking place at a time prior to when the infringement began.

**Source:** *E.I. Du Pont Nemours and Co. v. Unifrax I LLC*, No. 14-CV-1250-RGA, D.I. 336.

**16. Reasonable   Royalty—Availability   of   Non-Infringing   Substitutes   [SHURE CONTESTED INSTRUCTION][33]**

In determining a reasonable royalty, you may also consider evidence concerning the availability and cost of acceptable non-infringing substitutes to the patented invention. An acceptable substitute must be a product that is licensed under the patent or that does not infringe the patent.

**Source:** AIPLA Model Patent Jury Instructions (V)(10.2.5.8) (2019); *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1376 (Fed. Cir. 2017); *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1372–73 (Fed. Cir. 2008); *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1571–72 (Fed. Cir. 1996).

---

[33] [**ClearOne's Statement**: ClearOne submits that on Friday, October 8, Magistrate Judge Burke issued a Memorandum Order (D.I. 575) granting ClearOne's motion to exclude the reasonable royalty opinions of Shure's damages expert, Dr. Vander Veen.  Shure has not disclosed an alternate reasonable royalty theory at any point in fact or expert discovery.  As such, Shure should not be allowed to present any reasonable royalty opinions to the jury.  Shure's reliance on ClearOne's expert is misplaced; Shure has the burden of proof, and since Shure has no admissible evidence related to a reasonable royalty, there will be no reason for ClearOne to put forward any evidence related to a reasonable royalty at trial.  Shure should moreover not be allowed to present a new, previously undisclosed reasonable royalty opinion to the jury.  *See MLC Intell. Prop., LLC v. Micron Tech., Inc.*, No. 2020-1413, 2021 WL 3778405, at *9 (Fed. Cir. Aug. 26, 2021) ("[B]ecause Rule 26(a)(1)(A)(iii) requires timely disclosure of damages information, the district court properly excluded the damages information under Rule 37Nor is a claimant entitled to reasonable royalty damages—or any damages—"if none are proven that adequately tie a dollar amount to the infringing acts." *TecSec, Inc. v. Adobe, Inc.*, 978 F.3d 1278, 1291 (Fed. Cir. 2020).]  [**Shure's Statement**: ClearOne is wrong to state that reasonable royalty theories are out of the case. ClearOne's own damages expert asserts a reasonable royalty theory.  And moreover, a reasonable royalty is required by law as the minimum statutory compensation for patent infringement.  35 U.S.C. § 284.  The Federal Circuit has explained that even where expert testimony is not available on a reasonable royalty, the factfinder may still consider the available evidence to set a royalty. *Dow Chem. Co. v. Mee Indus.*, 341 F.3d 1370, 1381-1382 (Fed. Cir. 2003).  "A party need not present expert testimony on damages or, as a corollary, on every aspect of damages, such as a single royalty rate."  *Bayer HealthCare LLC v. Baxalta Inc.*, 989 F.3d 964, 985 (Fed. Cir. 2021).]

### E.   <u>NON-PATENT CONTENTIONS</u>

As I did for Shure's patent claims, I will now give you a summary of ClearOne's non-patent contentions in this case [**SHURE CONTESTED LANGUAGE**: and Shure's defenses][34].  I will then provide you with detailed instructions on what must be proven as to these contentions.

You must decide whether ClearOne has proven, by a preponderance of the evidence, whether Shure engaged in:

- tortious interference with prospective business relations and

- unfair competition under Delaware common law.

[**SHURE CONTESTED LANGUAGE**: Shure contends that where both of ClearOne's state tort claims against a patent holder like Shure are based on enforcing a patent in the marketplace, these Delaware claims are "preempted" by federal patent laws unless ClearOne can show that the patent holder acted in "bad faith" in the publication or enforcement of its patent.][35]

