IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SHURE INCORPORATED,

     and

SHURE ACQUISITION
HOLDINGS, INC.,

     Plaintiffs,

  v.

CLEARONE, INC.

     Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 19-1343-RGA-CJB

**<u>FINAL JURY INSTRUCTIONS</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     FINAL INSTRUCTIONS ........................................................................................ 1

A.     General Information ............................................................................................. 1

       1.     Introduction ............................................................................................ 1

       2.     Juror's Duties ......................................................................................... 2

       3.     Consideration of Evidence .................................................................... 3

       4.     Credibility of Witnesses ........................................................................ 4

       5.     Demonstrative Exhibits ......................................................................... 5

B.     PATENT CLAIMS .............................................................................................. 6

       1.     Patent Contentions ................................................................................. 6

C.     THE PATENT LAWS ......................................................................................... 7

       1.     Design Patents—Interpretation of a Design Patent Claim ...................... 7

       2.     Prior Art Defined .................................................................................. 8

       3.     Design Patents—Infringement Generally ............................................. 9

       4.     Design Patents—Infringement ............................................................ 10

       5.     Design Patent Invalidity—Priority Date .............................................. 13

       6.     Patent Invalidity—Anticipation .......................................................... 15

       5.     Invalidity—Indefiniteness and Lack of Enablement ............................ 16

D.     DELIBERATION AND VERDICT .................................................................. 17

       1.     Introduction .......................................................................................... 17

       2.     Unanimous Verdict .............................................................................. 18

       3.     Duty to Deliberate ............................................................................... 19

       4.     Social Media ........................................................................................ 20

5.      Court Has No Opinion ........................................................... 21

## I.   <u>FINAL INSTRUCTIONS</u>

### A.  <u>General Information</u>

#### 1.  <u>Introduction</u>

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

Please listen very carefully to everything I say. In following my instructions, you must follow all of them and not single out some and ignore others. They are all important.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this case.

2. **Juror's Duties**

You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide, under the appropriate burden of proof, which party should prevail on each of the claims and defenses presented. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

**3.** <u>**Consideration of Evidence**</u>

Make your decision based only on the evidence, as I have defined it here, and nothing else. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

You should use your common sense in weighing the evidence. Consider the evidence in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

**4.** __Credibility of Witnesses__

You are the sole judges of each witness's credibility.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all. But if you cannot do this, then it is your duty and privilege to believe the portions of testimony that, in your judgment, are most believable and disregard any testimony that, in your judgment, is not believable.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there is evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something that was different from the testimony he or she gave at the trial. You have the right to distrust such witness's testimony in other particulars and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

This instruction applies to all witnesses, including expert witnesses and witnesses that provided testimony by deposition.

**5.  <u>Demonstrative Exhibits</u>**

During the course of the trial, you have seen many exhibits. Many of these exhibits were admitted as evidence. You will have these admitted exhibits in the jury room for your deliberations. The other exhibits, including slides, charts and animations presented by attorneys and witnesses, were offered to help illustrate the testimony of the various witnesses. These illustrations, called "demonstrative exhibits," have not been admitted as evidence, are not evidence, and should not be considered as evidence. Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibits that is the evidence in this case.

**B.  PATENT CLAIMS**

At the start of the case, I gave you a summary of each side's contentions. I will now provide you with detailed instructions on what each side must prove to win on each of its contentions.

**1.  Patent Contentions**

You must decide the following issues:

1. Whether Shure has proven by a preponderance of the evidence that ClearOne's Accused Products infringe the ornamental design in the sole claim of the '723 Patent.  The Accused Products include the BMA-CT, BMA-CTH (i.e. the COLLABORATE Versa Pro CT, COLLABORATE Versa Lite CT, COLLABORATE Versa Room CT), BMA360 and BMA-CTX ("Xceed").