---

[34] [**CLEARONE STATEMENT**: ClearOne objects to this instruction on the ground that Shure has no surviving affirmative defenses for the jury to consider. *See In re New Valley Corp.*, 181 F.3d 517, 525 (3d Cir. 1999) ("As an equitable doctrine, application of unclean hands rests within the sound discretion of the trial court.").] [**SHURE STATEMENT**: Shure asserts that unclean hands should be presented to the jury and incorporates by reference its statements in the Joint Pretrial Order, filed October 11, 2021, and its letter brief, filed October 12, 2021. *See also Innovation Ventures, LLC v. NVE, Inc.*, No. 08-11867, 2016 WL 266396, at *2-*4 (E.D. Mich. Jan. 21, 2016) (allowing unclean hands defense to be heard together with corresponding false advertising claim given overlapping factual issues, and finding "it would be helpful for the jury deciding this case to hear a full presentation of the real circumstances that surrounded how these parties acted in competition with one another."). Concerning a "bad faith" showing to overcome preemption, Shure relies on *Travel Syndication Tech., LLC v. Fuzebox, LLC*, No. 11-553-RGA-SRF, 2012 WL 1931238, at *7 (D. Del. May 25, 2012); *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245, 78 L. Ed. 293, 54 S. Ct. 146 (1933).]

[35] [**CLEARONE STATEMENT**: ClearOne objects to this instruction on the grounds that it articulates a "bad faith" requirement with no basis in law. Because none of Shure's alleged statements were in furtherance of "enforcing a patent in the marketplace," there is no risk of federal preemption. *See 800 Adept, Inc. v. Murex Securities, Ltd.*, 539 F.3d 1354, 1369 (Fed. Cir. 2008);

[**SHURE CONTESTED LANGUAGE**: Furthermore, Shure contends as an affirmative defense that ClearOne acted with "unclean hands" such that it may not prevail on these Delaware claims.][36]

**Shure Source:** *Travel Syndication Tech., LLC v. Fuzebox, LLC*, No. 11-553-RGA-SRF, 2012 WL 1931238, at \*7 (D. Del. May 25, 2012); *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245, 78 L. Ed. 293, 54 S. Ct. 146 (1933).

---

*Energy Heating, LLC v. Heat On-The-Fly, LLC*, 889 F.3d 1291, 1304 (Fed. Cir. 2018).] [**SHURE STATEMENT**: Shure relies on *Travel Syndication Tech., LLC v. Fuzebox, LLC*, No. 11-553-RGA-SRF, 2012 WL 1931238, at \*7 (D. Del. May 25, 2012); *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 78 L. Ed. 293, 54 S. Ct. 146 (1933), as further explained in the instructions below].

[36] [**CLEARONE STATEMENT**: ClearOne objects to this instruction as the jury may not render a verdict on Shure's unclean hands defense. *See In re New Valley Corp.*, 181 F.3d 517, 525 (3d Cir. 1999) ("As an equitable doctrine, application of unclean hands rests within the sound discretion of the trial court.").] [**SHURE SATEMENT**: Shure asserts that unclean hands should be presented to the jury and incorporates by reference its statements in the Joint Pretrial Order, filed October 11, 2021, and its letter brief, filed October 12, 2021. *See also Innovation Ventures, LLC v. NVE, Inc*., No. 08-11867, 2016 WL 266396, at \*2-\*4 (E.D. Mich. Jan. 21, 2016) (allowing unclean hands defense to be heard together with corresponding false advertising claim given overlapping factual issues, and finding "it would be helpful for the jury deciding this case to hear a full presentation of the real circumstances that surrounded how these parties acted in competition with one another.").]

17. <u>**Tortious Interference with Prospective Business Relations [CLEARONE CONTESTED PROPOSAL]**</u>[37]

ClearOne claims that Shure improperly interfered with ClearOne's prospective business opportunities by making false and misleading statements. To establish this claim, ClearOne must prove:

(1) ClearOne had a reasonable probability of a business opportunity;

(2) Shure intentionally and wrongfully interfered with ClearOne's prospective business opportunity;

(3) ClearOne suffered harm;

(4) Shure's interference proximately caused ClearOne's harm.

In determining whether Shure's conduct was improper you may consider any factors you think relevant, including the nature of Shure's conduct, Shure's motive, the interests that Shure sought to advance, and whether Shure's act was done for the purpose of causing the interference.