2. Whether ClearOne has proven by clear and convincing evidence that the '723 Patent is invalid.

6

## C.  THE PATENT LAWS

### 1.  Design Patents—Interpretation of a Design Patent Claim

As I have previously instructed, there are several types of patents granted by the U.S Patent and Trademark Office, including utility patents and design patents. Shure's '723 Patent asserted in this case is a design patent.

Before you decide whether ClearOne has infringed Shure's asserted design patent, or whether the design patent is invalid, you will have to understand the design patent claim.

A design patent can only have one claim. The scope of the claim encompasses the design's visual appearance as a whole, as shown in all the figures and described in the figure descriptions. Each design patent contains multiple drawings to illustrate the claimed design. The claimed design does not cover a general design concept, and is not limited to isolated features of the drawings. The scope of the claim of a design patent covers the purely ornamental features of the design and the ornamental aspects of the functional features of the design. Features that are determined to be functional are not included within the scope of the claim. Here, the Court has determined that the claim of the '723 patent means the following:

> "The ornamental design for an array microphone assembly, as shown in the solid lines
> and associated claimed surfaces of Figures 1-6 and described in the specification of the
> '723 patent. The broken lines in Figures 1-6 of the '723 patent form no part of the
> claimed design. The square shape of the claimed design is functional."

This definition of the '723 patent's claim and a copy of the '723 patent are included in your jury binders.

### 2. Prior Art Defined

You have heard the parties discuss prior art. The prior art includes any design or product that was in public use, on sale, or otherwise made available to the public before the patent's priority date. Prior art includes any of the following items received into evidence during trial:

1. anything that was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public anywhere in the world before the priority date of the '723 patent; and

2. anything that was described in a patent, or in an application for patent published or deemed published, in which the patent or application names another inventor and was filed before the priority date of the '723 patent.

### 3. <u>Design Patents—Infringement Generally</u>

The United States' patent law gives the owner of a valid design patent the right to exclude others from importing, making, using, offering to sell, or selling the patented designs within the United States during the term of the patent. Any person or company that has engaged in any of those acts without the design patent owner's permission infringes the patent.

Here, Shure alleges that ClearOne infringes Shure's design patent. Shure bears the burden of proving by a preponderance of the evidence that its design patent is infringed.

4. **Design Patents—Infringement**

The test for infringement of a design patent is whether the overall appearance of the claimed design and the accused products are substantially the same in the eyes of the ordinary observer familiar with the prior art who gives such attention as a purchaser usually gives.  Two designs are substantially the same if the resemblance between the two designs is such that the ordinary observer would be deceived into believing the accused design is the same as the patented design, such that he or she would mistakenly purchase one design, supposing it to be the other.

The ordinary observer is the principal purchaser of the products embodying the patent and the Accused Products. You must decide who the ordinary observer is in this case.

If you find by a preponderance of the evidence that the ordinary observer would consider the overall appearance of the accused products to be substantially the same as the overall appearance of the claimed design, and that the Accused Products were made, used, sold, offered for sale, or imported within the United States, you must find that the accused products infringed the claimed design.

When considering the overall appearance of the claimed design and the accused products, you must consider the entire claimed design as depicted in the drawings. You should not give more or less weight to aspects of the design because they are on the front, back, or side of the design, as long as those aspects are depicted in the drawings that define the claimed design. That is, you should consider the entirety of the claimed design, including elements on all sides of the device, if all sides are present in the drawings. This analysis is not limited to those features visible when on sale or when installed, and instead must encompass all ornamental features visible at any point in the product's life, beginning after completion of manufacture or assembly

10

and ending with the ultimate destruction of the product.

Two designs are substantially the same if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, the resemblance between the two designs is such as to deceive such an observer, inducing him to purchase one supposing it to be the other. You do not need, however, to find that any purchasers actually were deceived or confused by the appearance of the accused products. You should consider any perceived similarities or differences between the patented and accused designs.