A "reasonable probability of a business opportunity" includes any relations leading to potentially profitable contracts.  ClearOne does not need to prove that there was existing contract between it and a third party with respect to any business opportunity.

---

[37] [**SHURE STATEMENT**: Shure takes its instruction verbatim from a recent articulation of the Court last month. ClearOne has now eliminated a "knowledge" requirement from its instruction that is present in the case law. Final Jury Instructions (D.I. 549) at 4, *Ingevity Corp. v. BASF Corp.,* No. 18-CV-1391-RGA, (D. Del. Sep. 14, 2021) (verbatim); *see also Lucent Info. Mgmt., Inc. v. Lucent Techs., Inc.*, 5 F. Supp. 2d 238, 243 (D. Del. 1998); *Accenture Glob. Servs. GMBH v. Guidewire Software Inc.,* 581 F. Supp. 2d 654, 664-66 (D. Del. 2008)*; Presidio, Inc. v. Semler*, No. 20-965, 2020 WL 8619101, at \*9, n.19 (D. Del. Sept. 28, 2020); *Truinject Corp. v. Nestle Skin Health, S.A.*, No. 19-592, 2020 WL 70981, at \*16 (D. Del. Jan. 7, 2020) (emphasis added) (citation omitted), *adopted*, 2020 WL 1270916 (D. Del. Mar. 17, 2020); <u>*Am. Homepatient, Inc. v. Collier*</u>, No. CIV.A. 274-N, 2006 WL 1134170, at \*5 (Del. Ch. Apr. 19, 2006); *DG BF, LLC v. Ray*, No. CV 2020-0459-MTZ, 2021 WL 776742, at \*18 n.146 (Del. Ch. Mar. 1, 2021) ("[T]he knowledge element is implicit in the [four-part] test which focuses on intent, and the two ***operate identically***.") (emphasis added).

**ClearOne Sources**: Jury Instructions (D.I. 240) at 12, *U.S. Bank Nat'l Ass'n v. Gunn*, No. 22-cv-01155-RGA (D. Del. Nov. 19, 2014); *Mondero v. Lewes Surgical & Med. Assocs., P.A.*, No.14-588-RGA, 2018 WL 1532429, at *4 (D. Del. Mar. 29, 2018) (citation omitted); *Clouser v. Doherty*, 175 A.3d 86, at *10 (Del. 2017); *Empire Fin. Servs., Inc. v. Bank of New York (Delaware)*, 900 A.2d 92, 98 n.19 (Del. 2006); *Malpiede v. Townson*, 780 A.2d 1075, 1099 (Del. 2001); D.I. 566 at 2-4 (ClearOne brief discussing the absence of a "knowledge" requirement under Delaware law); *Kimbleton v. White*, No. 12-974-GMS, 2014 WL 4386760, at *8 (D. Del. Sept. 4, 2014) (discussing expectancies that qualify as business opportunities under Delaware law), *aff'd*, 608 F. App'x 117 (3d Cir. 2015); *DG BF, LLC v. Ray*, No. CV 2020-0459-MTZ, 2021 WL 776742, at *19 (Del. Ch. Mar. 1, 2021) (holding that plaintiff need not prove the existence of a contract).

## Tortious Interference with Prospective Business Relations [SHURE CONTESTED PROPOSAL]

ClearOne alleges that Shure violated Delaware common law by intentionally interfering with ClearOne's prospective business relationships.  Shure denies these allegations. To prove its claim for intentional interference with a prospective business relationship, ClearOne must prove each of the following elements by a preponderance of the evidence:

> **First**, the existence of a prospective contractual or business relationship between ClearOne and a third-party;
>
> **Second**, an intent on the part of Shure to harm ClearOne by interfering with that prospective relationship;
>
> **Third**, knowledge of the relationship or expectancy on the part of Shure;
>
> **Fourth**, the absence of a privilege or justification on the part of Shure;
>
> **Fifth**, actual damage to ClearOne caused by Shure's interference; and
>
> **Sixth**, a reasonable likelihood that the prospective relationship between ClearOne and the third-party would have occurred if not for Shure's interference.