This is a two-step test. In the first step, you should compare the design claimed in the '723 design patent and the design of the Accused Products. If you find that the two designs are sufficiently distinct that it will be clear without more that the patentee has not met its burden of proving the two designs would appear "substantially the same" to the ordinary observer, then the analysis ends and you should not find infringement.

If, on the other hand, you find that it is more likely than not that the designs are *not* sufficiently distinct, you must consider a second analytical step: a comparison of the claimed and accused designs with the prior art in the eyes of the ordinary observer. You must familiarize yourself with the prior art admitted at trial in making your determination of whether there has been infringement.

You may find the following guidelines helpful to your analysis:

1. When there are many examples of similar prior art designs, small differences between the accused design and the claimed design that may not be noticeable in the abstract can become significant to the hypothetical ordinary observer who is conversant with the prior art.

2. If the accused design includes a feature of the claimed design that departs conspicuously from the prior art, you may find that feature important in analyzing whether the overall

appearance of the accused and claimed designs are substantially the same to the ordinary observer.

3. If the accused design is visually closer to the claimed design than it is to the closest prior art, you may find this comparison important in analyzing whether the overall appearances of the accused and claimed designs are substantially the same to the ordinary observer.

4. You should not consider the size of the accused products since the asserted design patent does not specify the size of the design.

While these guidelines may be helpful, the test for infringement of a design patent is whether the overall appearances of the accused design and the claimed design, as the Court has construed it, are substantially the same to the ordinary observer, giving such attention as a purchaser usually gives.

In deciding the issue of infringement, the comparison must be between ClearOne's Accused Products and the '723 patent. In addition, you have heard evidence about certain Shure products, namely the MXA910 product line. If you determine that any of Shure's products in the MXA product line are substantially the same as the '723 patent, and that the product has no significant distinctions with the patented design, then it is permissible to also compare those Shure products to ClearOne's Accused Products. This may facilitate your determination of whether the Accused Products infringe the '723 patent. If you determine that a particular Shure product does not embody a patented design, you may not compare it to the Accused Products.

Whether and to what extent ClearOne knew of Shure's '723 Patent, or even considered whether its products infringed, does not matter in determining infringement.

### 5.  <u>Design Patent Invalidity—Priority Date</u>

To prove invalidity of Shure's design patent, ClearOne must persuade you by clear and convincing evidence that the '723 patent is invalid. One way in which a design patent can be invalid is if the patented design or a product embodying the patented design was in the prior art. The prior art includes any design or product that was in public use, on sale, or otherwise made available to the public before the patent's "priority date." A patent's "priority date" can be the filing date of that patent.

In this case, the parties dispute what the priority date is for the '723 patent. The application for the '723 patent was filed on August 6, 2019, which would typically make its "priority date" August 6, 2019. However, the '723 patent states on its face that it claims priority to an earlier-filed utility patent. If the '723 patent is entitled to claim priority to the earlier-filed utility patent, the '723 patent would have an earlier priority date of April 30, 2015. ClearOne asserts that the '723 patent is not entitled to claim priority to the earlier-filed utility patent. For a patent to be entitled to claim priority to an earlier-filed application, the earlier-filed application must provide adequate written description for the claimed invention.

The test for "written description" is whether the earlier disclosure reasonably conveys to a person of ordinary skill in the art that the inventor had possession of the claimed subject matter as of the filing date. In other words, as of the earlier filing date, had the inventor already conceived of, or invented, the invention claimed in the later-filed document?  In the context of a design patent, this analysis involves looking to the drawings of the earlier application for disclosure of the subject matter claimed in the later application. Differences between drawings of a parent application, from which the child application seeks to claim priority, can be sufficient to defeat priority for a claimed design.