A "prospective" relationship is something less than an actual contract but more than just hope on ClearOne's part that it would enter into the relationship with a third-party. The reasonable likelihood that a relationship would have formed cannot be met based merely upon

evidence of an existing contractual relationship.

In determining whether Shure intentionally interfered with ClearOne's prospective contractual or business relationship with a t h i r d - p a r t y, you must consider whether the purpose of Shure's conduct was to protect a legitimate interest and evaluate that against ClearOne's interests. In evaluating these interests, you will consider:

> The expectations of Shure and ClearOne;
>
> The relations between Shure and ClearOne;
>
> The interest Shure sought to advance;
>
> Whether Shure's conduct was done for the purpose of causing the interference or whether it was merely incidental to another purpose; and
>
> Whether Shure's conduct is sanctioned by the "rules of the game" which society has adopted for business competition.

You cannot find in favor of ClearOne unless you find Shure employed "wrongful means"

to interfere with ClearOne's prospective contractual or business relationship with a third-party.

**Shure Sources**: Final Jury Instructions (D.I. 549) at 4, *Ingevity Corp. v. BASF Corp.,* No. 18-CV-1391-RGA, (D. Del. Sep. 14, 2021) (**verbatim**); *see also Lucent Info. Mgmt., Inc. v. Lucent Techs., Inc.*, 5 F. Supp. 2d 238, 243 (D. Del. 1998); *Accenture Glob. Servs. GMBH v. Guidewire Software Inc.,* 581 F. Supp. 2d 654, 664-66 (D. Del. 2008); *Presidio, Inc. v. Semler*, No. 20-965, 2020 WL 8619101, at *9, n.19 (D. Del. Sept. 28, 2020); *Truinject Corp. v. Nestle Skin Health, S.A.*, No. 19-592, 2020 WL 70981, at *16 (D. Del. Jan. 7, 2020) (emphasis added) (citation omitted), *adopted*, 2020 WL 1270916 (D. Del. Mar. 17, 2020); <u>*Am. Homepatient, Inc. v. Collier*</u>, No. CIV.A. 274-N, 2006 WL 1134170, at *5 (Del. Ch. Apr. 19, 2006); *DG BF, LLC v. Ray*, No. CV 2020-0459-MTZ, 2021 WL 776742, at *18 n.146 (Del. Ch. Mar. 1, 2021) ("[T]he knowledge element is implicit in the [four-part] test which focuses on intent, and the two ***operate identically***.") (emphasis added).

**18. <u>Unfair Competition under Delaware Common Law [CLEARONE PROPOSAL]</u>**

ClearOne claims that Shure engaged in unfair competition in violation of Delaware

common law. To establish this claim, ClearOne must prove:

(1) ClearOne had a reasonable expectancy of entering a valid business relationship with one

or more customers in the form of product sales;

(2) Shure wrongfully interfered with that expectancy; and

(3) Shure's actions defeated ClearOne's reasonable expectancy of entering a valid business

relationship.

**ClearOne Sources**: Trial Tr. (D.I. 265) at 1710-11, *SurgiQuest v. Lexion Med., Inc.*, No. CV 14-382-GMS (D. Del. Apr. 11, 2017); D.I. 566 at 5-6 (ClearOne brief discussing the absence of a "knowledge" requirement under Delaware law).


**<u>Unfair Competition under Delaware Common Law [SHURE PROPOSAL]</u>**

ClearOne alleges unfair competition under Delaware common law. To show liability,

ClearOne must prove by a preponderance of evidence that: (1) it had a reasonable expectancy of

entering a valid business relationship, (2) with which Shure knew of and wrongfully interfered, (3)

thereby defeating a legitimate expectancy and causing harm.

**Shure Sources**: *EIS, Inc. v. WOW Tech Int'l GmBH*, No. 19-1227, 2020 WL 7027528, at *6 (D. Del. Nov.30, 2020); *Preston Hollow Capital LLC v. Nuveen LLC*, No. 2019-0169, 2019 WL 3801471, at *9 n.96 (Del. Ch. Aug. 13, 2019); *Accenture Global Servs.*, 581 F. Supp. 2d at 666; *Total Care Physicians, P.A. v. O'Hara*, 798 A.2d 1043, 1057 (Del. Super. Ct. 2001); *Travel Syndication Tech., LLC v. Fuzebox, LLC*, No. 11-553-RGA-SRF, 2012 WL 1931238, at *7 (D. Del. May 25, 2012); <u>*Am. Homepatient, Inc. v. Collier*</u>, No. CIV.A. 274-N, 2006 WL 1134170, at *5 (Del. Ch. Apr. 19, 2006); DG BF, LLC v. Ray, No. CV 2020-0459-MTZ, 2021 WL 776742, at *18 n.146 (Del. Ch. Mar. 1, 2021) ("[T]he knowledge element is implicit in the [four-part] test which focuses on intent, and the two ***operate identically***.") (emphasis added).

1.  **Unclean Hands [SHURE CONTESTED INSTRUCTION]**

Shure argues as an affirmative defense that the doctrine of unclean hands bars ClearOne from

seeking relief for Delaware business torts. You may determine whether ClearOne, as the party

seeking relief, has itself committed (1) unconscionable acts, such as fraud or bad faith, (2)

immediately related to the equity it seeks in the litigation.

**Shure Sources**: *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245, 78 L. Ed. 293, 54 S. Ct. 146 (1933); *Innovation Ventures, LLC v. NVE, Inc.*, No. 08-11867, 2016 WL 266396, at *2-*4 (E.D. Mich. Jan. 21, 2016) (allowing unclean hands defense to be heard together with corresponding false advertising claim given overlapping factual issues, and finding "it would be helpful for the jury deciding this case to hear a full presentation of the real circumstances that surrounded how these parties acted in competition with one another.").

**ClearOne Sources**: *In re New Valley Corp.*, 181 F.3d 517, 525 (3d Cir. 1999) ("As an equitable doctrine, application of unclean hands rests within the sound discretion of the trial court."); *see also Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41-42, (1989) (holding that the federal jury trial right does not extend to equitable issues); Fed. R. Civ. P. 39(c) (providing that issues "not triable of right by a jury" are decided by courts unless both parties consent to contrary resolution).

## 2.  Preliminary Injunctions [CLEARONE CONTESTED INSTRUCTION][38]

Some of ClearOne's claims concern statements Shure allegedly made about a "preliminary injunction" issued in another case. By law, a preliminary injunction that prohibits the sale of a given product also prohibits the sale of any "colorable imitations" of that product. In determining whether a redesigned product is a "colorable imitation," courts consider whether the redesigned product is so different from the product previously found to infringe that it raises a fair ground of doubt as to the wrongfulness of the defendant's conduct.

**Source:** *Aevoe Corp. v. AE Tech. Co. Ltd.*, 727 F.3d 1375, 1382-83 (Fed. Cir. 2013); *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 881-82 (Fed. Cir. 2011); *Proveris Sci Corp. v. Innovasystems, Inc.*, 739 F.3d 1367, 1370-71 (Fed. Cir. 2014).

---

[38] [Shure opposes inclusion of the proposed instruction as irrelevant and prejudicial]

### 3.   Contempt [CLEARONE CONTESTED INSTRUCTION][39]

"Contempt" is conduct that defies the authority or dignity of a court or legislature. Because such conduct interferes with the administration of justice, it is punishable by fine or imprisonment.

**Source**: Contempt, Black's Law Dictionary (11th ed. 2019).

---

[39] [Shure opposes inclusion of the proposed instruction as irrelevant and prejudicial]

### 4.  Agency [CLEARONE CONTESTED INSTRUCTION][40][41]

Shure is a corporation. A corporation is considered a person within the meaning of the law. As an artificial person, a corporation can only act through its servants, agents, or employees.

An agent is one who acts for another, known as a principal, on the principal's behalf and subject to the principal's control and consent.

If you find that ClearOne's injuries were the result of tortious acts committed by Shure's agents while acting within the scope of their agency, then the agents' conduct is the legal responsibility of Shure.

**Source**: Delaware Pattern Civil Jury Instructions 18.1, 18.8.

---

[40] [Shure opposes inclusion of the proposed instruction as irrelevant and prejudicial—agency liability has never been asserted in contentions as a liability theory]

[41] The allegations in this case are that: (1) Shure made false statements to the market; and (2) third-party marketing companies acting on behalf of Shure amplified those false statements to the market.  In the context of these allegations, an instruction on agency is appropriate.

## G. NON-PATENT DAMAGES [AGREED]

I will instruct you about the law that you must follow in determining the amount of damages that ClearOne is entitled to recover if there is a determination that Shure committed tortious interference with business relations or engaged in unfair competition. Remember, if you find ClearOne did not prove liability for these torts by a preponderance of the evidence, there can be no damages from Shure.

### a. Uncertainty Caused by Wrongful Conduct [CLEARONE CONTESTED INSTRUCTION][42]

If a party's wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by the injured party, the wrongdoer is not entitled to complain that damages cannot be measured with the same exactness and precision as would otherwise be possible. It would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts. In such case, while damages may not be determined by mere speculation or guess, it will be enough if the evidence shows the extent of the damages as a matter of just and reasonable inference, although the result only be approximate. The wrongdoer is not entitled to complain that damages cannot be measured with exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise. The risk of the uncertainty should be thrown upon the wrongdoer instead of upon the injured party. The precise amount cannot be ascertained by a fixed rule but must be a matter of opinion and probable estimate.

**Source**: *Deitrick v. Costa*, 849 F. App'x 362, 368 (3d Cir. 2021)

---

[42] [Shure opposes inclusion of the proposed instruction as irrelevant and prejudicial. The plaintiff must prove "resulting damages to the party whose relationship or expectancy was disrupted." *Lucent Info. Mgmt., Inc. v. Lucent Techs., Inc.*, 5 F. Supp. 2d 238, 243 (D. Del. 1998); *Accenture*, 581 F. Supp. 2d at 664; *GWO Litig. Tr. v. Sprint Sols., Inc.*, No. CV N17C-06-356, 2018 WL 5309477, at *12 (Del. Super. Ct. Oct. 25, 2018) ("[G]eneralized allegations of harm will not suffice.") (citation omitted).]

**b.  <u>Damages for Tortious Interference with Prospective Business Relations</u>**

Assuming liability has been demonstrated by ClearOne, remedies for tortious interference with business relations include lost profits. ClearOne must show its damages with reasonable certainty, that the liable party's interference was the proximate cause of the damages, and that the damages were reasonably foreseeable. To decide the amount of damages for lost profits, you must determine the gross amount ClearOne would have received but-for Shure's conduct and then subtract from that amount the expenses ClearOne would have had if Shure's conduct had not occurred. The amount of lost profits need not be calculated with mathematical precision, but there must be a reasonable basis for computing the loss.

In addition, a party may demonstrate that damages should be computed through disgorgement of the other's profits.

ClearOne must show its damages by a preponderance of evidence.

**Source:** *Hasu Shah v. Harristown Development Corp.*, No. 1:12-CV-2196, 2013 WL 6567764, at *10 (M.D. Pa. Dec. 13, 2013); *Vibra-Tech Engineers, Inc. v. Kavalek*, 849 F. Supp. 2d 462, 497 (D.N.J. 2012); *Ingevity Corp. v. BASF Corp.,* No. 18-CV-1391-RGA, (D. Del. Sep. 14, 2021).

### c.  Delaware Unfair Competition Damages [AGREED]

Assuming liability has been demonstrated by ClearOne, remedies for unfair competition

under Delaware common law may likewise include lost profits and disgorgement of Shure's profits.

ClearOne must show its damages by a preponderance of evidence.

**Source:** *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 387-88 (D.N.J. 2016); J. T.
McCarthy, TRADEMARKS AND UNFAIR COMPETITION § 30:59 (5th ed. Sept. 2021)

## F.  <u>DELIBERATION AND VERDICT</u>

### 1.  <u>Introduction [AGREED]</u>

That concludes the part of my instructions explaining the rules for considering some of the testimony and evidence. Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is juror No. 1.

One more thing about messages. Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be. That should stay secret until you are finished.


**Source**: Final Jury Instructions (D.I. 549) at 62, *Ingevity Corp. v. BASF Corp.,* No. 18-CV-1391-RGA, (D. Del. Sep. 14, 2021).

## 2.  <u>**Unanimous Verdict [AGREED]**</u>

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so consistent with your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. The verdict form asks you a series of questions about the parties' contentions. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the courtroom and your foreperson will give your verdict. Unless you are directed otherwise in the verdict form, you must answer all of the questions posed, and you all must agree on each answer.

**Source:** *Bio-Rad Labs v. 10X Genomics*, case No. 1:15-cv-152-RGA, D.I. 470 (Nov. 13, 2018, D. Del) at 8.

### 3.  Duty to Deliberate [AGREED]

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong. But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that—your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience. No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds. Listen carefully to what the other jurors have to say, and then decide for yourself.

**Source:** *Bio-Rad Labs v. 10X Genomics*, case No. 1:15-cv-152-RGA, D.I. 470 (Nov. 13, 2018, D. Del) at 6.2.

## 4.  **Social Media [AGREED]**

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as the telephone, a smart phone, computer, the internet, or website such as Facebook, Instagram, Snapchat, MySpace, LinkedIn, YouTube, Reddit, or Twitter, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

**Source:** *Bio-Rad Labs v. 10X Genomics*, case No. 1:15-cv-152-RGA, D.I. 470 (Nov. 13, 2018, D. Del) at 6.2.

### 5.  <u>Court Has No Opinion [AGREED]</u>

Let me finish up by repeating something that I said to you earlier. Nothing that I have said

or done during this trial was meant to influence your decision in any way. You must decide the case

yourselves based on the evidence presented.


**Source:** *Bio-Rad Labs v. 10X Genomics*, case No. 1:15-cv-152-RGA, D.I. 470 (Nov. 13,

2018, D. Del) at 6.2.

Dated: October 12, 2021

Respectfully submitted,

*/s/ Alexandra M. Joyce*
Michael P. Kelly (#2295)
Brian R. Lemon (#4730)
Alexandra M. Joyce (#6423)
405 N. King St., 8th Floor
Wilmington, DE 19801
(302) 984-6300
mkelly@mccarter.com
blemon@mccarter.com
ajoyce@mccarter.com

OF COUNSEL:
Gerald F. Ivey
Mareesa A. Frederick
Elizabeth D. Ferrill
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
901 New York Avenue, N.W.
Washington, D.C. 20001-4413
(202) 408-4000
gerald.ivey@finnegan.com
mareesa.frederick@finnegan.com
elizabeth.ferrill@finnegan.com

Elliot C. Cook
J. Derek McCorquindale
Alexander M. Boyer
David N. Lefcowitz
Luke H. MacDonald
Joseph M. Schaffner
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
1875 Explorer Street, Suite 800
Reston, VA 20190-6023
(571) 203-2700
elliot.cook@finnegan.com
derek.mccorquindale@finnegan.com
alexander.boyer@finnegan.com
david.lefcowitz@finnegan.com
luke.macdonald@finnegan.com
joseph.schaffner@finnegan.com

Vladimir I. Arezina
VIA Legal, LLC
(312) 574-3050
vladimir@arezina.com

***Attorneys For Plaintiffs***
***Shure Incorporated and***
***Shure Acquisition Holdings, Inc.***

*/s/ Michael J. Flynn*
Michael J. Flynn (#5333))
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
mflynn@morrisnichols.com

OF COUNSEL:

Douglas J. Dixon
Christina V. Rayburn
Sourabh Mishra
HUESTON HENNIGAN LLP
620 Newport Center Drive
Suite 1300
Newport Beach, CA  92660
(949) 226-6741

Christine Woodin
HUESTON HENNIGAN LLP
523 West 6th St., Suite 400
Los Angeles, CA 90014
(213) 788-4340

***Attorneys For Defendant***
***ClearOne, Inc.***