In deciding whether the earlier-filed utility patent application discloses the design of the '723 design patent, you must consider the application from the viewpoint of a person having ordinary skill in this area. ClearOne must show by clear and convincing evidence that the disclosure section of the application does not reasonably convey to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date. "[P]ossession" does not mean actual, physical possession of the claimed invention; rather, the specification of the patent need only describe an invention understandable to one of skill in the art and show that the inventor actually invented the invention claimed. The disclosure is sufficient if a person having ordinary skill in the art at the time of the earlier priority date – April 30, 2015 – would have recognized that the inventor had possession of the design claimed in the '723 design patent. This is a question of whether the earlier application contains illustrations, whatever form they may take, depicting the ornamental design illustrated in the later application and claimed therein by the prescribed formal claim.

If you find that the '723 design patent is not entitled to claim priority to the earlier April 30, 2015 priority date, then Shure's MXA910 is prior art to the '723 patent.

14

**6.** **Patent Invalidity—Anticipation**

Invalidity by anticipation requires that ClearOne show by clear and convincing evidence that a design in a single prior art reference is substantially the same as the patented design of the later '723 patent. For the purposes of anticipation, ClearOne asserts that Shure's MXA-910 is a prior art reference.

In determining whether a design patent has been anticipated by the prior art, you are to apply the same test for determining whether a design patent has been infringed, i.e., the ordinary observer test described above.  That is, the single prior art reference and the claimed design patent are substantially the same if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, the resemblance between the two designs is such as to deceive such an observer, inducing him to purchase one supposing it to be the other. You should consider any perceived similarities or differences between the claimed designs and prior art reference.

In other words, if you find a design in the prior art would infringe the '723 design patent if it came after the '723 design patent, you must find that the design anticipates '723 patent, if it came before.

5.   **Invalidity—Indefiniteness and Lack of Enablement**

ClearOne contends that the '723 design patent is invalid because it is "indefinite" and because it is not sufficiently "enabled." For ClearOne to prevail on either of these defenses, it must prove them by clear and convincing evidence.

The patent laws have requirements for the way patents are written. A design patent must be sufficiently clear to inform, with reasonably certainty, a person of ordinary skill in the art about the scope of the invention based on the claim and visual disclosure. If a patent does not meet this requirement, then the patent is said to be "indefinite," and the claim is invalid. A design patent must also sufficiently describe the design to enable an average designer to make it. If a patent does not meet this requirement, then the patent is said to be not "enabled." In the design patent context, there is often little difference between the concepts of indefiniteness and enablement.

A design patent claim may be considered indefinite or not enabled if it includes multiple internally inconsistent drawings. But errors and inconsistencies between drawings do not necessarily mean the claim is indefinite if they do not preclude the overall understanding of the design as a whole, or if they do not prevent an average designer from understanding how to make it.

ClearOne contends that the '723 design patent is indefinite and not enabled because there are inconsistent drawings in the patent. If you find that ClearOne has proved by clear and convincing evidence that the '723 patent is indefinite or not enabled because a person of ordinary skill in the art would not understand the scope of the claimed design, then you must find the patent invalid.

16

### D.  DELIBERATION AND VERDICT

#### 1.  Introduction

That concludes the part of my instructions explaining the rules for considering some of the testimony and evidence. Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is juror No. 1.

One more thing about messages. Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be. That should stay secret until you are finished.

### 2. <u>Unanimous Verdict</u>

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so consistent with your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. The verdict form asks you a series of questions about the parties' contentions. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the courtroom and your foreperson will give your verdict. Unless you are directed otherwise in the verdict form, you must answer all of the questions posed, and you all must agree on each answer.

**3.  <u>Duty to Deliberate</u>**

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong. But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that—your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience. No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds. Listen carefully to what the other jurors have to say, and then decide for yourself.

4. <u>**Social Media**</u>

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as the telephone, a smart phone, computer, the internet, or website such as Facebook, Instagram, Snapchat, MySpace, LinkedIn, YouTube, Reddit, or Twitter, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

**5.** __Court Has No Opinion__

Let me finish up by repeating something that I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented.